1  R. Rex Parris, Esq. (SBN 96567)
       rrparris@rrexparris.com
2  Alexander R. Wheeler, Esq. (SBN 239541)
       awheeler@rrexparris.com
3  Patricia Oliver, Esq. (SBN 193423)
       poliver@rrexparris.com
4  Kitty Szeto, Esq. (SBN 258136)
       kszeto@rrexparris.com
5  **R. REX PARRIS LAW FIRM**
   43364 10th Street West
6  Lancaster, California 93534
   Telephone:  (661) 949-2595
7  Facsimile:  (661) 949-7524

8  Philip A. Downey, Est. (Admitted *Pro Hac Vice*)
   (Pennsylvania SBN 81603)
9      downeyjustice@gmail.com
   Eric D. Rouen, Esq. (SBN 242341) (*Of Counsel*)
10     erdowneyjustice@gmail.com
   **THE DOWNEY LAW FIRM, LLC**
11 P.O. Box 1021
   Unionville, Pennsylvania 19375
12 Telephone:  (610) 324-2848
   Facsimile:  (610) 813-4579

13
   *(Additional counsel listed on the following page)*
14

15              **UNITED STATES DISTRICT COURT**

16       **EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

17 MARIA DEL CARMEN PENA, CONSUELO      ) Case No. 2:13-cv-01282-KJM-AC
   HERNANDEZ, LETICIA SUAREZ,           )
18 ROSEMARY DAIL, and WENDELL T.        ) **CLASS ACTION**
   MORRIS, on behalf of themselves and on behalf )
19 of all other similarly situated individuals,   ) **PLAINTIFFS' NOTICE OF MOTION AND MOTION**
                                        ) **FOR CLASS CERTIFICATION; MEMORANDUM OF**
20              Plaintiffs,             ) **POINTS AND AUTHORITIES IN SUPPORT OF**
                                        ) **THEREOF**
21        v.                            )
   TAYLOR FARMS PACIFIC, INC. d/b/a     )
22 TAYLOR FARMS; ABEL MENDOZA, INC.;    ) Date:          November 22, 2013
   MANPOWER, INC.; QUALITY FARM LABOR,  ) Time:          10:00 a.m.
23 INC.; SLINGSHOT                      ) Courtroom:     3
   CONNECTIONS, LLC and DOES 5-50,      )
24 inclusive,                           ) [The Honorable Kimberly J. Mueller]
                                        )
25              Defendants.            ) Complaint Filed: February 17, 2012
                                        )
26 _____ )

27

28

_____
                **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

1

**ADDITIONAL COUNSEL FOR PLAINTIFF AND THE PUTATIVE CLASS**

2

3    Stuart Chandler, Esq. (SBN 88969)
             stuart@chandlerlaw.com
4    **STUART CHANDLER, APC**
     761 East Locust Avenue, Suite 101
5    Fresno, CA 93720
     Telephone:  (559) 431-7770
6    Facsimile:  (559) 431-7778

7    Attorneys for Plaintiff and the Putative Class

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:  NOTICE IS HEREBY GIVEN that on November 22, 2013 at 10:00 a.m., or as soon thereafter as counsel may be heard by the Honorable Kimberly J. Mueller in Courtroom 3 of the above-entitled court, located at 501 I Street, Sacramento, California, Plaintiffs MARIA DEL CARMEN PENA, CONSUELO HERNANDEZ, LETICIA SUAREZ, ROSEMARY DAIL, and WENDELL T. MORRIS, on behalf of themselves and all others similarly situated (referred to collectively herein as "Plaintiffs"), will and hereby do move the Court for an order certifying (1) this action to proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure ("FRCP"); (2) the class of persons described in Plaintiffs' complaint as the plaintiff class and subclasses; and (3) the individual Plaintiffs as representative of the plaintiff class and their counsel of record herein as counsel for the plaintiff class and sub-classes; and (4) any other order the Court deems just in the event of certification.

This motion is made under FRCP Rule 23.  By this motion, Plaintiffs seek to certify the following defined class and subclasses:

**"Class":**

All former and current non-exempt hourly employees of Taylor and joint/dual employees of Taylor and Co Defendants, who worked at facilities owned and/or operated by Taylor during the four-year period preceding the filing of this action through the date notice is mailed to the class.

**"Sub-Classes":**

**Donning and Doffing Sub-Class**

All non-exempt hourly workers paid by Taylor, and all non-exempt hourly workers controlled by Taylor, but paid by Co Defendants who worked pursuant to Taylor's rules and regulations and were required to wear personal protective equipment ("PPE") to protect against the cross contamination of food, food-contact surfaces, or food-packaging materials, and who are/were required to don and those items, of equipment, without compensation, sanitize their person and equipment before the start of their paid shifts, doff those items of equipment, without compensation after the end of their paid shifts, and/or don, doff those items of equipment and sanitize their persons and equipment during their meal and rest break breaks.

**Mixed Hourly Worker Sub-Class**

All individuals who currently, or formerly worked either as direct employees of Taylor, or joint/dual employees of Taylor and Co Defendants, within the applicable statute of limitations, as nonexempt hourly workers, in any capacity, at Taylor's Tracy, California

1

facilities and who were not offered meal breaks within 5 hours of having started work and/or were not offered a second thirty minute meal break on work days of 10 hours or longer and/or were not offered at least two rest breaks, during work days of 8 – 10 hours, and/or were required to be back at their work stations ready to work within 30 minutes during meal breaks and within 10 minutes during rest breaks.

**Waiting Time Penalties Sub-Class**

"All former nonexempt hourly workers paid by Taylor, who, irrespective of whether they resigned or were fired, and irrespective of whether paid by Taylor or by Co Defendants, did not either a). receive their final pay checks on a timely basis and/or b). did not receive all monies due and owing to them in their final pay checks, regardless of whether the checks were payable by Taylor or by Co Defendants.

**Wage Statement Sub-Class**

"All non-exempt hourly workers paid by Taylor, and all non-exempt hourly workers controlled by Taylor, but paid by Co Defendants, who worked pursuant to Taylor's rules and regulations whose wage statements did not accurately set forth all required information as required by California Labor Code section 226(a)."

This motion should be granted as the proposed class meets all of the requirements for certification under FRCP Rule 23(b)(2) and 23(b)(3):   (1) Defendant Taylor Farms has acted or refused to act on grounds that apply generally to the,  (2) the class representatives' claims are typical of those of the other class members; (3) the class is so numerous that it would be impracticable to bring them all separately before the court; (4) common questions of law and fact predominate; (5) plaintiffs and class counsel will adequately represent the class; and (6) a class action is superior to the other methods for the fair and adequate resolution of the class claims. This motion is based upon this Notice of Motion, the Memorandum of Points and Authorities in support of the motion, the supporting declarations including all exhibits thereto, the accompanying Request for Judicial Notice, the Court's files and records herein and upon such further papers and oral argument as may be presented to the Court.

Pursuant to this Court's Standing Order, this motion is made following attempts by Plaintiffs' Counsel to meet and confer with Defense Counsel regarding the propriety of class certification in this action.  We spoke directly to the counsel for each Defendant with the exception of Defendant Quality Farm Labor ("QFL") who just recently answered the complaint.[1]  Plaintiffs'

---

[1] See, Declaration of Patricia K. Oliver ("Oliver Decl."), ¶¶ 1-10.

counsel also spoke to the other Doe Defendants, and all were reticent to agree to any elements in the class certification motion.[2]  Plaintiffs' counsel also spoke to TFP's counsel who agreed that it would not dispute numerosity of the class or adequacy of class counsel.[3]

Date:  October 4, 2013

Respectfully submitted,

**R. REX PARRIS LAW FIRM**

_____
Patricia K. Oliver
Attorneys for Plaintiffs

---

[2] Id. at ¶¶ 3-10.
[3] Id. at ¶¶ 1-2.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1
2

