UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARIA DEL CARMEN PENA, et al.,

                Plaintiffs,

      v.

TAYLOR FARMS PACIFIC, INC., d/b/a
TAYLOR FARMS, et al.,

                Defendants.

No.  2:13-cv-01282-KJM-AC

ORDER

        This matter is before the court on the Motion to Dismiss and Motion to Strike brought by defendant Taylor Farms Pacific, Inc. ("TFP").  ECF No. 13.  The court held a hearing regarding the motion on September 12, 2013.  Patricia Oliver and Stuart Chandler appeared for plaintiffs, and Jesse Cripps and Sarah Zenewicz appeared telephonically for defendant TFP.

        Plaintiffs, comprising quitting and discharged former employees, bring a putative class action against multiple defendant-employers.  The Sixth Amended Complaint ("6AC") alleges eight employment claims, including violations of California Labor Code sections 201 to 203.  ECF No. 33.  The instant motion, brought by defendant TFP alone, seeks to dismiss only plaintiffs' fifth claim for unpaid wages and waiting time penalties under California Labor Code sections 201 to 203.  It also seeks to strike the derivative portion of

1

plaintiffs' seventh claim for violation of California's Unfair Competition Law.  For the reasons below, defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.  Defendant's Motion to Strike is DENIED, but construed as a motion brought under Rule 12(b)(6), it is granted in that plaintiffs' UCL claim derived from violation of California Labor Code section 203 is DISMISSED.

I.          MOTION TO DISMISS

       A.   STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion to dismiss, this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  *Usher v. City of L.A.,* 828 F.2d 556, 561 (9th Cir. 1987).  This rule does not

apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice," or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A court's consideration of documents either attached to a complaint or incorporated by reference, or of matters of judicial notice, will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

B. <u>ANALYSIS</u>

Defendant asserts that plaintiffs' claims for violation of California Labor Code sections 201 to 203 must be dismissed as a matter of law because plaintiffs' Sixth Amended Complaint fails to plead sufficient factual bases to support the claims. Specifically, defendant argues plaintiffs have not pleaded sufficient detail concerning demand of final payment and/or subsequent presence at the workplace in order to collect. Plaintiffs instead insist that all claims have been sufficiently pleaded because the elements of such claims differ for quitting and discharged employees.[1] The parties' dispute turns in large part on their different readings of the California Labor Code sections reviewed below.

In its reply brief, defendant raises an additional argument for failure to state a claim, asserting that the state court's rulings, made before removal, constitute the law of the case. Although this court "need not consider arguments raised for the first time in a reply brief," *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007), it notes that the law of the case doctrine "provides that a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case," *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998) (citations and internal quotation marks omitted).

---

[1] Plaintiffs also argue that defendant's motion is procedurally barred for failure to comply with this court's standing order requiring counsel to engage in a pre-filing meet and confer. Because counsel subsequently met and conferred, and the parties' dispute persists nonetheless, the court allows the motion to proceed. Counsel is cautioned, however, that a meet and confer and certification thereof is required before the filing of every motion in this court.

Neither threshold circumstance obtains here, thus the court declines to consider whether there are exceptions to an inapplicable rule.  Moreover, upon removal to federal court, it is settled that federal law governs future proceedings, notwithstanding state court orders issued before removal.  *Granny Goose v. Teamsters*, 415 U.S. 423, 437 (1974); *see also Preaseau v. Prudential Ins. Co. of Am.*, 591 F.2d 74, 79 (9th Cir. 1979) (holding that state court's denial of summary judgment did not preclude federal court's subsequent granting of motion).

> 1.  Statutory Scheme

The California Labor Code dictates the manner in which an employer must make final payment upon discharge or resignation of an employee.  Cal. Lab. Code §§ 201–203, 208, 213.  "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."  *Id.* § 201(a).  Except under circumstances absent here, an "employee who is discharged shall be paid at the place of discharge," and there is no provision for mailing of final payment.  *Id.* § 208.[2]  An employer may, however, "pay the wages earned and unpaid at the time the employee is discharged . . . by making . . . [an authorized] deposit."  *Id.* § 213(d).[3]

When the employee quits without notice and without a written employment contract, "wages shall become due and payable not later than 72 hours thereafter," *id.* § 202(a), and the employee "shall be paid at the office or agency of the employer in the county where the

---

[2] The context for this excerpt of Section 208 reads as follows: "Every employee who is discharged shall be paid at the place of discharge, and every employee who quits shall be paid at the office or agency of the employer in the county where the employee has been performing labor.  All payments shall be made in the manner provided by law."

[3] Section 213(d) provides as follows: "Nothing contained in section 212 [prohibiting certain forms of payment] shall . . . (d) Prohibit an employer from depositing wages due or to become due or an advance on wages to be earned in an account in any bank, savings and loan association, or credit union of the employee's choice with a place of business located in this state, provided that the employee has voluntarily authorized that deposit.  If an employer discharges an employee or the employee quits, the employer may pay the wages earned and unpaid at the time the employee is discharged or quits by making a deposit authorized pursuant to this subdivision, provided that the employer complies with the provisions of this article relating to the payment of wages upon termination or quitting of employment."

employee has been performing labor," *id.* § 208.  If the quitting employee gives at least 72 hours' notice, "the employee is entitled to . . . wages at the time of quitting."  *Id.* § 202(a).[4] Additionally, an employee who quits without notice "shall be entitled to receive payment by mail if he or she so requests and designates a mailing address."  *Id.*  As with discharged employees, an employer may also make final payment via authorized deposit.  *Id.* § 213(d).

