UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DEL CARMEN PENA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TAYLOR FARMS PACIFIC, INC., et al.,<br><br>Defendants. | Case No. 2:13-cv-01282-KJM-AC<br><br><br><br>ORDER |

Plaintiffs move for preliminary approval of a settlement reached with defendants in this long-pending class action. Mot., ECF No. 287. The motion is unopposed. With leave from the court, plaintiffs filed a supplemental brief and declaration to address several issues the court raised at hearing on the motion. Supp. Br., ECF No. 301; Supp. Decl., ECF No. 302; ECF Nos. 303, 304 (statements of non-opposition to supplemental filings). After reviewing plaintiffs' supplemental brief in the context of the entire record on the pending motion, and as explained below, the court DENIES the motion without prejudice to renewal.

I.  BACKGROUND

Defendant Taylor Farms Pacific, Inc. operates two food production and processing plants in Tracy, California. Mot. at 8.[1] Defendants Abel Mendoza, Inc., Manpower, Inc. and Quality Farm Labor, Inc. provide agricultural or manufacturing workers to third parties and, as

---

[1] The court cites to ECF page numbers, not the briefs' internal pagination.

1

relevant here, paid and acted as a joint or dual employer for employees who worked under Taylor's control. Seventh Am. Compl., ECF No. 101 ¶¶ 9−11. Defendant Slingshot Connections LLC recruits, interviews and hires persons to work at Taylor's Tracy facilities on behalf of Quality Farm Labor, Inc., and also acts as a joint or dual employer for those employees. *Id.* ¶ 12.[2]

Plaintiffs Maria del Carmen Pena, Consuelo Hernandez, Leticia Suarez, Rosemary Dail and Wendell T. Morris were hourly employees at the Tracey plants. Plaintiffs filed this action seeking to represent a class of defendants' current and former employees arising from the following core allegations: (1) defendants did not properly compensate plaintiffs for time spent "donning and doffing" equipment; (2) defendants did not provide plaintiffs with rest breaks and meal breaks required under California labor law; and (3) defendants did provide plaintiffs with paychecks in the form and timely manner required under California labor law. *See* Certification Order, ECF No. 200, at 2−3 (summarizing plaintiffs' class claims).

On February 10, 2015, the court granted in part and denied in part plaintiffs' motion for class certification. Specifically, the court: (1) denied certification of all classes and subclasses as to defendant SlingShot Connections, LLC; (2) denied certification of the donning and doffing subclass; (3) granted certification of two meal break subclasses and approved Pena, Hernandez and Morris as representatives of those subclasses, but denied certification of the rest break subclass; (4) granted certification of the waiting time subclass, insofar as that subclass is entirely derivative of the mixed hourly workers subclass, and appointed Pena and Hernandez as representatives of that subclass; (5) denied certification of the wage statement subclass; and (6) appointed plaintiffs' counsel as class counsel. Certification Order at 42−43. The court later clarified that its order on class certification did not certify any class as to defendant Manpower, but noted the court would entertain a renewed motion as to Manpower. ECF No. 210. No such motion was filed. Tyson and Abel Mendoza, Inc. appealed the court's certification order, unsuccessfully. *See* ECF Nos. 217, 228 (notices of appeal), 243, 244 (memorandum disposition affirming order and mandate). The court stayed the matter pending defendants' filing a petition for writ of certiorari, and then lifted

---

[2] Because plaintiffs' motion did not address the non-Taylor defendants' roles in the suit or settlement, the court draws on allegations in plaintiffs' operative complaint.

2

the stay when the petition was denied. ECF Nos. 254, 262. The parties then entered into settlement negotiations. *See* 273, 277, 280 (minute orders resetting status conference pending parties' settlement discussions).

The parties attended two separate full-day mediation sessions, months apart, with "a highly experienced and respected class action mediator." Mot. at 7, 13. Following the parties' "arm's-length bargaining," the mediator "recommended the settlement amount as fair and reasonable." *Id.* at 9, 13. The parties propose a $5,300,000 gross settlement amount. Mot. at 9. From the gross settlement, plaintiffs seek: (1) attorneys' fees not to exceed 35 percent of the gross settlement ($1,855,000), (2) costs not to exceed $250,000, (3) service awards of $7,500 for each named plaintiff, including plaintiffs not certified as class representatives, not to exceed a total of $37,500, and (4) settlement administrative costs not to exceed $23,000. Mot. at 9−10. Defendants Quality Farm Labor, Inc. and Abel Mendoza, Inc. filed notices of non-opposition, requesting the court grant the motion in its entirety. ECF No. 289 (Quality Farm Labor, Inc. statement of non-opposition); ECF No. 291 (Abel Mendoza, Inc. statement of non-opposition). While Taylor is the only defendant that signed the settlement agreement, that agreement would release all defendants and plaintiffs represent that "if the settlement is finally approved it will result in this litigation being dismissed in its entirety," presumably with all defendants' approval. Suppl. Br. at 2; *see* Fed. R. Civ. P. 41(a)(1)(A)(ii) (requiring, for plaintiff's dismissal without court order, stipulation of dismissal signed by all parties who have appeared).

