UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DEL CARMEN PENA, et al., | Case No. 2:13-cv-01282-KJM-AC |
| Plaintiffs, | |
| v. | ORDER |
| TAYLOR FARMS PACIFIC, INC., et al., | |
| Defendants. | |

In this dispute over defendants' alleged Labor Code violations, plaintiffs renew their previously denied motion for preliminary approval of a class action settlement. For the reasons below, the court GRANTS the motion.

**I.   BACKGROUND**

The factual background of this case is recounted in the court's most recent order denying preliminary approval of the parties' settlement. *See* First Order on Mot. for Prelim. Approval ("First Order"), ECF 305. As noted there, on February 10, 2015, the court granted in part and denied in part plaintiffs' motion for class certification. Specifically, the court: (1) denied certification of all classes and subclasses as to defendant SlingShot Connections, LLC; (2) denied certification of the donning and doffing subclass; (3) granted certification of two meal break subclasses and approved Pena, Hernandez and Morris as representatives of those subclasses, but denied certification of the rest break subclass; (4) granted certification of the waiting time subclass, insofar as that subclass is entirely derivative of the mixed hourly workers subclass, and appointed

Pena and Hernandez as representatives of that subclass; (5) denied certification of the wage statement subclass; and (6) appointed plaintiffs' counsel as class counsel. Cert. Order, ECF No. 200, at 42–43. Tyson and Abel Mendoza, Inc. appealed the court's certification order unsuccessfully. *See* ECF Nos. 217, 228 (notices of appeal), 243, 244 (memorandum disposition affirming order and mandate), 262 (Supreme Court denied petition for writ of certiorari). The parties then entered into settlement negotiations. *See* ECF Nos. 273, 277, 280 (minute orders resetting status conference pending parties' settlement discussions).

On April 5, 2019, plaintiffs first moved for preliminary approval of a class-action settlement. First Mot., ECF No. 287. With leave of court, plaintiffs filed a supplemental brief and declaration to address several issues the court had raised at hearing on the motion. Supp. Br., ECF No. 301; Supp. Decl., ECF No. 302; *see also* ECF Nos. 303, 304 (statements of non-opposition to supplemental filings). On August 23, 2019, the court denied the motion without prejudice to renewal. *See* First Order at 9.

On February 24, 2020, plaintiffs renewed their motion for preliminary approval of the settlement. As before, the parties propose a $5,300,000 gross settlement amount. Mot., ECF No. 316, at 13–14. From the gross settlement, plaintiffs seek: (1) attorneys' fees not to exceed 35 percent of the gross settlement ($1,855,000), (2) costs not to exceed $250,000, (3) service awards of $7,500 for each named plaintiff, including plaintiffs not certified as class representatives, not to exceed a total of $37,500, and (4) settlement administrative costs not to exceed $23,000. Mot. at 2 (relying on prior briefing); First Mot. at 5–6. Defendants Quality Farm Labor, Inc. and Abel Mendoza filed statements of non-opposition. ECF Nos. 317, 318. The court submitted the matter without a hearing and resolves it here. ECF No. 320.

**II.   LEGAL STANDARD**

The court outlined the legal standard for a motion for preliminary approval of a class action settlement in its previous order and incorporates it by reference here. *See* First Order at 3–5.

**III.   DISCUSSION**

In its most recent order, the court concluded that although plaintiffs had adequately addressed most outstanding issues the court identified at hearing, they had not sufficiently

explained the proposed class on whose behalf they wish to settle or the terms of the proposed settlement, which prevented the court from evaluating the proposal under Rule 23(e). *See* First Order at 5. In particular, the court was not satisfied that the proposed class, which was much broader in part than the classes addressed in the court's order granting class certification, met the commonality requirement of Rule 23(a), and thus also the predominance requirement of Rule 23(b)(3). *Id.* at 5–8. Further, the court could not determine whether the settlement amount was reasonable because plaintiffs had not provided any detail of the likely recovery for each claim. *Id.* at 8–9. Accordingly, the court denied the motion without prejudice "to a renewed motion that adequately addresses the court's remaining concerns." *Id.* at 9. The court further explained that "[a]ssuming plaintiffs wish to renew the motion, they may do so by filing a notice of renewal and reliance on prior briefing, with supplemental briefing focusing on only the issues called out by" its order. *Id.* Plaintiffs have provided focused briefing on the Rule 23 factors and the reasonableness of the settlement. The court addresses each issue in turn.