**TABLE OF AUTHORITIES**

**PAGE**

3

**Federal Cases**

4

Abdullah v. U.S. Security Assoc., Inc.,

5

2013 WL 5383225 (9th Cir. Feb. 27, 2013.................................................................... 2, 13, 15

6

Alba v. Papa John's USA, Inc.,

7

2007 WL 953849, *2 (C.D. Cal. Feb. 7, 2007)..................................................................... 14, 15

8

Amgen Inc. v. Conn. Retirement Plans & Trust Funds,

9

133 S.Ct. 1184, 1194–95 (2013) ......................................................................... 13

10

Armstrong v. Davis,

11

275 F.3d 849, 868 (9th Cir. 2001) ....................................................................... 15

12

Bibo v. Fed. Express, Inc.,

13

2009 WL 1068880 (N.D. Cal. Apr. 21, 2009) ....................................................... 14

14

Breeden v. Benchmark Lending Group, Inc.,

15

229 F.R.D. 623 (N.D. Cal. 2005)......................................................................... 14

16

Cervantes v. Celestica Corp.,

17

253 F.R.D. 562, 573 (C.D. Cal. 2008) ............................................................... 15, 16

18

Cruz v. Dollar Tree Stores,

19

270 F.R.D. 499, 506 (N.D. Cal. 2010)................................................................. 14

20

Dilts v. Penske Logistics, LLC,

21

2010 WL 1709807 (S.D. Cal. April 26, 2010)...................................................... 16

22

Elliot v. Spherion Pacific Work, LLC,

23

572 F.Supp.2d 1169, 1181 (C.D.Cal. 2008) ........................................................ 16

24

Garcia et al. v. Tyson Foods, Inc.,

25

255 F.R.D. 678 (D. Kan. 2009)...................................................................... passim

26

Gil v. Solectron Corporation,

27

2009 WL 88346, *3 (N.D. Cal. 2009) ................................................................. 16

28

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

PAGE

**Federal Cases**

Hanlon v. Chrysler Corp.,

150 F.3d 1011, 1019 (9th Cir. 1998) ................................................................... 15, 20

Heffelfinger v. Electronic Data Systems Corp.,

492 Fed. Appx. 710 (9th Cir. 2012) ........................................................................ 14

Hilao v. Estate of Ferdinand Marcos,

103 F.3d 767, 782-87 (9th Cir. 1996) ...................................................................... 25

IBP, Inc. v. Alvarez,

546 U.S. 21, 32-37 (2005) ....................................................................................... 14

In re Wells Fargo Home Mortgage Overtime Pay Litig.,

571 F.3d 953, 958-59 (9th Cir. 2009) ...................................................................... 22

Int'l Bhd. of Teamsters v. United States,

431 U.S. 324, 358 (1977).......................................................................................... 15

Leyva v. Medline Indus. Inc.,

716 F.3d 510, 513–15 (9th Cir. 2013) ...................................................................... 15

McKenzie v. Federal Exp. Corp.,

275 F.R.D. 290, 294-295 (C.D. Cal. 2011)............................................................... 16

Morales v. Greater Omaha Packing Co., Inc.,

266 F.R.D. 294 (D. Neb. 2010)........................................................................... passim

Morton v. Valley Transport, Inc.,

2007 WL 1113999, *4-5 (N.D. Cal. April 13, 2007)........................................... 20, 21

Musch v. Domtar Industries, Inc.,

252 F.R.D. 456 (W.D. Wis. 2008) ............................................................................ 16

Ortega v. J.B. Hunt Transp., Inc.,

258 F.R.D. 361, 374 (C.D. Cal. 2009) ...................................................................... 16

Perez v. Safety-Kleen Systems, Inc.,

253 F.R.D. 508, 521 (N.D. Cal. 2008).................................................................. passim

ii

**TABLE OF AUTHORITIES**

PAGE

**Federal Cases**

Phillips Petroleum Co. v. Shutts,

   472 U.S. 797, 809 (1985)..................................................................... 13, 24

Romero v. Producers Dairy Foods, Inc.,

   235 F.R.D. 474 (E.D. Cal. 2006) ...................................................... 14

Schwartz v. Harp,

   108 F.R.D. 278, 282 (C.D. Cal. 1985) ........................................... 20

Slaven v. BP Am., Inc.,

   190 F.R.D. 649, 651 (C.D. Cal. 2000) ........................................... 13

Spoerle v. Kraft Foods Global, Inc.,

   253 F.R.D. 434 (W.D. Wis. 2008) .................................................. 16

United Steel v. Conoco Phillips Co.,

   593 F.3d 802, 807–08 (9th Cir. 2009) ........................................... 13

Valentino v. Carter-Wallace, Inc.,

   97 F.3d 1227, 1234 (9th Cir. 1996) ............................................... 23

Wal-Mart Stores, Inc. v. Dukes,

   131 S. Ct. 2551–2552 (2011).............................................. 13, 14, 15, 23

Wal-Mart Stores, Inc. Wage and Hour Litigation,

   (N.D. Cal. Feb. 13, 2008), 2008 WL 413749 .............................. 17

Wren v. RGIS inventory Specialists,

   256 F.R.D. 180, 205 (N.D. Cal. 2009) .......................................... 16

Zinser v. Accufix Research Inst., Inc.,

   253 F.3d 1180, 1189 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001)..................... 23

**California Cases**

Bradley v. Networkers Int'l, LLC.,

   211 Cal. App. 4th 1129, 1149 (2013) ............................................ 18, 20

iii

1

**TABLE OF AUTHORITIES**

2

PAGE

**California Cases**

3

4

Brinker Restaurant Corp. v. Superior Court,

5

   53 Cal. 4th 1004, 1033-34 (2012) ................................................................ 1, 14, 15

6

Bufil v. Dollar Financial Group,

7

   162 Cal. App. 4th 1193 (2008) ......................................................... 14

8

Estrada v. FedEx Ground Package System, Inc.

9

   (2007) 154 Cal.App.4th 1 ................................................................ 18, 19

10

Faulkinbury v. Boyd & Assoc., Inc.,

11

   216 Cal. App. 4th 220 (2013) ......................................................... 14

12

Gentry v. Superior Court,

13

   42 Cal. 4th 443, 462 (2007) ........................................................... 24

14

Ghazaryan v. Diva Limousine,

15

   169 Cal. App. 4th 1524 (2008) ......................................................... 14

16

Jaimez v. Daiohs USA, Inc.,

17

   181 Cal. App. 4th 1286, 1301 (2010) ............................................. 20

18

Martinez v. Combs,

19

   (2010) 49 Cal.4th 35 .................................................................... passim

20

Sav-On Drug Stores, Inc. v. Superior Court,

21

   34 Cal. 4th 319 (2004) ................................................................ 14

22

Tieberg v. Unemployment Ins. Ap. Bd.

23

   (1970) 2 Cal.3d 943 ..................................................................... 18

24

**Other Authorities**

25

Newberg On Class Actions, § 3:5 ................................................... 14, 22

26

27

28

1

<u>**TABLE OF AUTHORITIES**</u>

2

<u>**PAGE**</u>

**Statutes**

3

California Business and Professions Code §§ 17200 et seq. ......................................................... 17

4

Labor Code § 2699......................................................................................................................... 17

5

Labor Code § 512(a) .................................................................................................................... 1, 2

6

Labor Code §§ 201-203 ................................................................................................................... 3

7

Labor Code §§ 2698 et seq. .......................................................................................................... 17

8

**Rules**

9

21 C.F.R. § 110.10 .......................................................................................................................... 2

10

Fed.R.Civ. P. 23(b)(3)................................................................................................................... 13

11

Fed.R.Civ.P. 23(a) ................................................................................................................... 13, 14

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## I.      INTRODUCTION

Plaintiffs MARIA DEL CARMEN PENA, CONSUELO HERNANDEZ, LETICIA SUAREZ, ROSEMARY DAIL, and WENDELL T. MORRIS, on their own behalf and all others similarly situated ("Plaintiffs") come before the Court seeking certification of their claims for Defendants' failure to pay wages owed to nonexempt hourly workers.  Defendant, Taylor Farms Pacific ("TFP") is the owner/operator of two fresh-cut food processing facilities in Tracy, California.   Co-Defendants, Abel Mendoza, Inc. ("AMI") Manpower, Inc., Slingshot Connections ("SS") and Quality Farm Labor, Inc. ("QFL" (hereinafter collectively referred to as "Co Defendants")) are labor vendors who provided unskilled, hourly, workers to TFP.  Because TFP controlled the wages, hours, and/or working conditions of workers retained by TFP through these labor vendors, TFP is the joint employer of all putative class members.  Martinez v. Combs, (2010) 49 Cal.4th 35, 64.  TFP, in fact, admits that the relevant policies apply to all putative class members.  Despite obtaining the benefit of their work, TFP took no action to make sure the class members were paid for all hours worked or for meal and rest break premiums.

TFP instead adopted policies that were facially invalid and thus the putative class, regardless of who paid them, was uniformly subject to the same illegal pay and break policies.  This is exactly the type of wage and hour case that should be adjudicated on a class-wide basis according to the California Supreme Court in the seminal Brinker case.[4]

- Contrary to California law, TFP's break policies state, *inter alia*, that: "Employees working more than a ten (10) hour shift will be allowed one additional 10 minute paid rest period."[5]  Consistent with this policy, TFP did not program its KRONOS payroll system to ensure employees were paid for these missed second meal periods even though California regulations indisputably require a 30 minute meal period after 10 hours of work. [6]

---

[4] Brinker Restaurant Corp. v. Superior Court, 53 Cal. 4th 1004, 1033-34 (2012) (reversing appellate court's decision to overturn class certification where the written policy allegedly violated a California wage order).

[5] Decl. of Phil Downey ("Downey Decl."), Exhibits 1-4, TFP Employee Manuals from 2008-2011, § 9.3. Unless otherwise noted, all references to "Ex." or "Ex.'s" refer to Exhibits attached to Mr. Downey's Declaration.

[6] Compare Labor Code § 512(a)  to Ex. 31, Lacy at 65:10-18 & 82:7-18.

- To correct this, TFP adopted a policy of requiring employees to sign meal period waiver agreements in 2012.[7] That too is certifiable. Just last week, the Ninth Circuit upheld the certification of a very similar class action. Abdullah v. U.S. Security Assoc., Inc., 2013 WL 5383225 (9th Cir. Feb. 27, 2013) (upholding certification of class challenging meal period waivers).

- TFP's own time records show that TFP regularly required employees to work without receiving the first meal break within 5 hours of work.[8]

- TFP also required the Mixed Hourly Workers Sub-Class to use part of their 30 minute meal break to wait in long lines to clock back in for work.[9]

- TFP required employees to work through their rest breaks (or cut short meal periods) to complete production jobs to load on waiting trucks.[10]

- TFP also failed to adopt a policy to ensure members of the Donning and Doffing Sub-Class members were compensated for time spent in donning protective gear, and thus members of this subclass engaged in off-the-clock work activities (mandated by 21 C.F.R. § 110.10) during their 10 minute rest breaks,[11] 30 minute meal periods,[12] and before their shifts began.[13] This

---

[7] Ex. 15, Meal Period Waiver; Ex. ___M.  38 Arriaga ¶ 8; Ex. ___Tovar ¶ 13–18.

[8] See, Labor Code § 512(a) and IWC Wage Order 13-2001 § 11(B).

[9] Ex. 37, Angel ¶¶ 10, 17; Ex. 39, Borja ¶¶11–13, 16–17;  Ex. 40, Calderon ¶ 15; Ex. 42, Castruita ¶ 8; Ex. 43 L. Diaz ¶ 18; Ex. 46, Fernandez ¶ 16; Ex. 47, Garcia ¶ 16; Ex. 49, M. Lesdesma ¶¶ 6, 13; Ex. 50, P. Lesdesma ¶¶6, 13;  Ex. 53. Morales ¶ 17; Ex. 54, Pacay ¶ 20; Ex. 56, Alma Perez ¶ 8;  Ex. 60 Ramos ¶ 13; Ex. 64 Salvidar ¶ 12; Ex. 66, Soto ¶ 10; Ex. 68, Valdez ¶ 10.

[10] See, i.e., Ex. 38, M. Arriaga ¶ 14; Ex. 39, Borja ¶¶ 14,18–19;  Ex. 40, Calderon ¶¶9, 16; Ex. 43 L. Diaz ¶¶ 13, 19;  Ex. 46, Fernandez ¶ 17; Ex. 48, Hernandez ¶ 20; Ex. 52, Meza ¶ 23; Ex. 53, Morales ¶ 18; Ex. 56, Alma Perez ¶ 9;  Ex. 60, Ramos ¶ 12; Ex. 61, Rocha ¶ 16; Ex. 62, Rodriguez ¶ 15; Ex. 65, Sanchez ¶ 12; Ex. 67, Tovar ¶ 39.