If an employer "willfully fails to pay" in accordance with sections 201 or 202, it is subject to statutory penalties known as "waiting time" penalties.  *Id.* § 203(a).[5]  Such payment must include, "without abatement or reduction, . . . any wages of an employee who is discharged or who quits."  *Id.*  If the employer fails to make payment as required, "the wages of the employee shall continue as a penalty from the due date . . . at the same rate until paid" for up to thirty days.  *Id.*

2.   Statutory Construction

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938), "federal courts sitting in diversity apply state substantive law . . . ."  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  Thus, in construing the California Labor Code, the court must look to state law.

_____

[4] Section 202(a) reads as follows: "If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.  Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so requests and designates a mailing address.  The date of the mailing shall constitute the date of payment for purposes of the requirement to provide payment within 72 hours of the notice of quitting."

[5] Section 203(a) reads in pertinent part: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, [], 202, [], any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.  An employee who secretes or absents himself or herself to avoid payment to him or her, or who refuses to receive the payment when fully tendered to him or her, including any penalty then accrued under this section, is not entitled to any benefit under this section for the time during which he or she so avoids payment."

1     In statutory interpretation, the California Supreme Court has held that a court's

2 "fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the

3 statute[,] . . . begin[ning] with the language of the statute, giving the words their usual and

4 ordinary meaning." *Smith v. Superior Court*, 39 Cal. 4th 77, 83 (2006) (citing *Day v. City of*

5 *Fontana*, 29 Cal. 4th 268, 272 (2001)).  "'[I]f the language of the statute is not ambiguous, the

6 plain meaning controls and resort to extrinsic sources to determine the Legislature's intent is

7 unnecessary.'"  *Bonnell v. Med. Bd. of Cal.*, 31 Cal. 4th 1255, 1261 (2003) (quoting

8 *Kavanaugh v. W. Sonoma Cnty. High Sch. Dist.*, 29 Cal. 4th 911, 919 (2003)).  Additionally,

9 statutory language must be construed relative to the entire statutory scheme.  *Smith*, 39 Cal. 4th

10 at 83 (citing *People v. Canty*, 32 Cal. 4th 1266, 1276 (2004)).

11     In the labor context, the California Supreme Court has provided additional

12 guidance, holding that "statutes governing conditions of employment are to be construed

13 broadly in favor of protecting employees."  *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th

14 1094, 1103 (2007).  More specifically, the state court has opined that the intended purpose of

15 the California Labor Code's immediate wage payment provision is to address the "economic

16 vulnerability of discharged employees and potential harm to the public . . . ."  *Smith*, 39 Cal.

17 4th at 93 (discussing sections 201 and 203).  That court has recognized that "'[w]ages are not

18 ordinary debts . . . .  [Thus,] [b]ecause of the economic position of the average worker and . . .

19 his [or her] dependence on wages for the necessities of life . . . , it is essential to the public

20 welfare that he [or she] receive . . . pay' promptly."  *Pressler v. Donald L. Bren Co.*, 32 Cal. 3d

21 831, 837 (1982) (quoting *In re Trombley*, 31 Cal. 2d 801, 809–10 (1948)).

22     a.  Section 203: Waiting Time Penalties

23     The "'public policy in favor of full and prompt payment of an employee's

24 earned wages is fundamental and well established,'" thus providing the basis for waiting time

25 penalties.  *Pineda v. Bank of Am.*, 50 Cal. 4th 1389, 1400 (2010) (quoting *Smith*, 39 Cal. 4th at

26 82).  Accordingly, waiting time penalties serve to "compel the prompt payment of [all] earned

27 wages" by punishing willful failure to comply with sections 201 or 202.  *Barnhill v. Robert*

28 *Saunders & Co.*, 125 Cal. App. 3d 1, 7 (1981); *see also Pineda*, 50 Cal. 4th at 1400.

6

Delinquent payment is necessarily late, thus both violations are penalized equally.  *See* CAL. LAB. CODE § 203.