II. <u>LEGAL STANDARD</u>

There is a "strong judicial policy" favoring settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nonetheless, to protect absent class members' due process rights, Rule 23(e) of the Federal Rules of Civil Procedure permits the claims of a certified class to be "settled . . . only with the court's approval" and "only after a hearing and only on a finding [that the agreement is] fair, reasonable, and adequate . . . ." Fed. R. Civ. P.

/////

/////

/////

3

23(e). To determine whether a proposed class action settlement is fair, reasonable and adequate, courts consider several factors, as relevant, including:

> (1) [T]he strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (noting, at preliminary approval stage, courts consider whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval . . . .").

These factors substantively track those provided in 2018 amendments to Rule 23(e)(2), under which the court may approve a settlement only after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>   (i) the costs, risks, and delay of trial and appeal;
>
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)−(D).[3] The Rule 23(e)(2) factors took effect on December 1, 2018 and,

---

[3] Plaintiffs did not acknowledge the Rule 23(e)(2) factors in their motion but cited them in their supplemental brief. *See* Mot. at 10−11; Suppl. Br. at 5.

4

as an advisory note to the Rule 23(e) amendment recognizes, "each circuit has developed its own vocabulary for expressing [] concerns" regarding whether a proposed settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Accordingly, the newly codified factors are not intended "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*; *see also* 4 Newberg on Class Actions § 13:14 (5th ed.) (noting Rule 23(e) "essentially codified [federal courts'] prior practice"). Moreover, the Advisory Committee warned against allowing "[t]he sheer number of factors [to] distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. The court thus draws on longstanding precedent in applying these newly amended rules.

As a functional matter, a "[r]eview of a proposed class action settlement generally involves two hearings." Ann. Manual Complex Lit. ("MCL") § 21.632 (4th ed. 2004). First, the court conducts a preliminary fairness analysis and, if necessary, a preliminary class certification analysis. *Id.* Second, after all absent class members are notified of the certification and proposed settlement, the court holds a final fairness hearing where it revisits class certification and determines whether to approve the settlement. *Id.* §§ 21.632–21.635. Here, the court undertakes the first, preliminary step only.

III.    DISCUSSION

Upon review of the plaintiffs' filing, the court concludes that although plaintiffs have adequately addressed most outstanding issues the court identified at hearing, they still have not sufficiently explained the proposed class on whose behalf they wish to settle or the terms of their settlement, which precludes the court's ability to exercise its proper role here. Accordingly, and as explained further below, the court is unable to grant the motion on the present record.

   A. <u>Plaintiffs Have Not Shown the Settlement Class Satisfies Rule 23</u>

"Even if the parties have agreed to settle a case on a class-wide basis, the court must determine whether the proposed class satisfies all the requirements of Rule 23(a) (numerosity, typicality, commonality, and adequacy of representation) and either Rule 23(b)(1), (2), or (3)."

5

MCL § 22.921; *see* Fed. R. Civ. P. 23(e)(1)(B)(ii) (requiring court to direct notice of settlement "if giving notice is justified by the parties' showing that the court will likely be able to . . . certify the class for purposes of judgment on the propos[ed] [settlement]"). "Settlement is relevant to a class certification" and, thus, conducting a class certification analysis in the settlement context, "a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619−20 (1997) (citing Fed. Rule Civ. Proc. 23(b)(3)(D)). Even so, "other specifications of [] Rule [23]—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." *Id.*; *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556–57 (9th Cir. 2019) (noting "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial. On the other hand, in deciding whether to certify a settlement class, a district court must give heightened attention to the definition of the class or subclasses.").

While a previously certified class may be expanded for settlement purposes, the expansion must comport with Rule 23's requirements. *See, e.g.*, *In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510 WHA, 2010 WL 4055594, at *2 (N.D. Cal. Oct. 14, 2010) ("[A] settlement class can end more claims than were certified for litigation so long as all the Rule 23 requirements are re-done . . . ."); *Burnham v. Ruan Transportation*, No. SACV120688AGANX, 2015 WL 12646485, at *3 (C.D. Cal. Feb. 6, 2015) (denying preliminary approval motion where "the settlement class exceeds the scope of the certified class" but motion for preliminary approval "fails to apply the Rule 23 factors to the additional claims").

Here, the court previously certified several subclasses but denied certification of other subclasses. *See* Certification Order. The settlement agreement defines the "Settlement Class" as:

> [A]ll former and current non-exempt hourly employees who worked at Taylor Farms Pacific, Inc.'s Tracy, California facilities during the relevant time period. (For purposes of this Settlement Agreement, 'non-exempt hourly employees' includes employees and direct hires of Taylor Farms Pacific, Inc. as well as temporary workers who provided services to Taylor Farms, Pacific, Inc.).