### A. Preliminary Certification of the Class under Rule 23

In their first motion to approve the settlement, plaintiffs asked the court to preliminarily certify a broad "Settlement Class":

> [A]ll former and current non-exempt hourly employees who worked at Taylor Farms Pacific, Inc.'s Tracy, California facilities during the relevant time period. (For purposes of this Settlement Agreement, 'non-exempt hourly employees' includes employees and direct hires of Taylor Farms Pacific, Inc. as well as temporary workers who provided services to Taylor Farms, Pacific, Inc.).

First Mot., Ex. 2 § 2.1, ECF No. 287-1, at 19. This "Settlement Class" appeared to include subclasses for which the court had previously denied certification.

In their renewed motion, plaintiffs ask the court to preliminarily certify each of the original four proposed subclasses "for settlement purposes only." Mot. at 5 (*citing In re Hyundai & Kia Fuel Econ, Litig.*, 926 F.3d 539, 556–57 (9th Cir. 2019) (en banc) ("[M]anageability is not a

/////

concern in certifying a settlement class where, by definition, there will be no trial.").[1] As discussed in the motion for class certification, plaintiffs have identified the following four subclasses:

1. A "donning and doffing" or "off-the-clock" subclass, which includes people who were required to wear protective equipment but did not receive pay for time spent putting on and taking off that equipment.[2] The court denied certification of this subclass. Cert. Order at 42.

2. A "mixed hourly worker" subclass, which includes people who were not permitted to take full rest breaks and meal breaks or who were not offered meal and rest breaks.[3] The court granted certification of this subclass as to meal break claims but denied it as to rest break claims. *Id.* at 42.

3. A "waiting time penalties" subclass, which includes people who either resigned or were terminated and did not receive a timely or complete paycheck.[4] The court granted

---

[1] In its class certification order, the court found "the general class encompassing each subclass [need] not be independently certified because the proposed subclasses in total embody the plaintiffs' claims." Cert. Order at 9.

[2] The full subclass definition proposed by plaintiffs is "[a]ll non-exempt hourly workers paid by Taylor, and all non-exempt hourly workers controlled by Taylor, but paid by Co Defendants who worked pursuant to Taylor's rules and regulations and were required to wear personal protective equipment ('PPE') to protect against the cross contamination of food, food-contact surfaces, or food packaging materials, and who are/were required to don and those items, of equipment, without compensation, sanitize their person and equipment before the start of their paid shifts, doff those items of equipment, without compensation after the end of their paid shifts, and/or don, doff those items of equipment and sanitize their persons and equipment during their meal and rest break breaks." Mot. at 4.

[3] The full subclass definition proposed by plaintiffs is "[a]ll individuals who currently, or formerly worked either as direct employees of Taylor, or joint/dual employees of Taylor and Co Defendants, within the applicable statute of limitations, as nonexempt hourly workers, in any capacity, at Taylor's Tracy, California facilities and who were not offered meal breaks within 5 hours of having started work and/or were not offered a second thirty minute meal break on work days of 10 hours or longer and/or were not offered at least two rest breaks, during work days of 8 – 10 hours, and/or were required to be back at their work stations ready to work within 30 minutes during meal breaks and within 10 minutes during rest breaks." Mot. at 4.

[4] The full subclass definition proposed by plaintiffs is "[a]ll former nonexempt hourly workers paid by Taylor, who, irrespective of whether they resigned or were fired, and irrespective of whether paid by Taylor or by Co Defendants, did not either a). receive their final pay checks on a timely basis and/or b). did not receive all monies due and owing to them in their final pay checks, regardless of whether the checks were payable by Taylor or by Co Defendants." Mot. at 4.

1 certification of this subclass to the extent its members' claims were derivative of the mixed hourly worker meal break claims but not the rest break claims. *Id.* at 43.

4. A "wage statement" subclass, which includes people who did not receive wage statements containing all of the information required by California law.[5] The court denied certification of this subclass. *Id.* at 43.

Plaintiffs ask the court to reanalyze these sub-classes, including those subclasses as to which the court previously denied certification, now for settlement purposes only.