[11] See, i.e., Ex. 38 , M. Arriaga ¶¶6, 11–12; Ex. 37, Angel ¶ 10; Ex. 39, Borja ¶ 16–17;  Ex. 40, Calderon ¶ 15; Ex. 42,Castruita ¶ 8; Ex. 46, Fernandez ¶¶14–17; Ex. 47, Garcia ¶ 12–14; Ex. 48, Hernandez ¶ 22; Ex. 50, P. Lopez ¶¶ 10, 17; Ex. 52, Meza ¶¶ 21–23; Ex. 53, Morales  ¶ 17; Ex. 55, Alejandra Perez¶ ¶16, 18–19, 27–28; Ex. 56, Alma Perez ¶¶ 6–9;  Ex. 60 Ramos ¶ 13; Ex. 61 Rocha ¶ 15; Ex. 65, Sanchez ¶ 13; Ex. 66, Soto ¶ 12;  Ex. 67, Tovar ¶ 6; Ex. 68 Valdez ¶ 10.

[12] See, i.e., Ex. 39, Borja ¶¶ 10–14;  Ex. 40, Calderon ¶¶10–13; Ex. 41. Castillo ¶ X; Ex. 42, Castruita ¶ 6; Ex. 43, L. Diaz ¶¶12–15; Ex. 46, Fernandez ¶¶ 8–11; Ex. 47, Garcia ¶¶ 10, 21; Ex. 48, Hernandez ¶¶15–17, 19; Ex. 49, M. Lesdesma ¶¶8–9; Ex.50, P. Lesdesma ¶¶ 8–9; Ex. 51, Lopez ¶ 9; Ex. 52, Meza ¶ 20; Ex. 53, Morales ¶¶ 12–13; Pacay ¶ 16; Ex. 59, T. Perez ¶¶ 11–13; Ex. 60, Ramos ¶ 11; Ex. 61 Rocha ¶ 10; Ex. 62, Rodriguez ¶¶15–17; Ex. 64, Salvidar ¶¶ 10–12; Ex. 65, Sanchez ¶ 11; Ex. 67, Tovar ¶¶ 6, 35; Ex. 68, Valdez ¶ 8.

2

included required work activities of, *inter alia*, donning, doffing, sanitizing sanitary gear and washing and sanitizing their person waiting in lengthy lines to punch back in, returning lunch pails/rest pail to outside trailers.[14]

- TFP never paid its own employees, or joint employees for any of the above violations, and thus, all putative class members faced the same violations regardless of whether they were joint employees or direct employees.[15]

- TFP did not pay all of the wages set forth above at the time of discharge.[16]

- TFP and its Co-Defendants did not comply with California's requirements for wage statements either by failing to include payment for all hours worked and premium pay or failing to list pay rate.[17]

It is not surprising that TFP's employees were very busy and could not take meal and rest breaks – TFP produces highly perishable food products that must be quickly shipped. Moreover, federal regulations mandate that employees wear protective gear to prevent cross-contamination (increasing labor costs if employees are paid for donning time).  This increases the pressure to work off-the-clock and during meal and rest breaks.

The pressures TFP faces are best summed up by a statement made by one of TFP's sister companies in a labor dispute in the Northern District of Georgia:

"In the produce business, controlling wage costs is the single most important factor in

---

[13] See i.e. Ex. 36, V. Aguirre ¶ 4; Ex. 37, Angel ¶ 6; Ex. 39, Borja ¶ ¶ 5–9; Ex. 40, Calderon ¶¶5–8; Ex., 41, Castillo ¶¶ 3–6; Ex. 42, Castruita ¶3; Ex. 43, L. Diaz ¶¶4–11; Ex.46, Fernandez ¶¶ 4 –7; Ex. 47, Garcia ¶¶5–6; Ex. 48, Hernandez ¶¶ 5–12; Ex. 49, M. Lesdesma ¶¶3–6; Ex. 50, P. Lesdesma ¶¶3–6; Ex. 51, Lopez ¶¶ 6. 13; Ex. 52, Meza ¶¶ 13, 17; Ex. 53, Morales ¶¶ 6–11; Ex. 54, Pacay ¶¶8, 13.

[14] See i.e. Ex. 36, V. Aguirre ¶¶ 10,14; Ex. 39, Borja ¶¶2, 8, 15, 19,24; Ex. 40, Calderon ¶ 8, 14, 16; Ex. 42, Castruita ¶ 14; 16; Ex. 44, R. Diaz ¶ X; Ex. 46, Fernandez ¶¶6, 13, 22; Ex. 53, Morales ¶ 19; Ex. 56, Alma Perez ¶ 21; Ex. 60, Ramos ¶ 5; Ex. 62, Rodriguez ¶¶11, 20, 22; Ex. 65, Sanchez ¶ 20; Ex. 67, Tovar ¶ 37; Ex. 68, Valdez ¶ 17.  See also, Ex.'s 5-9, GMPs.

[15] Ex. 31, Lacy at 65:10-20, 82: 7-18., 95:14-20, and Ex. 52, Meza ¶ 18; Ex. 67, Tovar ¶¶ 4, 23–25, 27, 29, 31; Exh. 28, Coubrough  at 72:3-11; 76:16-21; 88: 8-21; Ex. 74, Bates No. 014075 -014076; Ex. 18 Martinez Investigation and DLSE Complaint.

[16] Compare Labor Code §§ 201-203 to Bates No. 014075 -014076; Ex. 36, V. Aguirre ¶¶ 21–22; Ex. 42, Castruita ¶ 14; Ex. 56, Alma Perez ¶¶19–20; Ex. 57, Enrique Perez ¶ 14; Ex. 61, Rocha ¶ 5.

[17] Compare Request for Judicial Notice (RFJ), Oliver Decl., Exh. HH, a sample of a proper wage statement to Ex.'s 14-15, the non-compliant pay stubs that do not list hourly rate, fail to include compensation for off-the-clock work, and fail to include premium pay for missed meal periods.

3

maintaining a profit margin, so much so that *Taylor Farms' automated payroll system alerts at least three different levels of management whenever an employee punches in too early, punches out too late, or fails to take a lunch or break.*"[18]

TFP, in fact, awards its supervisors with bonuses for keeping wages as low as possible.[19]

TFP supplied a sample of timekeeping records for the putative class members in this action.  Out of the small sampling of KRONOS punch records provided (not including AMANO and hand written records), we estimate the following: (1) TFP failed to provide meal breaks within 5 hours for timely first meal breaks 62,424 times; (2) TFP failed to offer second 30 minute meal breaks 94,204 times; and (3) full 30 minute meal breaks 18,238 times.[20]

Most importantly, despite the ability to track these hours, TFP's payroll administrator (Debra Lacy) admits that TFP never programed the payroll system to ensure employees receive the premium wages owed when employees missed the second meal periods:  "*There's nothing set up in the system to automatically pay an additional hour*…." (emphasis added).[21]

Given these facially invalid policies and deliberate and systematic violation of California law pertaining to wages and meal/rest breaks, Plaintiffs respectfully request that the court certify the following class:

> All former and current non-exempt hourly employees of Taylor and joint/dual employees of Taylor and Co Defendants, who worked at facilities owned and/or operated by Taylor during the four-year period preceding the filing of this action through the date notice is mailed to the class.

Plaintiffs also seek certification of *four* subclasses:  (1) workers who did not get paid for time spent donning and doffing protective gear before work or during meal periods and rest breaks; (2) workers who did not receive their legally mandated meal periods (including the second meal

---

[18] See, RFJ, Oliver Decl., Exh. EE.

[19] Exh 26, Applonie at 256:21-258:25.

[20] These numbers are derived from our analysis of the KRONOS punch records produced by TFP.  Exh. 17. Indeed, this is buttressed by testimony from TFP's payroll administrator and the declarations from the putative class members .  Ex. 31, Lacy at 86:24-87:2; see also, fn. 5–7.

[21] Ex. 31, Lacy at 65:10-14.  Ms. Lacy finished this statement with the qualifier that we "cannot assume that he did not take a second meal period just because there are no punches."  Id.  Her statement is legally insignificant except insofar as it shows another violation of the California labor laws, and in this place, the regulations requiring employers keep accurate records of meal breaks.  See, e.g., Bradley v. Networkers Int'l, LLC., 211 Cal. App. 4th 1129, 1149 (2013).

4

period) and rest breaks; (3) workers who did not receive all wages owed and due at the time of termination; and (4) workers whose wage statements did not comply with California law.

This case should be certified as a class action under Rule 23 of the FRCP because: (1) Plaintiffs' claims are typical; (2) the class is so numerous that joinder would be impracticable; (3) common questions of law and fact predominate; (4) Plaintiffs and class counsel will adequately represent the class; and (5) a class action is superior to the other methods for the fair and adequate resolution of the class claims.

## II.    FACTUAL BACKGROUND

### A.    TFP Is Part of the Food Processing Industry Regulated by the FDA

TFP is a California subsidiary of Taylor Fresh Foods – the largest fresh-cut food producer in the world.[22] During the relevant time period, TFP operated two food production/salad processing plants in Tracy, California.[23]  The larger and newer of the two plants, is located on MacArthur Drive and the older and smaller plant is located on Valpico Road.[24]  At these two plants, putative class members work on food production lines to make bags and trays of perishable food products including salads, vegetables, and fruit snacks.[25]

Much of the food produced by TFP is marketed and sold under the brand name of Taylor Farms.  Taylor Farms' website represents to the consuming public that:

> "Quality is our passion. We have the most advanced fresh cut processing plants in the world. We invest in state of the art processing facilities and equipment to deliver the quality and peace of mind that you have come to expect from Taylor Farms.
>
> All of our products are produced under strict . . . controls and our entire process is routinely verified with third party audits. *All of our employees complete a training course to review our Good Manufacturing Practices (GMP) focusing on sanitation, employee hygiene and proper attire when working in the plant.*"[26]

These GMP's are, in fact, required by federal regulations.[27] All workers who work in the

---

[22] Ex. 26, Applonie Depo. at 148:10-19.
[23] Id. at 6:16-7:4.
[24] Id. at 59:2-18.
[25] See, RFJ, Oliver Decl. Ex., FF, web print-outs of products sold under the Taylor Farms label.
[26] See, RFJ, Oliver Decl. Ex., GG, web print-outs advertising safety measures.
[27] See, 21 C.F.R. sec 110.10(b)(1),  requiring food processing workers wear outer garments to protect against contamination, (b)(6) requiring hair nets and helmets to keep human hair off of food and to protect food product from contamination, (b)(5) requiring gloves for use in food handling.  Ex. 29, Foster at 20:18-24.