Willful failure "occurs when an employer intentionally fails to pay wages to an employee when those wages are due," CAL. CODE REGS. tit. 8, § 13520, or refuses to perform an act, such as full payment, that is "required to be done," *Barnhill*, 125 Cal. App. 3d at 7. Although the failure to pay "need not be based on a deliberate evil purpose to defraud workmen of wages," section 203 does require that a penalized employer be "at fault."  *Id.*  In other words, the employer must "owe[] the debt and refuse[] to pay it."  *Id.*

A good faith dispute that wages are due thus "preclude[s] imposition of waiting time penalties . . . ."  CAL. CODE REGS. tit. 8, § 13520.  Such a dispute "occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recover[y] on the part of the employee."  *Id.* § 13520(a).  The ultimate success of the defense is immaterial to the good faith analysis, but defenses that "under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a 'good faith dispute.'"  *Id.*

Nonetheless, at the pleading stage, the court does not concern itself with defenses.  *See* FED. R. CIV. P. 8(a).  Thus, to state a claim for waiting time penalties under section 203, a quitting employee must plead sufficient facts to support the plausibility of an employer's willfully delinquent or late payment of all wages due, with reference to the elements required by sections 201 or 202.

b.  Section 202: Quitting Employees

Case law has more frequently addressed final pay with respect to quitting employees than discharged employees.  Such opinions have held that section 202 imposes obligations on both employers and employees.  *See, e.g.*, *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, No. C 06-2069 SBA, 2008 WL 413749, at *3, 8 (N.D. Cal. Feb. 13, 2008) (citing Division of Labor Standards Enforcement ("DLSE") Op. Ltr. 1986.09.15).

Section 202 imposes on employers "a statutory obligation to tender or deliver final pay."  *Id.* at *3 (citing *Villafuerte v. Inter-Con Sec. Sys., Inc.*, 96 Cal. App. 4th Supp. 45,

50 (2002)).  The obligation to tender arises from section 202's "due and payable" language, which "implies that wages are owed . . . but do[es] not . . . require that a check be issued and available." *Moreno v. Autozone, Inc.*, No. CV 05-4432-CRB, 2009 WL 3320489, at *2 (N.D. Cal. Oct. 9, 2009).  The obligation to deliver is expressly delineated in section 202, following its 1990 amendment.  CAL. LAB. CODE § 202(a) ("[A]n employee who quits . . . shall be entitled to receive payment by mail . . . .").  Additionally, section 213 provides for delivery via direct deposit; however, this section imposes no obligation on either the employer or the employee. Rather, section 213 makes clear that if an employee authorizes direct deposit when employment begins, then the employer may choose to make final payment via deposit, provided the employee does not specifically request payment via mail.  *Id.* § 213(d) ("If . . . the employee quits, the employer may pay . . . wages . . . by making a [direct] deposit authorized [by the employee] . . . ."); *see also id.* § 202(a) (quitting employee has right to elect final payment via mail "[n]otwithstanding any other provision of law").

It is, however, the quitting employee's right to choose between tender or delivery via mail.  *Id.* §§ 202(a), 213(d).  Thus, there is a concomitant "obligation to demand [tender of] payment," *Moreno*, 2009 WL 3320489, at *2, or "expressly 'request[ delivery] and designate[] a mailing address,'" *Wal-Mart Stores, Inc.*, 2008 WL 413749, at *3 (quoting CAL. LAB. CODE § 202(a)) (alterations added).  In other words, the employee must make his or her choice known to the employer.

Like the employer's obligation to tender payment, the quitting employee's obligation to demand payment arises from section 202's use of the phrase "due and payable." *Moreno*, 2009 WL 3320489, at *2.  The phrasing "suggests that a [quitting] worker's right to be paid vests after 72 hours, but that it is the worker's obligation to demand payment" because, until he or she does so, the employer cannot know whether to pay via tender or delivery.  *Id.* Accordingly, an employer's "mere failure timely to issue a [final payment] check does not give rise to liability . . . . [P]enalties accrue only when a plaintiff has shown that [he or] she demanded such payment . . . , but payment was not tendered."  *Id.* at *1.

8

Similarly, the quitting employee's obligation to "expressly 'request[ delivery] and designate[] a mailing address,'" *Wal-Mart Stores, Inc.*, 2008 WL 413749, at *3 (quoting CAL. LAB. CODE § 202(a)), arises from the plain language of section 202 itself. As above, if the employee fails to specifically request mailing, the employer cannot know whether to pay via tender or delivery and thus may not be penalized.

If a quitting employee elects to receive final payment via mail, i.e., "delivery," then his or her obligations are fulfilled. However, if the employee elects to receive final payment via tender, then the Labor Code imposes an additional requirement: he or she is subsequently obliged to "be at the [workplace] to receive tender of final pay." *Id.* at *8; *see also* CAL. LAB. CODE § 208. This is because section 208 mandates that quitting employees "shall be paid at the office or agency of the employer in the county where the employee has been performing labor." CAL. LAB. CODE § 208. As such, tender must "occur at the workplace . . . [, and an] employer is not to tender elsewhere . . . ." *Wal-Mart Stores, Inc.*, 2008 WL 413749, at *3; *see also Moreno v. Autozone, Inc.*, 410 F. App'x 24, 25 (9th Cir. 2010) (unpublished).[6]

Thus, to state a claim for waiting time penalties under sections 202 and 203, a quitting employee must plead sufficient facts to support the plausibility of: (1) an employer's willfully delinquent or late payment of all wages due; (2) a quitting employee's election between tender and delivery that was made known to the employer; and, in the case of tender, (3) a quitting employee's presence at the workplace to collect payment.

c. Section 201: Discharged Employees

In contrast to the law regarding quitting employees, there is scant case law interpreting the respective obligations of employers and discharged employees with respect to final payment. Defendant cites several authorities for the proposition that discharged employees, like quitting employees, must be present at the workplace for final pay, but its citations are misplaced: (1) *Moreno v. Autozone*, *supra*, addresses only quitting employees