6

Settlement, Mot., Ex. 2, ECF No. 287-1, at 12−48, § 2.1. This "Settlement Class" is significantly broader than the certified subclasses and appears to include subclasses for which the court denied certification, though plaintiffs neglected to acknowledge the expansion in their motion.

At hearing, plaintiffs' counsel explained the broader class was warranted because the court had denied certification as to certain proposed classes without prejudice, leaving open the possibility of future certification, and because Taylor required assurances "a settlement for a certain amount is going to ultimately and finally resolve all potential claims that were or could be raised by any other action." Tr., ECF No. 300, at 6:13−22. Plaintiffs' counsel further explained he "hadn't thought about" whether the broadened class must satisfy Rule 23's requirements, but the parties agreed to supplemental briefing to address the issue. *See id.* at 7:1, 19:20−23. As noted above, plaintiffs' supplemental brief and declaration are now before the court. *See* ECF Nos. 301, 302. While that brief addresses the Rule 23 factors, it does so in a cursory manner that prevents the court from conducting any meaningful Rule 23 analysis and thus prevents the court from approving this settlement.

Plaintiffs' sparse attempt to address Rule 23(a)(2)'s commonality requirement highlights the inadequacies of their supplemental brief. *See* Supp. Br. at 3. Plaintiffs appear to suggest that, because the settlement class is defined to include all "individuals who are or were employed as non-exempt hourly employees at Taylor Farms Pacific's Tracy California production facilities during the relevant time[,]" class members "[b]y definition . . . have in common the fact that they worked in non-exempt positions at certain facilities." Supp. Br. at 3.

Plaintiffs do not explain how class members' shared employment status presents "a common contention" that "is capable of classwide resolution" and will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350. This showing is what commonality requires. *See id.* Instead, perhaps tacitly acknowledging the shortcoming in their briefing on this certification prerequisite, plaintiffs argue "it is routine for courts to alter or expand previously certified classes for purposes of certifying a settlement class" and "[i]n order for Taylor Farms to finally conclude the claims made in the
/////

operative complaint, any settlement must necessarily include all such claims even though not covered by this Court's certification order." *Id.* (footnote omitted).

In other words, plaintiffs do not make an argument for commonality, they make an argument for the court's foregoing a commonality analysis in favor of approving their settlement. This argument is not persuasive, but it is emblematic of plaintiffs' approach to the Rule 23 analysis here. *See, e.g., id.* at 4 (arguing without elaboration that Rule 23(b)(3)'s predominance and superiority requirements are satisfied because "those working at the subject facilities, as a whole, were not afforded legally compliant working conditions and payment" and this case "is better adjudicated as a class action"); *cf. In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 558−60 (discussing predominance requirement in settlement context).

Moreover, the court has no way of knowing whether the parties' proposed settlement class may be comprised of unique groups of class members with unique interests, but without necessary subclasses to recognize those differences; plaintiffs' earlier class certification motion clearly suggested as much. *See* Certification Order (granting in part and denying in part motion to certify four subclasses). Plaintiffs offer no clarification on this point.

It is certainly possible that the proposed settlement class satisfies Rule 23's requirements, and this order should not be construed as finding otherwise. But plaintiffs provide no concrete explanation of the relevant details of the entire settlement class they seek to certify and they omit any cogent showing of how that class satisfies Rule 23. The court cannot approve their motion on this record.

B. <u>Reasonableness</u>

While plaintiffs' motion provides some explanation of the facts and circumstances that led them to believe the settlement amount reached is adequate, here as well they provide little detail. *See* Mot. at 12−13. Counsel's supplemental declaration provides additional information, but appears to address only meal break violations and not all claims the expanded settlement class will release. Supp. Decl. at 3−4 (calculating class's potential meal break damages); *but see* Mot. at 7 (arguing settlement is particularly strong outcome in light of jury verdict in donning and doffing case); Settlement § 2.6 (settlement agreement's proposed release language under which class

members will release multiple claims arising under California Labor Code, "such as claims for off-the-clock work, minimum wages and overtime, meal period or rest break violations of any kind, unpaid wages, rounding of time entries, penalties for failure to provide accurate and itemized wage statements, and penalties for failure to timely pay wages at the separation of employment, and any other benefit claimed on account of the allegations asserted in the operative complaint"). Assuming plaintiffs choose to renew their motion, they must more completely explain how those additional claims are accounted for in the settlement, or, alternatively, why they need not be accounted for despite being released under the parties' agreement.

IV. CONCLUSION

While the court acknowledges and strives to further the strong judicial policy favoring settlement, it cannot simply rubber stamp a class action settlement because it promises recovery and follows years of hard-fought litigation. The motion is DENIED without prejudice to a renewed motion that adequately addresses the court's remaining concerns described above. Assuming plaintiffs wish to renew the motion, they may do so by filing a notice of renewal and reliance on prior briefing, with supplemental briefing focusing on only the issues called out by this order.

IT IS SO ORDERED.

DATED: August 22, 2019.

_____
UNITED STATES DISTRICT JUDGE