### 1. Donning and Doffing Subclass

The court focused on Rule 23(b)(3)'s predominance requirement when it denied the plaintiffs' motion to certify the donning and doffing subclass. The court again focuses on this issue here, but in the context of settlement. In their original motion for class certification, plaintiffs did "not carr[y] their burden to show the predominance of common questions" because "the issue of compensation [was] individualized." Cert. Order at 15–16. The court explained:

> The plaintiffs have not presented evidence that TFP had established a written or official uniform policy governing off-the-clock work. Rather, plaintiffs rely entirely on depositions and declarations from the named plaintiffs and other former TFP employees to make their case. Despite testimony from several dozen former employees that TFP required off-the-clock donning and doffing, an effectively equal body of testimony from named plaintiffs and putative class members describes on-the-clock donning and doffing. . . . Beyond the testimonial inconsistencies, the plaintiffs have not carried their burden to show the predominance of common questions. Not all employees are required to wear the same protective equipment. . . . Dressing and removing the equipment took place in different locations at different times, required more time of one employee than another, and employees became more efficient over time.
>
> Because the issue of compensation is individualized, the plaintiffs' injury cannot be shown via evidence common to the class. Even if plaintiffs had established the existence of an unofficial policy, in light of such disparate application, each class member would be required to make an individual case to establish the defendants' liability. The "goals of efficiency and judicial economy" would not be served by certification[.]

---

[5] The full subclass definition proposed by plaintiffs is "[a]ll non-exempt hourly workers paid by Taylor, and all non-exempt hourly workers controlled by Taylor, but paid by Co Defendants, who worked pursuant to Taylor's rules and regulations whose wage statements did not accurately set forth all required information as required by California Labor Code section 226(a)." Mot. at 4.

*Id.* at 15–16 (quoting *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009)). Therefore, even if plaintiffs could show an informal policy applied, "in light of . . . disparate application, each class member would be required to make an individual case to establish the defendants' liability." *Id.* at 16.

Plaintiffs have provided no new evidence to address the concerns explained in the court's previous order. They argue merely that the court's "predominance concerns are not present in this settlement," because there is now no need for every class member to make an individual case for liability. Mot. at 10. That argument misperceives the requirements of Rule 23.

For all classes and subclasses, Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members." "To determine whether a class satisfies the requirement, a court pragmatically compares the quality and import of common questions to that of individual questions." *Jabbari v. Farmer*, 965 F.3d 1001, 1005 (9th Cir. 2020) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). Although settlement is "relevant" for class certification, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997), the court must ensure that Rule 23 is satisfied for settlement classes just the same. The court must give "undiluted, even heightened, attention in the settlement context" because the court "will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.* at 620. Settlement affects the analysis only insofar as "a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." *Id.* But if the settlement class does not have "sufficient unity so that absent members can fairly be bound by decisions of class representatives," then it cannot be certified. *Id.* at 621. As the Supreme Court has explained, the proposed settlement class must be "sufficiently cohesive to warrant adjudication by representation." *Id.* at 623.

The Supreme Court's decision in *Amchem* illustrates the types of divisions that can prevent the approval of a settlement class. In *Amchem*, the proposed settlement class was made up of people who had been exposed to asbestos products. *Id.* at 602–03. The defendants, who had manufactured these products, wanted to resolve all of the current and future asbestos-related

claims against them. *Id.* at 603. The proposed settlement class thus included both those who had already suffered the negative health consequences of asbestos exposure and those who had not yet suffered any negative asbestos-related health consequences at all, even if they might in the future. *See id.* The proposed settlement class included no subclasses, and it placed caps on the numbers and amounts of the claims that class members could pursue. *See id.* at 603–04. These amounts would not increase with inflation, and the settlement agreement did not allow the number or types of claims to expand if advances in medical science supported new or stronger claims of asbestos-related injuries. *See id.* at 606. Only a limited number of class members could opt out of the class each year, and even if they did, they were forbidden from asserting certain claims, such as a claim for punitive damages. *Id.* at 604–05.