5

---

presence of exposed or packaged food product are expected to comply with the GMP's including the following:

> "All persons working in direct contact with food, food contact surfaces, and food packaging materials must conform to hygienic practices to protect against contamination of food, the methods for maintaining cleanliness include, but are not limited to:
>
> 1.   Wear clean outer garments
> 2.   Maintain adequate personal cleanliness
> 3.   Wash hands thoroughly and sanitize before work and after each absence from work station and at any other time when the hands may have become soiled or contaminated.  This particularly critical after eating or using the bathroom.
>
> ***
>
> 7.   Gloves must be intact, clean, and in sanitary condition and must be sanitized when returning to the work area.
> 8.   Hairnets are to be worn be everyone on the production and warehouse floor…Bear nets are required for anyone with a beard.[28]

## B.   TFP Admits Employing Hundreds of Individuals in the Putative Class

TFP admits it has no particularly busy season and keeps a full-staff during most of the year.[29] The named plaintiffs are putative class members directly or jointly employed by TFP during the relevant time period.  TFP directly employed Plaintiffs Leticia Suarez and Rosemary Dail.[30]  In addition, TFP either directly or jointly employed the other three named Plaintiffs:  Maria del Carmen Pena worked for TFP & AMI[31], Consuelo Hernandez worked for TFP & MP [32] and Wendell Morris worked for TFP, MP, SS, QFL.[33]

## C.   TFP Schedules, Trains and Controls the Work of the Putative Class

The wages, hours worked, and working conditions of every putative class member – whether directly employed by TFP or jointly employed by TFP – are controlled by TFP.[34]  Most

---

[28] See, Ex.'s 1-4, § 5.1; Ex. 29, Foster at 38:22-46:17.
[29] Ex. 33, Lopez at 121:3-132:3; see also, Ex. 69_, Carmona at 66:13-16.
[30] Ex. 23, Suarez at 123:14-22 and 133:15-16; Ex. 24, Dail at 37:22-25, 38:20-22, and 194:10-11.
[31] Ex. 21, Pena at 17:6-18:3 and 43:14-44:1.
[32] Ex. 22, Hernandez at 31:13-32:18, 102:14-21.
[33]  Exh. 25, Morris at 124:19-23, 176:12-14 and 186:25-187:6.
[34] See, e.g., Ex. 69, Carmona, at 89:18-90:24; Ex. 70, Mendoza at 26:11-21, 58:6-61:8, 74:12-19, 75:12-76:2, 77:23-78:6, and 116:9-16; Ex. 71, Navarro at 39:23-40:8; 45:13-46:2.

importantly, TFP employs all supervisors overseeing the production work.[35]   The Code of Federal Regulations, moreover, requires that TFP retain competent supervisors to oversee all food handling by the putative class members.[36]

TFP also directly controls the wages paid, setting hourly rates for production workers at $8 per hour and reviewing all timesheets.[37]   TFP trains its supervisors about how to review and approve timecards, and they then review and approve time cards for all production workers regardless of whether directly or jointly employed by TFP.[38]   TFP then awards its supervisors with bonuses based upon their ability to keep labor costs and wages as low as possible at the Tracy, California facilities.[39]

Indeed, for much of the class period, all production workers – whether directly or jointly employed by TFP – used KRONOS time-clocks owned and controlled by TFP.[40]   For approximately 2 years of the relevant class period, TFP used two other attendance systems for tracking the attendance of AMI workers, (1) AMANO, which was owned and controlled by TFP,[41] and (2) a hand written time system whereby start and end times were worked by AMI workers were noted on a piece of paper and meal breaks (irrespective of how long in duration were marked down as 30 minutes).[42]   TFP's Central Control employees would automatically record a 30 minute lunch without confirming with the production floor supervisor whether any lunch was taken.[43]   Because of the pressure to move the product to market, meal periods were recorded as starting within the first 5 hours after the start of production.[44]

Pursuant to the Code of Federal Regulations, TFP must train all workers that work in or about food products, packaging materials and contact surfaces in basic food safety and hygiene.

---

[35] Exh 69,,Carmona at 52:22-14.
[36] 21 CFR 110.10(d), 110.80.
[37] Exh 69, Carmona at 33:18-23, 36:8-15; Ex. 73, Estrada at 33:1-44:8; Ex.30, Heywood at 19:15-20:4.
[38] Ex. 33, Lopez at 11:4-15:22.
[39] Ex. 26, Applonie at 256:21-258:25.
[40] Ex. 69, Carmona at 106:2-6; and Ex. 33, Lopez at 89:1-90:8; 97:22-98:5.
[41] Ex. 33, Lopez at 89:1-90:2.
[42] Ex. 19, Time Sheets.; Ex., 39 Borja ¶ 8; Ex., Castillo ¶¶8, 21; Ex. 44, R. Diaz ¶ 11; Ex. 45, Y. Diaz ¶ 9; Ex. 46, Fernandez ¶ 6; Ex. 51, Lopez ¶¶ 7–8; Ex. 52, Meza ¶¶ 12,21, 22 48; Ex. 53, Morales ¶ 9; Ex. 55, Alejandra Perez¶ 4; Ex. 59,  T. Perez ¶ ¶ 8, 21; Ex. 65, Sanchez ¶ 9; Ex. 66, Soto ¶8; Ex. 67, Tovar ¶¶ 19–22.
[43] Ex. 72, Rea, 91:5-13.
[44] Ex. 52, Meza ¶¶  21–22; Ex. 66, Soto ¶ 8.

7

This training includes proper personal hygiene and washing of hands to avoid food contamination.[45]   TFP must also train and then require that all of these employees wear proper protective gear, which generally includes head and face coverings, gloves, sleeves, and body coverings.[46]   TFP also controlled all of the work performed by the putative class members including the donning and doffing of protective gear required by the FDA.[47]   All employees are subject to being tested and trained in food safety by TFP via an electronic program known as ALCHEMY.[48]   All workers, regardless of by who trained them, were trained pursuant to TFP's rules and regulations and orientation programs supplied by TFP to Co Defendants.[49]

TFP also sets work hours and production schedules meal and rest break times/duration and duration.[50]   Many of the class members are line workers – meaning they work on assembly lines that are controlled entirely by the line leaders who decide when and if the class members can take a break.   All putative class members must follow the orders of the TFP supervisors or risk termination.[51]   To ensure that all workers were familiar with its rules and regulations, TFP posted rules and regulations in the cafeteria and hallways so that they could be visible and known to all workers.[52]   All plaintiffs and all putative Class members attended required orientations in which they were uniformly instructed in the rules and regulations and procedures to be followed at Taylor.[53]   GMP's are posted in different areas around the plant so that all workers can observe them.[54]   Managers and Supervisors were under orders that these rules applied not only to Taylor

---

[45] 21 CFR 110.10(b); Ex. 29, Foster at 17:8-18:13.

[46] Id.

[47] 21 CFR 110.10(c); Downey Decl., Exh 30, Heywood at 62:16-25, Ex.32, Laurel at 64:16-65:19, and Ex. 29, Foster at 48:11-24.

[48] Ex. 29, Foster at 48:11-24, see also, Alchemy at http://www.alchemysystems.com/.

[49] Ex. 69, Carmona at 13:19-25; Ex. 70, Mendoza. at 19:19-20:3; and Ex. 71, Navarro at 12:17-14:10.

[50] Ex. 69, Carmona at 89:18-98:24, Ex. 72, Rea at 62:12-67:6; Ex.30, Heywood at 60:8-23, 61:15-17; and Ex.35, Sonneman at 73:25-74:18.

[51] Ex. 72, Rea at 50:14-57:1; Ex. 36, V. Aguirre ¶¶ 18, 19; Ex., 37 Angel ¶ 14;  39 Borja ¶¶ 2, 10; Ex., 40 Calderon ¶ 9; Ex. 43, L. Diaz ¶¶ 2, 13; Ex. 46, Fernandez ¶ 2; Ex. 47, Garcia ¶ 9; Ex. 52, Meza ¶ 18; Ex. 53, Morales ¶ 12; Ex. 55, Alejandra Perez ¶¶ 3, 10; Ex. 61,  Rocha ¶¶ 23–24; Ex. 62, Rodriguez ¶ 13; Ex. 67, Tovar ¶¶4, 23–29, 31.

[52] Ex. 72, Rea at 53:6-15.

[53] Ex. 69, Carmona at 13:15-25, and 14:11 -15:7; Ex. 29,  Foster at 35:6-22;  Ex. 72, Rea at 63:8-11.

[54] Ex. 72, Rea, at 57: 2-11.

Employees, but to "their people."[55]  Supervisors could and did discipline agency workers for not complying with TFP rules and regulations.[56]

### D.      TFP Has a Uniform Meal and Rest Break Policy

The following is an excerpt from TFP's Employee Manual, setting forth TFP's written policy for meal and rest periods:

> If you work a shift of at least 4 hours, you will receive a 10 minute paid rest period.
>
> If you are working a full 8 hour shift you will receive two paid rest periods of 10 minutes each.
>
> *Employees working more than a 10 hour shift will be allowed one additional 10 minute paid rest period.*
>
> If you work more than six (6) hours per day, you will be scheduled for a thirty (30) minute lunch period without pay.  *Your supervisor will advise you of the time and length of the lunch period for your shift.*  You are expected to observe the time limits of the lunch period available to you and return from lunch as scheduled.
>
> *It is very important that you return from your rest period or lunch period on time to avoid disciplinary action.*[57]

TFP, moreover, disciplined employees who violated this policy, reminding workers that meal breaks are 30 minutes and that rest breaks were 10 minutes.[58]

In the wake of this litigation, recognizing the illegality of the second meal period policy that limited second meal periods to ten minutes, TFP changed the policy in approximately mid-year 2012 to permit second meal breaks after 12 hours of work.  In addition, TFP required workers to sign meal period waivers in which they agreed to waive their second thirty minute meal break on days of between 10 and 12 hours.[59]

Throughout the class period, TFP has had a uniform practice of not paying employees the meal break/rest break premiums and waiting time penalties owed for not providing the legally

---

[55] See Ex.  11, TFP's "Responsibility for Compliance," PACIFC000100.

[56] Ex. 38, M.  Arriaga ¶ 13; Ex. 39, Borja ¶ 2; Ex. 43, L. Diaz ¶ 2;  Ex. 46, Fernandez ¶ 2; Ex. 51, Lopez ¶ X;  Ex. __, Morales ¶ 2Ex. 62, Rodriguez ¶¶ 2, 13–14; Ex. 65, Sanchez ¶¶ 14 –15; Ex. 67, Tovar ¶¶ 4, 23–31.