---

[6] Although unpublished, this opinion may be cited as precedent as provided by Ninth Circuit Rule 36-3. *See also* FED. R. APP. P. 32.1(a).

under sections 202 and 208; (2) *Villafuerte v. Inter-Con Security Systems*, *supra*, addresses only quitting employees under sections 202 and 208; (3) *Alvarez v. Nordstrom* cites only *Villafuerte*, a quitting employee case, to interpret section 201, which governs discharged employees, Nos. CV 08-05856-AHM (AJWx), CV 10-04378-AHM (AJWx), 2011 WL 7982552, at *5 (C.D. Cal. May 24, 2011); (4) the DLSE guidance letter, *supra*, addresses only quitting employees under sections 202 and 208; (5) *Wal-Mart Stores, Inc.*, *supra*, cites the DLSE guidance letter and *Villafuerte*, both addressing only quitting employees under sections 202 and 208, to interpret sections 201 and 202; (6) *In re Taco Bell Wage & Hour Actions* cites *Wal-Mart*, *Villafuerte* and *Alvarez* to interpret sections 201 and 202, No. 1:07-cv-01314-OWW-DLB, 2011 WL 4479730, at *4–5 (E.D. Cal. Sept. 26, 2011); and (7) the Labor Commissioner's determination in *Noble v. Draper* applies only to quitting employees under sections 202 and 203, 160 Cal. App. 4th 1, 8 (2008).

   Defendant correctly asserts that *Wal-Mart Stores, Inc.* and its progeny *Taco Bell* conclude that "[both] California final pay statutes (Labor Code §§ 201, 202) are triggered not only by termination of employment, but by the associate performing his or her duty to be at the store to receive tender of final pay or to give . . . specific mailing instructions." *Wal-Mart Stores, Inc.*, 2008 WL 413749, at *8; *Taco Bell*, 2011 WL 447930, at *4 (quoting *Wal-Mart Stores, Inc.*, 2008 WL 413749, at *8).  However, as discussed above, in doing so, these cases rely on authorities discussing only quitting employees under section 202.  *Wal-Mart Stores, Inc.*, 2008 WL 413749, at *3, 8; *Taco Bell*, 2011 WL 447930, at *4–5.  *Moreno*, the sole Ninth Circuit authority defendant cites, provides only that "California law impose[s] a duty on [quitting employees] to return to the . . . store where [he or] she worked in order to collect [the final] paycheck."  410 F. App'x at 25.

   Careful consideration of the similarities and differences between the Labor Code's treatment of discharged employees under section 201 and quitting employees under section 202, clarifies the question before the court.  Like section 202, section 201 uses the phrase "due and payable."  As discussed above, without more, such language "implies that wages are owed . . . but do[es] not . . . require that a check be issued and available." *Moreno*,

10

2009 WL 3320489, at *2.  It imposes on employers the same obligation to tender payment to discharged employees that employers have for quitting employees.  However, unlike section 202, section 201 was not amended to allow discharged employees to choose delivery in place of tender.  Rather, employers may deliver payment via direct deposit if the employee has given previous authorization, CAL. LAB. CODE § 213(d), but it is the employers' choice whether to make final payment via tender or delivery.  Because the employee has no right to choose, there is no corresponding obligation imposed on the employee to either demand tender or request delivery.

Section 201 differs from section 202 in another important way.  Although both sections specify when wages shall become "due and payable," section 201's use of "immediately" implies both temporal and spatial aspects.  The requisite immediacy of payment thus necessitates not only minimal lapse in time, but maximal physical proximity.

The spatial dimension is especially relevant in light of section 208.  As with quitting employees, section 208 specifies where tender is to occur for discharged employees.  Whereas tender of payment to quitting employees must occur "at the office or agency of the employer in the county where the employee has been performing labor," i.e., "the workplace," *Wal-Mart Stores, Inc.*; *Moreno*, *supra*, tender of final payment to discharged employees must be made at "the place of discharge," CAL. LAB. CODE § 208.  Because section 208 distinguishes between tender locations for quitting and discharged employees, conflating "the place of discharge" with "the office or agency of the employer" would impugn both the plain language of the statute and legislative intent.

Rather, given that "the place of discharge" must refer either to the employer's or the employee's location at the time of discharge, and given that the employer's location is "the workplace," "the place of discharge" is most naturally interpreted as the employee's location at the time of discharge.  This squares with section 201's immediacy requirement and eliminates any employee obligation to return to the workplace after discharge to receive tender of final payment.  Instead, the statutory scheme effectively imposes on employers a categorical obligation to make final payment to the employee immediately upon discharge.  Nonetheless,

as noted above, an employer's failure to pay must be "willful" in order to be penalized under section 203.  CAL. LAB. CODE § 203; *Barnhill*, 125 Cal. App. 3d at 7.  Thus, where an employee "secretes or absents himself or herself to avoid payment to him or her, or . . . refuses to receive the payment when fully tendered to him or her," waiting time penalties are not imposed.  CAL. LAB. CODE § 203.