The Supreme Court affirmed the lower court's decision that the class could not be certified. *See id.* at 622–28. Common questions did not predominate over individual questions, and the class representatives would not fairly and adequately protect the interests of the class as a whole. *See id.* The class members had been exposed to different products for different amounts of time in different ways and in different places. *Id.* at 624. Some had suffered no physical injuries, at least none that had been detected, while others had developed cancer and debilitating illnesses. *Id.* Class members would face vastly different costs of treatment. *Id.* Those who had not yet experienced any detectable negative health consequences shared very little in common with those who had, and they faced very different incentives. As the Supreme Court explained, for example, "for the currently injured, the critical goal [was] generous immediate payments," which conflicted with "the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future." *Id.* at 626.

The conflicts and the wide diversity of interests in *Amchem* did not disappear after the parties agreed to settle, and for that reason, it did not matter that there would be no trial. *See id.* at 621. But in other cases, individualized questions and conflicts do fade away when the parties

/////

/////

/////

7

1  agree to settle. This category of classes is illustrated by the Ninth Circuit's decisions in *Hanlon v.*
2  *Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998),[6] and *Hyundai*, 926 F.3d 539.

3  In *Hanlon*, the plaintiffs sought compensation for faulty latches on the rear gates of their
4  minivans. 150 F.3d at 1017–18. The Ninth Circuit affirmed the district court's decision to certify
5  the settlement class. It rejected analogies to *Amchem*, pointing out that everyone in the class had
6  experienced a similar problem, that the class was not divided into subgroups with conflicting
7  interests, that potentially high-value personal injury claims had been excluded, and that owners of
8  every minivan model and residents of every state were represented by named plaintiffs. *See id.* at
9  1021.

10  The settlement class certified in *Hyundai* was in a similar situation, and it also was
11  certified. The plaintiffs alleged they had been misled by misstatements about the fuel economy of
12  the defendants' cars. The district court certified the settlement class, and the Ninth Circuit
13  affirmed. "[T]he crux of each consumer's claim" was the same: "a company's mass marketing
14  efforts, common to all consumers, misrepresented the company's product." *Id.* at 559. The range
15  of damages was small, and the plaintiffs all claimed to have suffered the same type of harm. *Id.*
16  at 559–60. The court was not persuaded by arguments that individual reliance questions would
17  predominate based on differences between used car and new car buyers. *Id.* at 560. For example,
18  used cars, unlike new cars, have no window stickers showing fuel economy estimates. *See id.*
19  Perhaps if the case had gone to trial, reliance questions would have made a trial difficult, but
20  reliance was no hurdle for a settlement class. *See id.*

21  Here, as noted, this court previously denied the plaintiffs' motion to certify the donning
22  and doffing subclass because there was no evidence of a uniform donning and doffing policy and
23  because witnesses gave contradictory testimony about whether they were paid to put on, take off
24  and clean their protective equipment. Cert. Order at 15. Employees also wore different

---

[6] The Ninth Circuit has recognized that aspects of its decision in *Hanlon* were overruled in *Wal-Mart v. Dukes*, 654 U.S. 338 (2011). *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 975 F.3d 770, 777 (9th Cir. 2020). But the Ninth Circuit has continued to rely on the analysis described above, including in its recent en banc decision in *Hyundai*. *See* 926 F.3d at 559–60.

equipment, put on and removed that equipment in different places at different times, and not everyone took the same amount of time to do it. *Id.* So the relevant question is, are these differences more like those that prevented certification of the settlement class in *Amchem* and similar cases? Or are they more similar to the differences tolerable in a settlement class, as in *Hanlon* and *Hyundai*?

At first glance, there are easy parallels to draw between the class proposed here and the class the Supreme Court rejected in *Amchem*. *See, e.g.*, 521 U.S. at 624 ("Class members were exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods." (quoting *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 626 (3d Cir. 1996))). Plaintiffs here, as there, have offered very little argument and no new evidence to the contrary. But because a "strong judicial policy" favors settlement of class actions, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), the court considers the law and the record independently of the parties' arguments and concludes that preliminary class certification should be granted for this subclass.

No divisions within the donning and doffing subclass might pit some class members against others. To be sure, the differences highlighted above do separate some subclass members from others. And these differences might make it very difficult for some subclass members to prove they were underpaid. For that reason, a trial would be very difficult and perhaps impossible here, just as the differences between used and new car buyers in *Hyundai* would likely have complicated a trial in that case. But there is no reason to suspect that people whose jobs required laborious off-the-clock donning and doffing have different interests in the structure or size of a settlement than people who could change and clean their equipment quickly. No evidence suggests, for example, that members of this subclass would not be willing to accept immediate compensation rather than developing their evidence and making a stronger case, as in *Amchem*. Rather, every member of the donning and doffing subclass is making the same type of claim as every other, even if their individual awards are different.