[57] Ex.'s 1-4, Employee Handbooks, 2008, 2009, 2011, TFP Bates Nos. 002197 – 002284 (emphasis added).

[58] Ex. 14, Bates No. 14457; Ex.  39, Borja ¶ 12; Ex. 40, Calderon ¶ 13; Ex.46, Fernandez ¶ 21; Ex. 62, Rodriquez ¶ 13.

[59] Ex. 30, Heywood at 40:19-41:11; Ex. 32, Laurel at 44:21-45:2; and Ex. 72, Rea at 71:25-81:6; Ex. 38, Arriaga ¶ 8.

9

mandated meal and rest breaks required under California Labor Code section.  Indeed, TFP has not produced a shred of evidence which might indicate that workers have been paid meal and rest break premiums.  This applied to both directly employed and jointly employed class members.[60]  The only evidence in the possession of Plaintiffs' counsel of meal break premiums having been paid to an employee is a file obtained from the Department of Labor Standards Enforcement concerning a complaint by Damien Martinez for not receiving meal breaks after 10 hours of work and for not having timely received his final pay check[61]

TFP applied uniform timekeeping and payroll practices and policies during the class period, and thus the evidence of the meal and rest period violations exists in TFP's own records.  TFP's KRONOs and Amano punch records and manual time sheets reflect that it was routine practice for workers not to be offered a meal break after 5 hours of working.[62]  TFP's pay records reflect that Taylor never paid its own employees meal break premiums for meal breaks not starting after 5 hours of work.[63]

TFP, moreover, did not produce any evidence of paying premiums when workers received less than a full 30 minute meal break or 10 minute rest break.[64]

With respect to the meal period, there were several work duties that prevented members of the class from taking full meal periods.  Plaintiffs alleged and TFP's punch records confirm that Plaintiffs and members of the Donning and Doffing Sub-Class were routinely unable to take

---

[60] Ex.28, Coubrough at 72:3-11; 76:16-21; 88: 8-21; Ex. 31, Lacy at 65:10-18 and 82:7-18.

[61] Ex.18, Damian Martinez investigation.

[62] Ex. Exh. 17.; Ex. 36, V. Aguirre ¶ 16; Ex. 38, M> Arriaga ¶ 10; Ex. 39, Borja ¶¶ 18–19;  Ex. 40, Calderon ¶ 16; Ex. 42, Castruita ¶ 7; Ex. 43, L. Diaz ¶ 20;  Ex. 46, Fernandez ¶  18; Ex. 47, Garcia ¶ 11; Ex. 53, Morales ¶ 19; Ex. 54, Pacay ¶ 23; Ex. 56, Alma Perez ¶ 13; Ex. 57, Enrique Perez ¶ 11; Ex. 61, Rocha ¶ 20; Ex. 65, Sanchez ¶ 12.

[63] See, e.g., Ex. 13 (no meal period premium).  Further, there is no evidence that Co-Defendants knew of missed meal or rest breaks let alone ever received premiums by TFP to pass on to their employees.  See, id., e.g., Ex. 70, Mendoza at 57:7-58:3; Ex. 71,  Navarro at 56:21-59:4;   Co-Defendants, moreover, do not appear to have received any indication that TFP failed to offer the legally mandated meal and rest breaks.  Id.

[64] Ex. 17, Kronos records;  Ex. 36, V. Aguirre ¶¶ 10,14; Ex. 39, Borja ¶¶2, 8, 15, 19,24; Ex. 40, Calderon ¶¶ 8, 14, 16; Ex. 42, Castruita ¶ 14; Ex. 43, L. Diaz ¶¶11, 16; Ex. 46, Fernandez ¶¶6, 13, 22; Ex. 48, Hernandez ¶¶ 21, 22; Ex. 53, Morales ¶ 19; Ex. 56, Alma Perez ¶ 21; Ex. 57, Enrique Perez ¶ 14; Ex. 60, Ramos ¶ 5; Ex. 62, Rodriguez ¶¶11, 20, 22; Ex. 65, Sanchez ¶ 20; Ex. 67, Tovar ¶ 37; Ex. 68, Valdez ¶ 17.

a full 30 minute meal break as required by the Labor Code.   Employees were required:

(1) perform clean-up duties in the cafeteria (returning all lunches to the lunch box room),[65]

(2) don head protective gear before entering production area,[66] (3) wait in lengthy lines to wash

their hands;[67] (4) don other protective gear after entering the plant, and (5) wait in long lines to

clock-back-in to work.[68]   TFP supervisors also ended meal breaks early when time sensitive

shipments were pending.[69]

With respect to the rest breaks, members of the Donning and Doffing Sub-Class were

never offered the opportunity to take duty free 10 minute rest breaks despite the provision for

such breaks in the employee manual.  On the contrary, members of this Sub-Class had to don and

doff the protective gear required by federal regulations and TFP's own policies, facing the same

two-step donning process described above.[70]  It also was common practice for Supervisors to

cancel rest breaks if it suited their needs and to falsify records concerning approval by workers.[71]

In what appears to have been a correction to alleviate the lines of employees in 2012,

TFP moved and added new time clocks in Valpico and MacArthur.[72]  TFP specifically installed

---

[65] Exh 5 at PACIFIC 013910, Ex.'s 1-4, §10.4; See also Ex. 36, V. Aguirre ¶ 13; Ex. 38, M. Arriaga ¶ 12; Ex. 37, Angel ¶ 10; Ex. 47, Garcia ¶ 12; Ex. 54, Pacay ¶ 10; Ex. 55, Alejandra Perez ¶ 27; Ex. 57,  Enrique Perez ¶ ¶ 3, 8; Ex. 61, Rocha ¶ 15; Ex. 62, Rodriguez ¶ 4.

[66] See i.e. Ex. 36, V. Aguirre ¶ 13; Ex. 38, M. Arriaga ¶ 6; Ex. 37, Angel ¶ 10; Ex. 39, Borja ¶¶16–17; Ex. 40, Calderon ¶ 15; Ex. 42 Castillo ¶ 14; Ex. 43, L. Diaz ¶ 18; Ex. 51, Lopez ¶ 10; Ex. 53, Morales ¶ 17; Ex. L. Perez ¶¶ 10, 16; Ex. 61, Rocha ¶ 15; Ex. 65, Sanchez ¶ X; Ex. 67, Tovar ¶ 6.

[67] Ex. 51, Lopez ¶ 10; Ex. 53, Morales ¶ 17; Ex. 55, Alejandra Perez ¶ 16; Ex. 56, Alma Perez ¶ 8; Ex. 62, Rodriguez ¶ 21; Ex. 65, Sanchez ¶ 13; Ex. 68, Valdez ¶ 10

[68] See i.e. Ex. 39, Borja ¶¶11–13, 16–17;  Ex. 40, Calderon ¶ 15; Ex. 42, Castruita ¶ 8; Ex. 43, L. Diaz ¶ 18; Ex. 46, Fernandez ¶ 16; Ex. 47, Garcia ¶ 16; Ex. 50, M. Lesdesma ¶¶ 6, 13; Ex. 54, Pacay ¶ 20; Ex. 56, Alma Perez ¶ 8;  Ex. 60, Ramos ¶ 13; Ex. 64, Salvidar ¶ 12; Ex. 68, Valdez ¶ 10.

[69] See i.e. Ex. 40, Calderon ¶¶9, 16; Ex. 43, L. Diaz ¶¶ 13, 19;  Ex. 46, Fernandez ¶ 17; Ex. 48, Hernandez ¶ 20; Ex. 52, Meza ¶ 23; Ex. 53, Morales ¶ 18; Ex. 56, Alma Perez ¶ 9; Ex. 60, Ramos ¶ 12; Ex. 61, Rocha ¶ 16; Ex. 62, Rodriguez ¶ 15; Ex. 65, Sanchez ¶ 12; Ex. 67, Tovar ¶ 39.

[70] See i.e. Ex. 36, V. Aguirre ¶¶ 9–10; Ex. 38, M. Arriaga ¶ 6; Ex. 37, Angel ¶ 8; Ex. 39, Borja ¶¶ 10–14; Ex. 40, Calderon ¶¶10–13; Ex. 41, Castillo ¶ X; Ex. 42, Castruita ¶ 6; Ex. 43, L. Diaz ¶¶12–15; Ex. 46, Fernandez ¶¶ 8–11; Ex. 47, Garcia ¶¶ 5,10, 21; Ex. 48, Hernandez ¶¶15–17, 19; Ex. 49, M. Lesdesma ¶¶ 8–9; Ex. 65, Sanchez ¶ 5.

[71]  See i.e. Morales ¶¶ 14– 15; Exh. 54,  Pacay ¶ 18; Alejandra Perez¶¶22,32;  Alma Perez ¶ 16;  Enrique Perez ¶ 9;  L. Perez ¶ 20; T. Perez ¶ 20; Exh. 60, Ramos ¶ 15; Ex. 61, Rocha ¶ 12; Exh. 62, Rodriguez ¶¶ 18–19; Sanchez ¶ 17; Soto ¶ 8; Tovar ¶ 39; Valdez ¶ 11.

[72] Ex. 47, Garcia ¶ 5; Ex. 48, Hernandez ¶ 9; Ex. 67, Tovar ¶ 11; Ex.27, Chavez at 27:16-28:3.

*three* additional clocks in the MacArthur plant, including two in the lunchroom.[73]  But that did not appear to cure the problem.  See, Exh. 15.

As a result of TFP's failure to pay these meal break premiums, rest break premiums and for pre shift donning activities,[74] Plaintiffs and putative class members uniformly did not receive all wages due and owing when they received their final pay checks – these putative class members are part of the Waiting Time Penalty Sub-Class.[75]

**E.     TFP's Electronic Tracking of Employees**

TFP admits that it utilizes a timekeeping system, KRONOS, that offers a variety of reporting capabilities and is then used with TFP's payroll software (SAGE) for calculating payroll.  When individuals arrive at work, they either sign-in or use their access card (part of TFP's radio frequency identification ("RFID") system) to enter the plant.  Each employee has a unique employee number for all of these systems.[76]  It appears that the KRONOS or the RFID system can be used to track when employees arrive to begin working and that information can be compared to the payroll data to determine if the employees were actually paid for all hours worked.   TFP also utilizes an enterprise resource planning system called Microsoft Ax, which helps businesses to standardize and consolidate their business functions.  Among other items, this system can be used to collect RFID data, centralize HR management functions, and manage time, equipment and employees.