The applicable rules of construction support this interpretation.  Such a reading assures that a discharged employee will receive wages due as expediently as possible, thus minimizing both the employee's "economic vulnerability" and "potential harm to the public," *Smith*, 39 Cal. 4th at 93, particularly because a discharged employee cannot plan for termination in the same manner as a quitting employee.  The result also is consonant with the California Supreme Court's admonition to construe labor statutes "in favor of protecting employees." *Murphy*, 40 Cal. 4th at 1103.

Thus, to state a claim for waiting time penalties under sections 201 and 203, a discharged employee must plead sufficient facts to support the plausibility of an employer's willfully delinquent or late payment of all wages due.

### 3.  Application

Other district courts have delineated the contours for applying the federal pleading standard to waiting time claims under the Labor Code.  *See, e.g.*, *Perez-Falcon v. Synagro W., LLC*, No. 1:11-cv-01645-AWI-JLT, 2011 WL 6752533, at *5 (E.D. Cal. Dec. 23, 2011); *see also Valenzuela v. Giumarra Vineyards Corp.*, 614 F. Supp. 2d 1089, 1101–03 (E.D. Cal. 2009).  In *Perez-Falcon v. Synagro West, LLC*, the court held that the discharged plaintiff's pleadings were sufficient to survive a motion to dismiss.  2011 WL 6752533, at *5. As quoted in the court's order, the plaintiff's allegations stated simply that "[the p]laintiff was owed funds . . . earned while working for . . . [the d]efendant. . . . [The d]efendant willfully failed to pay [the p]laintiff earnings . . . up through her termination date in a timely manner as required by California law . . . and paid such earnings over three months late." *Id.* (citations and internal quotation marks omitted).  The court noted that the allegations were "clearly insufficient to constitute a cause of action under California law." *Perez-Falcon*, 2011 WL

12

1  6752533, at \*5 (citing *Oppenheimer v. Robinson*, 150 Cal. App. 2d 420, 422–23 (1957)

2  (holding that complaint must allege amount of earnings allegedly due and unpaid at time of

3  discharge, plaintiff's wage rate or number of days that elapsed until payment was made in order

4  to state claim under California pleading standard)).  However, even after *Twombly* and *Iqbal*,

5  *supra*, "in federal courts, the sufficiency of a complaint is assessed within 'the liberal system of

6  "notice pleading" set up by the Federal Rules.'"  *Perez-Falcon*, 2011 WL 6752533, at \*5

7  (quoting *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S.

8  163, 168 (1993)).  Thus, the factual content alleged by the plaintiff allowed the court "to draw

9  the reasonable inference [that the] Defendant [was] liable under sections 201 and 203, and

10  [was] therefore sufficient to meet [the] Plaintiff's burden under *Iqbal*."  *Id.* (citations and

11  internal quotation marks omitted).  Consistent with this court's conclusion here, the court in

12  *Perez-Falcon* denied the defense motion in light of the plaintiff's allegations of late payment by

13  the employer; the absence of allegations of demand or subsequent presence at the workplace by

14  the discharged employee was immaterial.

15         Here, plaintiffs make several general allegations applicable to all named

16  plaintiffs.  These allegations include:

17 • "Plaintiffs . . . are . . . former non-exempt hourly workers, [who
18   were] working at facilities owned and/or operated by [defendant]
     and performed work exclusively on behalf of [defendant] . . . under
19   the direction and control of [defendant] . . . ." 6AC ¶ 2, ECF No.
     33.
20
21 • "Plaintiffs . . . were not paid all hours due and owing in their final
     paychecks, regardless of whether they resigned or were terminated,
     and final wage statements . . . did not accurately reflect hours
22   worked, nor monies owed to each Plaintiff . . . ." *Id.* ¶ 4.

23 • "Plaintiffs Maria del Carmen Pena, Consuelo Hernandez, Leticia
24   Suarez, Rosemary Dail, and Wendell T. Morris . . . were formerly
     directly employed by [defendant], and/or were employed as
25   joint/dual employees of [defendant and co-defendants] . . . .
     Plaintiffs . . . all worked as non-exempt hourly workers at facilities
26   owned and/or controlled by [defendant]." *Id.* ¶ 7.

27 • "The illegal policies and practices of [defendant] . . . include . . .
28   failure to record all time spent working by Plaintiffs . . . , failing to
     pay wage premiums to workers not provided meal breaks . . . ,

failure to pay wage premiums to workers denied rest breaks, . . . failing to properly document and record wages and wage premiums owed to employees and dual/joint employees, [and] failing to properly document hours worked by employees and dual/joint employees[.]" *Id.* ¶ 20.

- "In violation of State law, [defendant] knowingly, willfully refused to perform [its] obligations to record time for all work performed by Plaintiffs . . . . [Defendant] committed the acts alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring Plaintiffs . . . , with improper motives amounting to malice, and in conscious disregard for the rights of Plaintiffs . . . ." *Id.* ¶  32.