Any differences in damages claims also do not foreclose preliminary approval here. As in *Hanlon* and *Hyundai*, there is no group of claimants that might advance much larger claims than

9

others. And as noted in the court's order on class certification, the representative plaintiffs also include some people with larger claims and some with smaller claims. *See* Class Cert. Order at 35. As a result, both larger and smaller claimants have their respective representatives, which weighs in favor of certification. *See Hanlon*, 150 F.3d at 1021. In any event, differences in damages amounts generally do not preclude certification. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513–14 (9th Cir. 2013). The court thus concludes at this stage that common issues exist and will predominate for the donning and doffing subclass if it is approved for settlement only.

The court also concludes that a settlement class is the superior method of resolving the parties' disputes. The court already has found that class litigation is the superior method of resolving the claims of other subclasses in this action. *See* Class Cert. Order at 34–37. That analysis is equally applicable to the claims of the donning and doffing subclass:

1. The plaintiffs assert relatively small individual claims, which do not make individual litigation attractive or sustainable;
2. Many class members are non-native speakers of English who lack the resources to finance and direct individual lawsuits;
3. There is no other related litigation;
4. The parties' dispute is governed largely by California labor law, and the events giving rise to this litigation occurred within this district;
5. The court is aware of no other more attractive alternative methods of resolving this dispute; joinder of thousands of potential class members is impracticable, multidistrict litigation would not present any advantage, and administrative remedies do not appear to have generated any success; and
6. Because there will be no trial, the court need not consider the likely difficulties in managing a trial, as noted above.

The court also finds the named plaintiffs' claims are typical of those advanced by the donning and doffing subclass as a whole, but again, only in the context of settlement. "The purpose of the typicality requirement is to assure that the interest of the named representative

aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Their interests "need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, as described above, the members of the donning and doffing subclass do not have identical interests, but their interests are sufficiently similar now that the parties have agreed to settle: all members of the subclass seek compensation for unpaid time putting on, removing and cleaning protective equipment.

The adequacy requirement is also satisfied here. Rule 23(a) refers to the adequacy of both class representatives and class counsel. *See Hanlon*, 150 F.3d at 1020. The court previously considered each of the named plaintiffs and found several to be adequate representatives. *See* Cert. Order at 23–26. And in the parties' previously contested motion for class certification, the defendants did not challenge the adequacy of class counsel. *See id.* at 23. The court also determined that counsel would serve as an adequate representative. *See id.* No evidence suggests any reason to depart from these conclusions now.

Finally, the court is satisfied that the subclass is sufficiently numerous. As the court found in its previous order on class certification, the parties do not dispute that the class is sufficiently numerous; it includes more than 4,000 people. *See* Class Cert. Order at 20–21.

The court therefore concludes the donning and doffing subclass may be preliminarily approved for settlement.

### 2. Rest Break Sub-Class[7]

Unlike the donning and doffing subclass, the rest break subclass was unified by evidence of a single policy that did not comply with California law. Cert. Order at 27–28. But the court held in its previous order that the predominance requirement was not satisfied; contradictory testimony about whether and how different supervisors implemented the rest break policy created individualized factual disputes. *Id.* at 29–31. For example, "[s]everal employees, including the plaintiffs, testified . . . that TFP did not implement or rely on the Handbook" while plaintiff

---

[7] As described above, the rest break sub-class is a subset of the "Mixed Hourly Worker Sub-Class," which includes class-members who "were not offered at least two rest breaks, during work days of 8–10 hours . . . ." Mot. at 4.

11

Morris testified that "he followed the rules in the Handbook" even though TFP did not. *Id.* at 30. Timekeeping records were also unavailable for rest breaks, so individualized inquiries were unavoidable. *See id.* at 30–31. These concerns implicated not only the feasibility of a trial, but also class unity, and plaintiffs' previous motion for preliminary certification did not address these concerns. The court therefore could not conclude that common issues predominated.