Despite Plaintiffs validly seeking testimony of a 30(b)(6) witness regarding this type of electronic data and TFP's agreement to this Court at the initial status conference to offer such a witness, TFP refused to proffer up a qualified witness with knowledge on any of these systems, making it difficult to determine what data was produced and what should be produced.[77]  It is

---

[73] Ex. 27, Chavez at 27:16-28:18.

[74] See i.e. fn 65-70.

[75] See, Ex.'s 179, 19 & 20; Ex. 36, V. Aguirre ¶ 22; Ex. 42, Castruita ¶ 14; Ex. 56, Alma Perez ¶¶ 19–20; Ex. 57, Enrique Perez ¶¶ 13–14; Ex. 61, Rocha ¶ 5; Ex. 67, Tovar ¶ 37.

[76] See, Exh. 26, Applonie at 96:16-97:11.

[77] See, ECF No. 48, Hearing Transcript at 12:24-13:10 (agreeing to 30(b)(6) witness depositions of TFP to keep class certification schedule); Ex. 26, Applonie at 114:5-19, 130:16-131:10, 133:5-9, 144:3-11 (PMK witness designated by TFP to testify about electronic data, has not longed on or used KRONO's or Axapta in years, and

1  believed that this data can be used to track hours worked-off-the clock by members of the

2  putative class and for calculating damages on a class-wide basis.[78]

3  **II.    ARGUMENT**

4      Courts certify Rule 23 classes where:  "(1) the class is so numerous that joinder of all

5  class members is impracticable; (2) there are questions of law and fact common to the class; (3)

6  the claims or defenses of the representative parties are typical of the claims or defenses of the

7  class; and the representative parties will fairly and adequately protect the interests of the class."

8  Fed.R.Civ.P. 23(a); Abdullah, 2013 WL 5383225, *3, n.4 (upholding certification of employee

9  class action against security guard company for failure to offer duty free meal periods).

10      In addition to Rule 23(a), certification requires a showing that one of the requirements of

11  Rule 23(b) have been met.   Abdullah, 2013 WL 5383225, *3.   Plaintiffs must show that

12  questions of law or fact common to the members of the class predominate over any questions

13  affecting only individual members, and that a class action is superior to other available methods

14  for the fair and efficient adjudication of the controversy.   Fed.R.Civ. P. 23(b)(3).   While the

15  district court must conduct a "rigorous analysis" of the Rule 23 criteria, Wal-Mart Stores, Inc. v.

16  Dukes, 131 S. Ct. 2551–2552 (2011), Rule 23 does not grant a "license to engage in free-ranging

17  merits inquires at the certification stage," Amgen Inc. v. Conn. Retirement Plans & Trust Funds,

18  133 S.Ct. 1184, 1194–95 (2013).   "Merits questions may be considered to the extent—but only

19  to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class

20  certification are satisfied."   Id.   Doubts are to be resolved in favor of certification.   Slaven v. BP

21  Am., Inc., 190 F.R.D. 649, 651 (C.D. Cal. 2000).   Thus, the class should be certified if Plaintiff's

22  theory of liability is amenable to class treatment.   See United Steel v. Conoco Phillips Co., 593

23  F.3d 802, 807–08 (9th Cir. 2009) (reversing trial court order denying certification).

24      Federal[79] and state[80] courts regularly certify classes of employees seeking compensation

25  for violations of the California Labor Code.  Cases involving facially invalid policies fit squarely

26

27  further testifies that the right person is Robin Lopez because he has "above that level" for years.  PMK also cannot
    identify even the name of the software used for payroll).

28      [78] Plaintiffs are now meeting and conferring to file a motion to compel to additional deposition testimony
    and the production of electronic data, and we will offer all such evidence on rebuttal, if necessary.

into the category of cases regularly certified.[81]  Failure to adopt a policy to pay employees for donning protective equipment is similar to a facially invalid written policy.  Indeed, longstanding authority requires employers to compensate employees for time spent donning protective gear required by the employer or government regulation.[82]

### A.   Plaintiffs' Claims are Appropriate for Certification Under Rule 23(a)

#### 1.   The Putative Class Satisfies the Numerosity Requirement

Taking into account current and former employees, it is estimated that there are in excess of 1,000 class members.[83]  "The proposed class is so numerous that joinder of all members is impracticable...."  FRCP 23(a)(1).  Indeed, classes consisting of forty or more persons "should have a reasonable chance of success on the basis of number alone."  1 Newberg On Class Actions, § 3:5.

#### 2.   There Are Common Questions of Law and Fact

A party seeking class certification must prove that there are "questions of law and fact common to the class," Fed.R.Civ.P. 23(a) – that their claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution."  Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011).  Commonality focuses on whether common questions will

---

[79] See, e.g., Bibo v. Fed. Express, Inc., 2009 WL 1068880 (N.D. Cal. Apr. 21, 2009) (certifying 5 subclasses including subclass for truck drivers for missed or untimely meal periods and for performing off-the-clock work); Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474 (E.D. Cal. 2006) (certifying overtime pay claims by sales drivers); Cruz v. Dollar Tree Stores, 270 F.R.D. 499, 506 (N.D. Cal. 2010) (certifying class of retail managers in overtime claim); Heffelfinger v. Electronic Data Systems Corp., 492 Fed. Appx. 710 (9th Cir. 2012) (upholding certification of class of computer engineers for overtime claims); Breeden v. Benchmark Lending Group, Inc., 229 F.R.D. 623 (N.D. Cal. 2005) (certifying class of loan officers who were misclassified as exempt).

[80] See, e.g., Bradley, 211 Cal. App. 4th 1129 (2013) (certifying class of independent contractors who claimed to be employees and were allegedly denied meal and rest breaks); Faulkinbury v. Boyd & Assoc., Inc., 216 Cal. App. 4th 220 (2013) (certifying class of employees claiming they missed their meal and rest breaks); Ghazaryan v. Diva Limousine, 169 Cal. App. 4th 1524 (2008) (hourly workers' rest period claim); Bufil v. Dollar Financial Group, 162 Cal. App. 4th 1193 (2008) (hourly workers' meal period claims); Estrada v. FedEx, 154 Cal. App. 4th 1 (2007) (non-exempt employee's expense reimbursement claim); Sav-On Drug Stores, Inc. v. Superior Court, 34 Cal. 4th 319 (2004) (upholding trial court's decision in certifying class of managers who were misclassified).

[81] Brinker, 53 Cal. 4th at 1032,  Alba v. Papa John's USA, Inc., 2007 WL 953849, *2 (C.D. Cal. Feb. 7, 2007) (certifying class against employers who issued written policy that on its face violates California law).

[82] IBP, Inc. v. Alvarez, 546 U.S. 21, 32-37 (2005).

[83] Exhibit 73, Estrada at 49:17-51:17, 74:16-76:11; Ex. 33, Lopez at 112:7-12, and Ex. 69, Carmona at 64:25-65:10.

"generate common *answers* apt to drive the resolution of the litigation." Id. (emphasis in original and internal quotation marks omitted); see also, Abdullah, 2013 WL 5383225 * 3.

Rule 23(a)(2) requires only "a *single significant question of law or fact*." Abdullah, 2013 WL 5383225 * 3 (citations and quotations omitted); see also, Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 358 (1977) (holding that "pattern or practice" evidence can be sufficient to establish a "company's standard operating procedure" and provide the requisite "glue" for commonality and predominance under Rule 23). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998); Leyva v. Medline Indus. Inc., 716 F.3d 510, 513–15 (9th Cir. 2013) (holding that individual questions as to damage calculations does not defeat certification). Commonality is generally satisfied where "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001). If there is direct evidence of liability, Plaintiffs have established commonality. Cervantes v. Celestica Corp., 253 F.R.D. 562, 573 (C.D. Cal. 2008) (certifying class where defendant admitted it never paid premium wages owed for missed meal and rest periods).

> **a)** **Courts Repeatedly Find Commonality in Cases Involving Labor Law Issues Like those in this Action**

Numerous federal and state courts in California have certified class actions involving labor policies that, like the policies in this action, are facially invalid, fail to compensate employees for off-the-clock work, and fail to ensure payment of missed premium wages. These cases and the corresponding proof in this action are described below:

- Facially invalid meal, rest break and compensation policies are regularly certified because of the uniform written nature of the policies.[84] And in this action, TFP's

---

[84] Brinker, 53 Cal. 4th at 1032; Alba v. Papa John's, 2007 WL 953849, *2.

15

written manual fails to comply with the California wage orders because it fails to offer a second 30 minute meal break on shifts in excess of ten hours.[85]

- Donning and doffing cases are frequently certified, especially when the employer knew or should have known the employees were working off the clock.[86] TFP requires Donning and Doffing Sub-Class members to engage in GMP compliance work activities during their thirty minute meal and rest breaks and before work. TFP, however, never adopted a written policy to ensure payment for such work.[87]

- Federal and state courts likewise approve certification of class actions when employees fail to pay premiums for missed meal periods and rest breaks.[88] TFP, in this action, had a policy to deliberately and routinely fail to offer timely 30 minute meal breaks after 5 hours of work and did not compensate employees for the premium owed in missing the Courts regularly certify such cases as well.

- Wage statement cases are also routinely certified given the inherently common issues presented in such violations.[89]   Plaintiffs offered evidence that TFP issued

---

[85] See, e.g., IWC Wage Order 13-2001, section 11(B).

[86] Wren v. RGIS inventory Specialists, 256 F.R.D. 180, 205 (N.D. Cal. 2009) (certifying a donning and doffing claim where there was no policy prohibiting such work); Gil v. Solectron Corporation, 2009 WL 88346, *3 (N.D. Cal. 2009)  (granting class certification of donning and doffing claim of employees who submitted 26 declarations stating that they were not adequately paid for time spent putting on and removing protective and anti-static gear required by the employer); see also, Morales v. Greater Omaha Packing Co., Inc., 266 F.R.D. 294 (D. Neb. 2010); Garcia et al. v. Tyson Foods, Inc., 255 F.R.D. 678 (D. Kan. 2009); Garcia v. Tyson Foods, 255 F.R.D. 678 (D. Kan. 2009); Musch v. Domtar Industries, Inc., 252 F.R.D. 456 (W.D. Wis. 2008); Spoerle v. Kraft Foods Global, Inc., 253 F.R.D. 434 (W.D. Wis. 2008).