- "[Defendant] knowingly required workers who donn [sic] and doff as part of their work duties to engage in work activities involving donning, doffing and sanitizing of PPE [personal protective equipment] and washing hands during meal periods.   Thus, [defendant has] . . . knowingly shorted all employees who must donn [sic], doff, sanitize and wash during their meal periods . . . ." *Id.* ¶ 33.

- "[Defendant has] knowingly and willfully refused to perform [its] obligations to credit Plaintiffs . . . for all time worked such that they have not been paid all premium wages for overtime work." *Id.* ¶ 43

- "[Defendant has] knowingly required . . . workers to forego meal breaks on work days of between 5 and 6 hours; to forego second 30 minute meal breaks on work shifts of ten hours or longer; to skip [second] rest breaks on days of 8–10 hours, to work seven consecutive days or more without proper compensation.  Further [defendant has] . . . also deliberately failed to offer meal breaks within 5 hours of the start of work activities."  *Id.* ¶ 59.

- "[Defendant's] own time and pay records, DLSE records and testimony of [defendant's] managers document that Plaintiffs . . . were on many occasions not offered meal breaks within 5 hours of having commenced work activities, were never offered second thirty minute meal breaks on shifts of ten hours or longer, were not offered meal breaks on work days of 5 and 6 hours and were routinely denied second 10 minute rest breaks on work days of between 8 and 10 hours in duration." *Id.* ¶ 60.

- "[Defendant's] . . . failure to pay wages . . . was willful in that [Defendant] . . . knew wages to be due, but failed to pay them . . . ." *Id.* ¶ 64.

- "[Defendant has] routinely and deliberately failed to pay Plaintiffs . . . a sum certain at the time of termination, or within 72 hours of

14

their resignation and have failed to pay those sums for thirty days thereafter." *Id.* ¶ 65.

- "Plaintiffs . . . were paid according to schedules and at locations set by [defendant] . . . ." *Id.* ¶ 67.

- "[Defendant] either had a deliberate policy of not reporting to Co Defendants all time worked and all wages, including premium wages, due and owing joint/dual employees . . . or . . . reported all wages and wage premiums owed to joint/dual employees, but the Co Defendants uniformly failed to pay these monies to joint/dual employees.  Likewise, either [defendant] failed to timely notify Co Defendants of the departure of joint/dual employees, or Co Defendants uniformly failed to timely issue pay checks to departing joint/dual employees." *Id.* ¶ 70.

Further, plaintiffs make specific allegations relating to each named plaintiff. Plaintiffs Pena, Suarez and Dail allege violations of sections 201 and 203 as discharged employees; plaintiff Morris alleges violations of sections 202 and 203 as a quitting employee; and plaintiff Hernandez alleges violations of sections 201, 202 and 203 as both a discharged and a quitting employee.  The specific allegations include:

### a. Maria del Carmen Pena

- "[Plaintiff] Pena was hired by [co-defendant Abel Mendoza, Inc. ("AMI")] and was sent to work under the supervision and control of [defendant TFP] as a dual/joint employee of [defendant TFP] . . . . She was terminated by [co-defendant] AMI . . . at the behest of [defendant TFP] . . . but did not receive her final pay check on the same day that she was terminated, but rather was forced to wait until pay check distribution day at [defendant TFP]'s facilities. Furthermore, all wages due and owing from all pay periods, but not paid as a result of [defendant TFP]'s illegal pay policies and mean and rest break policies, along with unpaid overtime and strait [sic] time wages were not included in her final pay check."  6AC ¶ 24, ECF No. 33.

Taking both the general and specific allegations, plaintiff Pena alleges facts supporting an employment relationship with defendant, as well as her subsequent discharge by AMI for TFP.  *Id.* ¶¶ 1, 24.  Defendant TFP is a plausible joint employer under the substantially similar Fair Labor Standards Act joint-employer analyses articulated in *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983), *abrogated on other grounds by*

15

*Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 538 (1985), and *Orquiza v. Walldesign*, No. 2:11-CV-1374 JCM (CWH), 2012 WL 2327685, at *4 (D. Nev. June 19, 2012). As a discharged employee, Pena need only allege additional facts supporting willfully delinquent or late final payment, and she alleges both, *id.* ¶¶ 20, 24, 32, 33, 43, 59, 64, 65, 67. Her allegations include more factual detail than that provided by the plaintiff in *Perez-Falcon*, 2011 WL 675253, at *5. She has validly stated a claim for waiting time penalties under sections 201 and 203.

### b. Consuelo Hernandez

- "[Plaintiff] Hernandez worked as a direct employee for [defendant TFP] and as a joint/dual employee of [defendant TFP], [co-defendant] AMI, and [co-defendant Manpower, Inc. ("MP")] . . . . [plaintiff] Hernandez had two different final pay days. The first time . . . [plaintiff] Hernandez was terminated[,] . . . she was . . . away in Mexico. . . . [T]he [final pay] check was not waiting for her when she arrived home[,] and she thus had to go to [defendant TFP]'s plant to pick up her final paycheck, many days after all ready [sic] having been . . . fired by [defendant TFP]. . . . [The check] did not contain all monies due and owing . . . for orientation, unpaid strait [sic] time wages, unpaid overtime wages, and unpaid meal break and rest break premiums. With regard to her second final paycheck, . . . [plaintiff] Hernandez had resigned[,] and her final pay check was mailed to her home address by [co-defendant MP]; however, it did not contain all monies due and owing . . . for unpaid overtime, unpaid strait time [sic] and meal break and rest break premiums . . . ." 6AC ¶ 25, ECF No. 33.