The plaintiffs do not now offer more evidence or information to alleviate these concerns. Again, however, the court has consulted the record and relevant legal authorities independently. In light of the settlement agreement, the individualized issues described above appear unlikely to divide the class against itself. For example, employees who did not receive adequate rest breaks will receive compensation, and the court perceives no reason that employees who received adequate rest breaks would object to that recovery. Some employees might also have received rest breaks inconsistently, but these employees would share interests with those who never received any rest breaks at all; that shared interest is in compensation for all inadequate breaks. Again, as above, any differences in the amount of compensation are no obstacle to class certification. *See Leyva*, 716 F.3d at 513–14.

The court also concludes the rest break subclass satisfies the remaining Rule 23 requirements given that a settlement agreement has materialized. The reasons are the same as those described in the previous section. The motion for preliminary approval of the rest-break subclass is thus granted.

### 3. Waiting Time Penalties Sub-Class

The court previously found that, as long as the claims of the waiting time sub-class are "entirely derivative of the meal break claims of the mixed hourly worker sub-class," the waiting time penalties sub-class met the commonality and predominance requirements. Cert. Order at 40. Plaintiffs have not provided any supplemental briefing on the waiting time penalties sub-class, presumably because they pursue only the derivative waiting time claims. *See* Mot. at 7 n.2 (noting "waiting time claims that were derivative of the meal breaks claims satisfied the commonality element and ultimately certified classes based on those claims"). Accordingly, the waiting time sub-class meets the requirements of Rule 23 to the extent it is derivative of the meal

1  break sub-class. *See* Cert. Order at 32–34 (finding common questions predominate as to meal

2  break claims). Plaintiffs' motion is granted in this respect.

3        The court has now also determined that the rest break subclass may be approved

4  preliminarily, as described above. This waiting -time penalties subclass is thus approved on a

5  preliminary basis to the extent it is also derivative of the rest-break subclass.

          **4.**      **Wage-Statement Sub-Class**

7        The court originally denied certification of the wage statement subclass, because plaintiffs

8  did not meet their burden to show common issues existed and predominated. *Id.* at 42. The

9  court's primary concern was the scant evidence plaintiffs offered: one non-compliant wage

10 statement from one named plaintiff. *Id.* Plaintiffs now explain they "have since discovered that

11 the purported omissions on Plaintiff Hernandez's paystub were also present on other employees'

12 wage statements." Mot. at 12 (citing Bickford Decl. ¶ 7, ECF No. 316-1[8]). The court finds this

13 new evidence is sufficient to establish common questions, i.e., whether defendants' paystubs

14 violated the Labor Code, that predominate over individual questions such that commonality and

15 predominance are satisfied for the purpose of settlement. Plaintiffs' motion is GRANTED in this

16 respect.

          **B.**      **Reasonableness of Settlement Amount**

18       In its most recent order, the court also found plaintiffs did not address the reasonableness

19 of the settlement as it pertains to all the claims the settlement would release. *See* First Order at 8–

20 9. In their renewed motion, plaintiffs have now more completely explained how all of the claims

21 are accounted for in the settlement. Plaintiffs' counsel provides a declaration in which he calculates

22 the likely recovery for each of the claims at issue, totals the amounts, and shows the maximum

---

[8] Mr. Bickford, plaintiffs' counsel, states in his sworn declaration cited here:

> In the course of this litigation, counsel have reviewed the paystubs for Plaintiffs and the putative class can confirm that each Plaintiff (1) was missing the same information from their paystubs, (2) received paystubs from TFP, and (3) were injured in the same manner as other class members by not being able to ascertain all information on their paystubs as required by section 226(a).

Bickford Decl. ¶ 7.

exposure for the class claims is roughly $50.5 million, and the "realistic exposure," assuming the violations stopped in 2012 due to defendants' policy changes, is roughly $13.5 million. *See* Mot. at 14 (summarizing Bickford Decl.). The court is satisfied by this record that the class is recovering roughly 39 percent of the realistic exposure, which is reasonable given that settlement avoids the risks, expense and delay of litigation. *See id.* (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement roughly one-sixth of potential recovery)). Plaintiffs have established the reasonableness of the settlement amount, and the issues identified in the previous order are resolved.

## IV.  CONCLUSION

The motion for preliminary approval is granted. This order resolves ECF No. 316.

IT IS SO ORDERED.

DATED: November 2, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE

14