[87] Ex. 7, PACIFIC13920-922 showing detailed requirements for GMP but not including steps to ensure employees clock before donning gear.  There is some evidence that TFP would allow certain employees to clock in five minutes early, but that does not determine whether the employee was paid.  Indeed, some declarants who served as supervisors at TFP acknowledged that payroll is determined by the schedule set for particular employees, not the actual hours worked.  Ex. 67, Tovar ¶¶ 5, 22, Ex. 52, Meza ¶¶ 9, 14-17.  In any event, the evidence of TFP's "lack of policy" violates the law by failing to ensure payment for time spent donning and doffing.  Bradley, 211 Cal. App. at 1150 (certifying case involving lack of policy authorizing meal or rest periods).

[88] Dilts v. Penske Logistics, LLC, 2010 WL 1709807 (S.D. Cal. April 26, 2010) (certifying meal and rest period claims); Cervantes, 253 F.R.D. at 573-77; Jaimez v. Daiohs USA, Inc., 181 Cal. App. 4th 1286, 1303-04 (2010); Morton v. Valley Transport, Inc., 2007 WL 1113999, *4-5 (N.D. Cal. April 13, 2007).

[89] McKenzie v. Federal Exp. Corp., 275 F.R.D. 290, 294-295 (C.D. Cal. 2011) (certifying claim involving inaccurate wage statements); Ortega v. J.B. Hunt Transp., Inc., 258 F.R.D. 361, 374 (C.D. Cal. 2009); Perez v. Safety-Kleen Systems, Inc., 253 F.R.D. 508, 521 (N.D. Cal. 2008); Jaimez v. DAIOHS USA,Inc., 181 Cal.App.4th 1286, 1306 (2010); Elliot v. Spherion Pacific Work, LLC, 572 F.Supp.2d 1169, 1181 (C.D.Cal. 2008).

legally non-compliant wage statements (<u>e.g.</u>, fail to include applicable hourly pay-rates and inclusive dates for pay period) and caused the Co-Defendants to do the same.[90]   Even when the wage statements were superficially compliant, ALL wage statements fail under section 226(a)(6) of the Labor Code because they do not hours worked donning protective gear and do not include the premium owed for missing meal periods and rest breaks.

- Courts likewise found commonality when there are questions regarding the accuracy of time sheets.[91]   In this action, there is evidence TFP failed to keep accurate time records and records of meal and rest breaks.

- The willful failure to pay wages upon termination is another common claim that supports certification.[92] In this action, Plaintiffs did not receive all of the wages owed for:  missed meal periods and donning protective gear before shifts and during meal and rest breaks.

- Under the Private Attorneys General Act ("PAGA"), Labor Code §§ 2698 et seq., TFP is liable for civil penalties payable to the State of California and current and former employees for violations of the above Labor Code and Wage Order provisions above. Plaintiff Wendell Morris has complied with the pre-filing requirements of the PAGA, and, as such, any violation relating to rest, meal, unpaid time, wage statements and waiting time triggers a PAGA penalty as set forth in Labor Code § 2699.

- The wage and hour violations described above also constitute unfair business practices pursuant to California Business and Professions Code §§ 17200 et seq., the Unfair Competition Law ("UCL").

---

[90] <u>Compare</u> Ex.'s 12-13 to RFJ Ex. HH, www.dir.ca.gov/dlse/PayStub.pdf.

[91] For example, in <u>Jaimez</u>, 181 Cal. App. 45th at 1294-95, 1303-04, the California Court of Appeal held that the trial court erred in not certifying a class where common issues predominated as to the accuracy of timesheets the putative class members had to sign timesheets indicating they took a meal break – regardless of whether they actually had a meal break – in order to get paid.

[92] <u>Wal-Mart Stores, Inc. Wage and Hour Litigation</u>, (N.D. Cal. Feb. 13, 2008), 2008 WL 413749, *10.  In that action, the court found commonality in cases involving with respect to the penalties imposed by Labor Code section 203 for willful failure to pay all wages owed on discharge or termination of employees.  <u>Id.</u>

17

1    All of the legal violations alleged above are supported by substantial objective and

2    testimonial evidence, and TFP's own common uniform policies and practices that apply equally

3    to all putative class members such that common questions of law and fact will predominate when

4    this case reaches the merits.  For these reasons, and those articulated below, class certification is

5    proper and should be granted.

6         **b)    The Question of TFP's Role and Duties as a Joint Employer of**
            **the Putative Class Members Is Likewise Common**
7

8    The applicable Industrial Welfare Commission Order ("IWC") Wage Orders define

9    "employer" as "any person as defined in Section 18 of the Labor Code, who directly or

10   indirectly, or through an agent or any other person, employs or exercises control over the

11   wages, hours, or working conditions of any person."[93]  Under the IWC's definition, "employ"

12   means to "(a) to exercise control over the wages, hours or working condition, or (b) to suffer or

13   permit to work, or (c) to engage, thereby creating a common law employment relationship."

14   Martinez v. Combs, (2010) 49 Cal.4th 35, 64.

15   In determining whether an entity is a "joint" employer, courts focus on whether the

16   entity has a right to control the working conditions, wages or hours of a worker.  Id. at 59;

17   Tieberg v. Unemployment Ins. Ap. Bd. (1970) 2 Cal.3d 943, 950 (holding that "[t]he right to

18   control the means by which the work is accomplished is clearly the most significant test").

19   "The essence of the test is the 'control of details'— that is, whether the principal has the right

20   to control the manner and means by which the worker accomplishes the work."  Estrada v.

21   FedEx Ground Package System, Inc. (2007) 154 Cal.App.4th 1, 10.

22   The issue at the class certification stage is whether the employer relationship can be

23   adjudicated on a class-wide basis by reference to common facts and common law.  In Bradley,

24   211 Cal.App.4th 1129, the plaintiffs alleged that the defendant was their employer for purposes

25   of class certification despite being labeled as independent contractors.  Id. at 1135.  The trial

26   court denied class certification finding that individual questions of law and fact would

27   predominate on the issue of whether the defendant was an "employer."  Id. at 1140.  The Court

28

---

[93] See also, IWC Wage Order 8-2001, section 2(F).

1    of Appeal reversed the trial court's ruling, finding that the right to control test in California

2    case law provided the commonality necessary for predominating issues of law.  Id. at 1146.

> [T]he focus is not on the particular task . . . but the global nature of the relationship between the worker and the hirer, and whether the hirer or the worker had the right to control the work. . . .   The critical fact is that the evidence likely to be relied upon by the parties would be largely uniform throughout the class.

6    Id. at 1147.

7         The relevant question is whether the joint employer issue is amenable to class-wide

8    adjudication – it certainly is.  TFP uses common, uniform policies to control the work done by

9    the joint employees.  These common policies were in force and effect at all plants and enforced

10   by TFP supervisors during the class period.[94]  If the joint employees did not comply, TFP

11   "ended" their assignments.   Finally, TFP and TFP alone determined the schedule and

12   controlled the time clocks used for determining the wages paid to all joint employees.[95]

13        These common and uniform policies clearly demonstrate that TFP "suffered and

14   permitted" the joint employees to work for them.  Under the "suffer or permit" test, "the basis

15   of liability is the defendant's knowledge of and failure to prevent the work from occurring."

16   Martinez, 49 Cal.4th at 70.  Employers can "permit" work by either giving "permission" for

17   workers to work or by acquiescing to their work.  Id. at p.58.[96]  TFP clearly knew of, and in

18   fact required, the work activities at the plants during the relevant time period.  TFP trained its

19   supervises about how to review and approve timecards, and they then review and approve time

20   cards for all production workers regardless of whether directly or jointly employed by TFP.[97]

21   As such, common policies can be used to determine whether TFP exercised a right to control

22   the work of joint employees and whether it suffered and permitted their work during the class

23   period.  This issue is easily amenable to class wide adjudication.

24        Some TFP executives (e.g., Omar Estrada and Teresa Rea), suggested that the newly

25   added Co-Defendants controlled the wages, discipline and working conditions of the putative

---

[94] Ex. 69, Carmona at 33:18-23, 36:8-15; Ex. 73, Estrada at 33:1-44:8; Ex. 30, Heywood at 19:15-20:4.
[95] Ex. 69, Carmona at 106:2-6; Exhibit 33, Lopez at 95:20-98:21.
[96] Ex. 31, Lacy at 41:17-25 (No punch restrictions programed for meal breaks, thus, workers were suffered and permitted to clock back in and return to work before the conclusion of their thirty minute meal breaks.)
[97] Exh. 33, Lopez at 11:4-15:22.

19

class members, which led to Plaintiffs adding QFL, SS, MP, and AMI as Defendants in this action.[98]   The weight of the testimony shows the contrary, but to the extent TFP ultimately asserts this defense, California law is clear:  workers may have multiple "joint" employers, all of whom are required to comply with California's labor laws.  Martinez, 49 Cal. 4th at 50. Plaintiffs, thus, added the Co-Defendants to recover any amounts owed if TFP asserts that it is not the joint employer of the putative class members or if TFP proffers evidence the Co-Defendants received and did not pay to Plaintiffs for all hours worked (or premiums earned).

In either event, resolving the question of whether TFP is the joint employer with the Co-Defendants of the putative class members is an issue that can be adjudicated on a class-wide basis by reference to common facts and common law.

3.   The Named Plaintiffs' Claims Are Typical, and They Will Adequately Represent the Class

The Ninth Circuit held in Hanlon, 150 F.3d at 1020 that:  "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical.  Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality."  "A plaintiff's claim meets this requirement if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory."  Schwartz v. Harp, 108 F.R.D. 278, 282 (C.D. Cal. 1985).

Typicality is not defeated by declarations showing differences in how individual employees responded to an employer's policies and practices.  Jaimez v. Daiohs USA, Inc., 181 Cal. App. 4th 1286, 1301 (2010) (holding trial court erred in not certifying cases involving violation of meal break policies).  Courts similarly have rejected claims that typicality is defeated by differences in job titles, customers served, job duties, hours worked, and databases used.  Bradley, 211 Cal.App.4th  at 1147.  For example, in Morton, 2007 WL 1113999 at *4, the court rejected the significance of any differences in customers served, days and hours

---

[98] Downey Decl. ¶ 3.

1   worked, and routes driven, and instead concluded there was typicality when named plaintiffs

2   and class members all alleged they were denied overtime pay and meal and rest breaks.  Id.