Taking both the general and specific allegations, plaintiff Hernandez alleges facts supporting two employment relationships with defendant: (1) as a direct employee, a position from which she was terminated; and (2) as "joint/dual" employee, a position from which she quit. *Id.* ¶¶ 1, 25. As a discharged employee, she need only allege additional facts supporting willfully delinquent or late final payment, and she alleges both, *id.* ¶¶ 20, 25, 32, 33, 43, 59, 64, 65, 67. As a quitting employee, she must further allege facts supporting either election of delivery or election of tender and subsequent presence at the workplace. She alleges sufficient facts to support the reasonable inference, drawn in her favor as the non-moving party, of election of delivery. *Id.* ¶ 25 ("[Hernandez's] final pay check was mailed to her home address . . . ."). As with plaintiff Pena, her allegations include adequate factual detail. *See*

*Perez-Falcon*, 2011 WL 675253, at *5. She has validly stated a claim for waiting time penalties under sections 201, 202 and 203.

### c.  Leticia Suarez

- "[Plaintiff] Suarez was fired and was issued her final pay check on the same day she was fired; however, this final pay check did not contain payment for all hours owed to her by [defendant] for unpaid strait [sic] time, over time, meal break premiums and rest break premiums." 6AC ¶ 26, ECF No. 33.

Taking both the general and specific allegations, plaintiff Suarez alleges facts supporting an employment relationship with defendant, as well as subsequent discharge. *Id.* ¶¶ 1, 26. As a discharged employee, she need only allege additional facts supporting willfully delinquent or late final payment, and she alleges willfully delinquent pay, *id.* ¶¶ 20, 26, 32, 33, 43, 59, 64, 65, 67. As with plaintiffs Pena and Hernandez, her allegations include more factual detail than required. *See Perez-Falcon*, 2011 WL 675253, at *5. She has validly stated a claim for waiting time penalties under sections 201 and 203.

### d.  Rosemary Dail

- "[Plaintiff] Dail was fired; however, her final pay check was not tendered until the following pay period. Moreover, her final pay check did not contain payment for all hours owed to her by [defendant] for unpaid strait [sic] time, over time, meal break premiums and rest break premiums." 6AC ¶ 27, ECF No. 33.

Taking both the general and specific allegations, plaintiff Dail alleges facts supporting an employment relationship with defendant, as well as subsequent discharge. *Id.* ¶¶ 1, 27. As a discharged employee, she need only allege additional facts supporting willfully delinquent or late final payment, and she alleges both, *id.* ¶¶ 20, 27, 32, 33, 43, 59, 64, 65, 67. As with plaintiffs Pena, Hernandez and Suarez, Dail's allegations include sufficient factual detail. *See Perez-Falcon*, 2011 WL 675253, at *5. She has validly stated a claim for waiting time penalties under sections 201 and 203.

### e.  Wendell T. Morris

- "[Plaintiff] Morris . . . was hired as a direct employee of [defendant]. . . . [Plaintiff] Morris resigned on a Friday, but did not receive his final pay check until the following Wednesday. His

17

final pay check did not include all monies due and owing for unpaid strait [sic] time, over time, meal break premiums and rest break premiums . . . ." 6AC 28, ECF No. 33.

Taking both the general and specific allegations, plaintiff Morris alleges facts supporting an employment relationship with defendant, as well as his subsequent quitting of his job. *Id.* ¶¶ 1, 28.  As a quitting employee, he must allege additional facts supporting willfully delinquent or late final payment, and he alleges both, *id.* ¶¶ 20, 28, 32, 33, 43, 59, 64, 65, 67.  Further, he must allege facts supporting either election of delivery or of tender and his subsequent presence at the workplace to collect his final pay.

Plaintiff Morris fails to meet this last requirement.  He does not allege sufficient facts to support the plausibility of his election of either delivery or tender and subsequent presence at the workplace.  Plaintiff Morris has thus failed to state a claim for waiting time penalties under sections 202 and 203.

In sum, plaintiffs Pena, Suarez and Dail have validly stated a claim for waiting time penalties under sections 201 and 203, and plaintiff Hernandez has validly stated a claim under sections 201, 202 and 203.  Plaintiff Morris has failed to state claim.  As plaintiffs have now filed six iterations of their complaint, and there is no indication that an additional opportunity would allow plaintiff Morris to cure his pleading, plaintiff Morris's claim is dismissed with prejudice.

Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART as set forth herein.

II.     MOTION TO STRIKE

A.     Standard

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  However, "Rule 12(f) does not authorize district courts to strike claims . . . precluded as a matter of law" because such claims do not fall within one "of the five categories cover[ed]" by Rule 12(f).  *Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d 970, 974–75 (9th Cir. 2010).  Similarly, "Rule 12(f) . . . does not authorize a district court to dismiss a claim . . .

precluded as a matter of law." *Id.* at 976.  To "read Rule 12(f) in a manner that allow[s] litigants to use it as a means to dismiss some or all of a pleading . . . would . . . create[] redundancies within the Federal Rules of Civil Procedure[] because a Rule 12(b)(6) motion . . . already serves such a purpose." *Id.* at 974.  Further, to do so would result in "[a]pplying different standards of review[] when the . . . underlying action is the same" because Rule 12(f) motions are reviewed for abuse of discretion, while Rule 12(b)(6) motions are reviewed *de novo*. *Id.*

However, "'[w]here a motion is in substance a Rule 12(b)(6) motion, but is incorrectly denominated as a Rule 12(f) motion, a court may convert the improperly designated Rule 12(f) motion into a Rule 12(b)(6) motion.'"  *Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1146 (E.D. Cal. 2010) (quoting *Consumer Solutions R.E.O., LLC v. Hillery*, 658 F. Supp. 2d 1002, 1021 (N.D. Cal. 2009)).  This allows the court to avoid different standards of review but remains consistent with "'[t]he function of a 12(f) motion . . . to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.'"  *Consumer Solutions*, 658 F. Supp. 2d at 1020 (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)).

B. Analysis

Section 17200 of California's Business and Professions Code ("UCL") prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice . . . ."  Cal. Bus. & Prof. Code § 17200.  Under this expansive definition, the UCL "embraces anything that can properly be called a business practice and that at the same time is forbidden by law."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2009) (citations and internal quotation marks omitted).  It "borrows violations from other laws by making them independently actionable as unfair competitive practices," and may even include actions not "specifically proscribed by some other law."  *Id.* (citations and internal quotation marks omitted).  "Standing to sue under the UCL is expansive as well.  [UCL] actions can be brought by . . . 'any person acting for the interests of itself, its members or the general public.'"  *Id.* (quoting Cal. Bus. & Prof. Code § 17204).

19

1        In one respect, however, the UCL is not so broad: remedies.  Under the UCL,

2  prevailing plaintiffs are limited to injunctive relief and restitution.  *Cel-Tech Commc'ns, Inc. v.*

3  *L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999) (citing CAL. BUS. & PROF. CODE § 17203).

4  Thus, because "[p]laintiffs may not receive damages," the key is whether recovery is

5  restitutionary.  *Id.*

6        The instant motion to strike concerns plaintiffs' UCL claims deriving from their

7  claims under sections 201 to 203.  It is settled that "unlawfully withheld wages are property of

8  the employee within the contemplation of the UCL. . . . [Thus,] these wages may be the subject

9  of a restitutionary order under [the UCL] . . . ."  *Cortez v. Purolator Air Filtration Prods. Co.*,

10  23 Cal. 4th 163, 178 (2000).  As such, unpaid wages under sections 201 and 202 may properly

11  be the subject of UCL claims.  *Id.*

12        Section 203, however, awards "penalties," CAL. LAB. CODE § 203, which must

13  be "[c]ontrast[ed] . . . with the unpaid wages that give rise to the penalties . . . ."  *Pineda*,

14  50 Cal. 4th at 1401.  Unlike recovery of unpaid wages, "permitting recovery of section 203

15  penalties via the UCL would not 'restore the status quo by returning to the plaintiff funds in

16  which he or she has an ownership interest.'"  *Id.* (quoting *Korea Supply Co.*, 29 Cal. 4th at

17  1149).  Such penalties are not "designed to compensate employees for work," but are instead

18  intended to "punish employers who fail to do so . . . ."  *Id.* at 1401–02.  Thus, section 203

19  penalties may not be recovered as restitution under the UCL.  *Id.*  Other federal district courts

20  are in agreement.  *See, e.g.*, *Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 891, 895

21  (C.D. Cal. 2005).  This one is as well.

22        Plaintiffs Pena, Hernandez, Suarez and Dail have validly stated claims under

23  sections 201, 202 and 203 of the Labor Code.  Their derivative UCL claims are not "redundant,

24  immaterial, impertinent, or scandalous matter," thus the claims may proceed.  However,

25  plaintiffs have failed to state a UCL claim under section 203 because it awards non-

26  restitutionary damages, which, as a matter of law, may not be awarded under the UCL.  *Id.*;

27  *Pineda*, 50 Cal. 4th at 1402.  The claim may be not be struck under Rule 12(f) for such a

28  failing, *Whittlestone*, 618 F.3d at 974–75; thus, defendant's Motion to Strike is DENIED.

Because the motion to strike is "in substance a Rule 12(b)(6) motion," *Kelley*, 750 F. Supp. 2d at 1146, the court DISMISSES, under Rule 12(b)(6), the UCL claim derived from violation of section 203.

III.     <u>CONCLUSION</u>

As set forth above, defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Defendant's Motion to Strike is DENIED.  Plaintiff's UCL claim derived from violation of California Labor Code section 203 is DISMISSED.  Plaintiffs are directed to file a Seventh Amended Complaint consistent with this order within twenty-one (21) days.

IT IS SO ORDERED.

Dated:  October 14, 2013.

_____
UNITED STATES DISTRICT JUDGE