3       Here, the claims of named Plaintiffs are typical of the claims of the rest of the class and

4   all subclasses.  Like the other putative class members, they are each employed by TFP at its

5   food production plants in Tracy, California, and each one worked as a nonexempt, hourly

6   employee.[99]  Each was required to don sanitary gear off-the-clock and walk to their

7   workstations.[100]  Likewise, all were routinely denied timely first meal breaks and uniformly

8   denied second thirty minute meal breaks on shifts in excess of 10 hours.[101]  Further, all were

9   forced to engage in work activities during meal and rest breaks and thus were never offered

10  duty free meal and rest breaks.[102]  All plaintiffs were uniformly shorted in their final pay

11  checks as TFP deliberately failed to pay owing meal and rest break premiums.[103]  Lastly TFP

12  failed to furnish all with legally compliant wage statements.[104]  Because Plaintiffs' claims are

13  similar to those of the proposed class, this prong of Rule 23(a)(3)'s requirements is satisfied.

14      In addition, the named Plaintiffs have retained class counsel with sufficient resources

15  and expertise in wage & hour/meal break class actions to prosecute this action effectively and

16  passionately on behalf of the class.[105]  Plaintiffs further request that their counsel be appointed

17  to represent the above classes pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

18      **B.    The Case Should Be Certified Under Rule 23(b)(3)**

19      Rule 23(b)(3) requires the court to determine whether common issues predominate over

20  individual issues and whether class treatment will be manageable and the superior method of

21  resolution of the class members claims.

---

[99]  See, e.g., Ex. 24, Dail Depo at 34:11-35:10; Ex. 22, Hernandez at 121:4-18; Exh. 25, Morris at 40:1-18; Ex. 21, Pena Depo at 57:22-58:17.
[100]  See, e.g., Ex. 24, Dail Depo at 72:19-73:5; Ex. 22, Hernandez at 50:12-51:8; Exh. 25, Morris at 109:15-107:17; Ex. 21, Pena Depo at 62:11-64:10; 81:13-25.
[101]  See, e.g., Ex. 24, Dail Depo at 190:2-191:6; Ex. 22, Hernandez at 214:5-21; Exh. 25,  Morris at 193:17-194:16; Ex. 21, Pena Depo at 138:25-139:7.
[102]  See, e.g., Ex. 24, Dail Depo at 78:13-25; Ex. 22, Hernandez at 216:15-218:21; 223:18-23; Exh. 25, Morris at 184:6-186:20; Ex. 21, Ex. 21, Pena Depo at 97:22-99:5.
[103]  See, e.g., Ex. 22, Hernandez Depo at 215:14-216:6; Exh. 25, Morris at 135:10-18.
[104]  Ex. 22, Hernandez 228:7-12; Exh. 25, Morris 141:19-142:3; 174:23-175:3.
[105]  Downey Decl., ¶¶ 25-28; R. Rex. Parris Decl., ¶¶ 1-5.

1

        1.    <u>Common Issues Predominate</u>

2         Here, the class meets the requirements of Rule 23(b)(3) because issues of fact and law

3 common to the putative class members predominate over individual matters.  TFP's facially

4 invalid rules and regulations policies commonly affected all plaintiffs and class members.   In

5 the case of <u>In re Wells Fargo Home Mortgage Overtime Pay Litig.</u>, 571 F.3d 953, 958-59 (9th

6 Cir. 2009), the Court explained that "uniform corporate policies will often bear heavily on

7 questions of predominance and superiority."  Such policies carry great weight for certification

8 purposes.  <u>Id.</u>  "When common questions present a significant aspect of the case and they can

9 be resolved for all members of the class in a single adjudication, there is clear justification for

10 handling the dispute on a representative rather than on an individual basis."   <u>Local Joint</u>

11 <u>Executive Board</u>, 244 F.2d at 1162 (reversing denial of class certification because the district

12 court should have found predominance) (citation omitted). <u>2 Newberg On Class Actions</u>, §

13 4.25 ("The [predominance] test was not mean to require that the common issues will be

14 dispositive of the controversy or even be determinative of the liability issues involved…  In

15 addition, the predominance requirement is not a numerical test that identifies every issue in this

16 suit as suitable for either common or individual treatment and determines whether common

17 issues predominate by examining the resulting balance on the scale.  A single common issue

18 may be the overriding one in the litigation, despite the fact that the suit also entails numerous

19 remaining individual questions…").

20         Here all were denied legally compliant meal and rest breaks, divining the number of

21 denied 2nd 30 minute meal breaks is readily apparent from TFP's punch records.  Likewise

22 meal breaks not being offered within 5 hours lay naked for all to see in TFP's punch records.

23 Issues such as whether 30 minute duty free meal breaks and rest breaks were in fact offered

24 will also be resolved by matters of common proof found in TFP's GMPs and evidence of

25 number of the number of employees *vis-a-vis* the number of punch clocks.[106]

26 _____

27       [106]   The access card (RFID) data collected by TFP likely shows the time the employees arrived, and if TFP

28 produces a PMK on their electronic data, Plaintiffs believe it can be used as a reference point to compare to either KRONO's data or Payroll data (if the latter is not directly tied to KRONO's) to calculate the off-the-clock work in donning protective gear.

1    Likewise whether TFP utilized proper record keeping practices with regard to meal and

2    rest breaks will be the subject of common proof.   Damages are readily arrived at by

3    multiplying the aggregate number of non-compliant meal and rest breaks by the prevailing

4    minimum wage at any time during the class period.   Waiting time penalties will survive or

5    perish based on this court's conclusions concerning legally non-compliant meal and rest breaks

6    and pre-production donning time.   Should the court find anyone of these in the plaintiffs'

7    favor, then the waiting time penalties flow therefrom as a derivative claim.   Wage statement

8    claims flowing form failure to list all hours worked or monies owed will similarly thrive or die

9    based on common proof flowing from the failure to compensate claims.   Facially invalid wage

10   claims exist independent of compensation claims, but likewise will be decided in favor all or

11   against all.   Lastly, uncompensated pre-production work activities will be commonly

12   determined by comparing paid time against punch times and factoring in rounding times (yet to

13   be produced).   All class members will have the option of opting out to preserve their individual

14   due process rights pursuant to Rule 23(b)(3).   <u>Dukes v. Walmart</u>, 131 Sup Ct. at 2559-60.

15            2.        <u>The Class Action Device is the Superior Means of Litigating these Claims</u>

16            "Where class-wide litigation of common issues will reduce litigation costs and promote

17   greater efficiency, a class action may be superior to other methods of litigation."   <u>Valentino v.</u>

18   <u>Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234 (9th Cir. 1996).   In considering whether a class action

19   is superior, the court must focus on whether the interests of "efficiency and economy" would

20   be advanced by class treatment.   <u>Zinser v. Accufix Research Inst., Inc.</u>, 253 F.3d 1180, 1189

21   (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001).   Relevant factors include:   (A) the

22   interest of members of the class in individually controlling the prosecution or defense of

23   separate actions; (B) the extent and nature of any litigation concerning the controversy already

24   commenced by or against members of the class; (C) the desirability or undesirability of

25   concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be

26   encountered in management of a class action.   FRCP 23(b)(3) certification of this case is

27   appropriate under each of these factors.

28

California's labor laws are remedial in nature and are to be liberally construed to protect employees. Labor Code section 90.5(a) states:

> It is the policy of this state to vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions or for employers that have not secured the payment of compensation, and to protect employers who comply with the law from those who attempt to gain a competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

The California Supreme Court, in expanding upon this policy, further held that "class actions may be needed to assure the effective enforcement of statutory policies." <u>Gentry v. Superior Court</u>, 42 Cal. 4th 443, 462 (2007). Thus, as to Rule 23(b)(3)A), no individual class member has an interest in controlling the prosecution or defense of separate actions. Given the amounts at issue, Plaintiff and putative class members would not likely be able to secure individual representation for their claims. <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 809 (1985). Further, because class members and subclass members suffered from TFP's uniform policies and practices, no one class members' claim is worth substantially more than another's claim.

As to subpart (B), to the best of Counsel knowledge there are no other putative class members pursuing claims in any other venue.[107] As to subpart (C), this Court is the proper forum. The class representatives worked in San Joaquin County, which is within this District and Division. It is thus desirable to adjudicate the claims in this forum.

As to subpart (D), Plaintiff anticipates a bifurcated trial with a liability phase and a damages phase. The lion's share of this litigation can be resolved in the liability phase of trial by relying heavily upon corporate policies and corporate records applicable to the entire class and that relate to several common questions including: (1) whether Defendants uniformly failed denied second meal periods; (2) whether Defendants uniformly failed to pay rest break and meal period premiums for missing second meal periods or for time spent donning and doffing; (3) whether Defendants required off-the-clock work in donning and doffing; (4) whether Defendants timekeeping records are accurate; and (5) whether class members received proper wage statements and final paychecks. This case is much more manageable

---

[107] Downey Decl., ¶ 28.

than other cases certified in the Ninth Circuit.  See Hilao v. Estate of Ferdinand Marcos, 103 F.3d 767, 782-87 (9th Cir. 1996) (approving certification of a case with over 10,000 claimants).

The damages phase will follow to determine the number of violations, the aggregate hourly wages and penalty calculations, which can be done in a very precise manner using corporate records, and KRONOS timekeeping data.  To the extent Defendants failed to retain all transaction data as required during litigation, statistical analysis of the sampled records can be used to assess the evidence and calculate off-the-clock hours and missed meal periods for all of the putative class members.  Any individual damage questions can be addressed in any number of ways including through representative testimony and/or the assistance of a special master.  The Hilao example demonstrates that case management should not be a barrier to a finding that class action litigation is a superior mechanism in the instant action.

In sum, it must be recognized that the putative class members are minimum wage hourly workers, overwhelmingly comprised of non-English speaking migrants, of marginal literacy, who lack the resources to finance their own law suits and the familiarity with the American polity to individually discern how to right the wrongs they have endured at the hands of TFP.   To conclude that these low value individual claim be litigated individually would work a profound injustice on Plaintiffs and members of the putative classes.  The class action device was intended for just the sort of common application of facially invalid policies as found herein.

**III.     CONCLUSION**

For the reasons stated herein, Plaintiffs request that the Court certify the proposed class and sub-classes.

Date:  October 4, 2013                              Respectfully submitted,

                                                   **R. REX PARRIS LAW FIRM**

                                                   _____
                                                   Patricia K. Oliver
                                                   Attorneys for Plaintiffs

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION