1  R. Rex Parris, Esq. (SBN 96567)
   Kitty K. Szeto, Esq. (SBN 258136)
2  **PARRIS LAW FIRM**
3  43364 10th Street West
   Lancaster, California 93534
4  (661) 949-2595 Telephone | (661) 949-7524 Facsimile

5  Stuart R. Chandler, Esq. (SBN 088969)
6  **STUART R. CHANDLER APC**
   761 E. Locust Avenue, Suite 101
7  Fresno, California 93720
   Telephone:  (559) 431-7770 | Facsimile:  (559) 431-7778
8
9  Philip A. Downey, Esq. (*Pro Hac Vice*) (PA SBN 81603)
   **THE DOWNEY LAW FIRM, LLC**
10 105 Guinea Hollow Road
   Califon, New Jersey 07830
11 Telephone:  (610) 324-2848 | Facsimile:  (610) 813-4579

12
   Attorneys for Plaintiffs and the Settlement Class
13

14                **UNITED STATES DISTRICT COURT**

15                **EASTERN DISTRICT OF CALIFORNIA**

16

17 MARIA DEL CARMEN PENA, CONSUELO      )  Case No. 2:13-CV-01282-KJM-AC
   HERNANDEZ, LETICIA SUAREZ,           )
18 ROSEMARY DAIL and WENDELL T.         )  **CLASS ACTION**
   MORRIS; on behalf of themselves and on behalf )
19 of all other similarly situated individuals;   )
                                        )  **PLAINTIFFS' NOTICE OF UNOPPOSED**
20              Plaintiffs,             )  **MOTION AND UNOPPOSED MOTION FOR**
                                        )  **FINAL APPROVAL OF CLASS ACTION**
21       v.                            )  **SETTLEMENT; MEMORANDUM OF**
                                        )  **POINTS AND AUTHORITIES**
22 TAYLOR FARMS PACIFIC, INC., d/b/a    )
   TAYLOR FARMS, ABEL MENDOZA, INC.,   )  [Filed Together with Declaration of Kitty K.
23 MANPOWER, INC., QUALITY FARM LABOR,  )  Szeto (ECF No. 325-1); Declaration of Kevin Lee
   INC., SLINGSHOT CONNECTIONS, LLC; and )  (ECF No. 325-2); Declaration of Stuart R.
24 DOES 5-50, inclusive,                )  Chandler (ECF No. 325-3); Declaration of Philip
                                        )  A. Downey (ECF No. 325-4); and [Proposed]
25              Defendants.            )  Order (ECF No. 325-5)]
                                        )
26                                      )
                                        )  Date:        March 5, 2021
27                                      )  Time:        10:00 a.m.
                                        )  Courtroom:  3
28 _____ )

---

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES ................................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

1.    INTRODUCTION .................................................................................................... 1

2.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................ 1

3.    SUMMARY OF THE SETTLEMENT TERMS ....................................................... 2

4.    THE SETTLEMENT ADMINISTRATION PROCESS .......................................... 3

5.    FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT SHOULD BE GRANTED ..................................................................................................... 3

    A.    The Strength of Plaintiffs' Case and Associated Risks Favor Final Approval. ....... 4

    B.    The Settlement Resulted from Arm's Length Negotiations Based Upon Extensive Investigation and Discovery. ................................................................. 5

    C.    The Settlement Amount is Fair, Reasonable, and Adequate. .................................. 6

    D.    Plaintiffs and Class Counsel Have Adequately Represented the Class. ................. 8

6.    THE SERVICE AWARD TO PLAINTIFFS IS FAIR AND REASONABLE ............. 9

7.    ATTORNEYS' FEES AND COSTS ....................................................................... 11

    A.    An Upward Adjustment of the Ninth Circuit's Benchmark is Appropriate .......... 13

        1.    The Risks Assumed by Class Counsel Favor the Fee Award Sought. ....... 13

        2.    Class Counsel Obtained an Excellent Result for the Class ........................ 14

        3.    Class Counsel's Award is Relatively Modest ............................................ 15

        4.    Class Counsel Obtained Swift and Efficient Relief for the Class ............. 17

        5.    The Skill and Reputation of Class Counsel Justifies the Fee Requested ................................................................................................. 18

        6.    Reasonable Expectations of Counsel and Fees in Similar Cases .............. 18

    B.    Attorneys' Fees Are Also Appropriate Under the Lodestar Method .................... 19

CONCLUSION ............................................................................................................... 20

i

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*Acosta v. Trans Union*,
243 F.R.D. 377(C.D. Cal. 2007) ...................................................................................4

*Anthony Russell v. Hilmar Cheese Company, Inc.*
(2017) Merced County Superior Court Case No. CVM 015858 ..........................................16

*Antonio Barocio, et al. v. Monterey Gourmet Foods, Inc. et al*
(2016) Monterey Superior Court Case No. M121666 .........................................................16

*Armstrong v. Whirlpool Corp.*,
2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007) ............................................................14

*Blum v. Stenson*,
465 U.S. 886 (1984) ....................................................................................................12

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ........................................................................................12, 13, 17

*Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*,
No. 12-CV-05259-JST, 2014 WL 2967474, (N.D. Cal. June 30, 2014) ...............................10

*Brotherton v. Cleveland*,
141 F.Supp.2d 907 (S.D.Ohio 2001) ..............................................................................11

*Craft v. County of San Bernardino*,
624 F.Supp.2d 1113 (C.D.Cal.2008) ..............................................................................12

*Cruz, et al. v. Petaluma Acquisition, LLC, et al*
(2015) Sonoma County Superior Court Case No. SCV251977 ..........................................16

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ....................................................................7

*De Jesus v. Frozsun, Inc.*
(2018) Santa Barbara Superior Court Case No. 1416723 ................................................16

# TABLE OF AUTHORITIES

**PAGE(S)**

<u>Cases</u>

*Dolgow v. Anderson,*
   43 F.R.D. 472(E.D.N.Y. 1968)...................................................................................13

*Eddings v. Health Net, Inc.,*
   No. CV 10-1744-JST RZX, 2013 WL 3013867 (C.D. Cal. June 13, 2013).........................10

*Emmons v. Quest Diagnostics Clinical Lab.,*
   No. 1:13-cv-00474-DAD-BAM, 2017 WL 749018 (E.D. Cal. 2017).................................17

*Garner v. State Farm Mut. Auto Ins. Co.,*
   No. CV 08 1365 CW (EMC), 2010 WL 1687832  (N.D. Cal. Apr. 22, 2010)........................6

*Glass v. UBS Financial Services, Inc.,*
   2007 WL 221862(N.D. Cal. Jan. 26, 2007)......................................................................13

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011(9th Cir. 1998) ......................................................................................14

*Holman v. Experian Info. Solutions, Inc.,*
   No. 11-CV-0180 CW (DMR), 2014 WL 7186207 (N.D. Cal. Dec. 12, 2014) ...................10

*In re Activision Securities Litigation,*
   723 F. Supp. 1373 (N.D. Cal. 1989)...............................................................................12

*In re Ampicillin Antitrust Litigation,*
   526 F. Supp. 494 (D.D.C. 1981).....................................................................................19

*In re Buspirone Patent & Antitrust Litig.,* MDL
   No. 1413, 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003)................................19

*In re Cardizem CD Antitrust Litig.,*
   No. 99-73259 (E.D. Mich. Nov. 25, 2002).......................................................................19

*In re Hyundai & Kia Fuel Econ, Litig.,*
   926 F.3d 539, 570 (9th Cir. 2019) ..................................................................................6

# TABLE OF AUTHORITIES

**PAGE(S)**

<u>Cases</u>

*In re Interpublic Sec. Litig.*, No. Civ. 6527 (DLC),

    2004 U.S. Dist. LEXIS 21429, (S.D.N.Y. Oct. 27, 2004) ...................................................13

*In re KeySpan Corp. Sec. Litig.*,

    No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068(E.D.N.Y. Aug. 25, 2005) ............15

*In re Linerboard Antitrust Litigation*,

    MDL No. 1261, 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. June 2, 2004) ...............................................19

*In re Mego Fin. Sec. Litig.*,

    213 F.3d 454 (9th Cir. 2000) .........................................................................................................4, 8

*In re Omnivision Techs., Inc.*,

    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................................................9

*In re Pacific Enterprises Security Litigation*,

    47 F.3d 373 (9th Cir. 1995) ......................................................................................................12, 19

*In re Relafen Antitrust Litig.*,

    1:01cv12239-WGY, (Order and Final Judgment dated Apr 9, 2004, D. Mass.) .................................19

*In Re Southern Ohio Correctional Facility*,

    175 F.R.D. 270 (S.D. Ohio 1997) ..................................................................................................10

*In re Toys R Us-Delaware, Inc. -- Fair & Accurate Credit Transactions Act (FACTA) Litig.*,

    295 F.R.D. 438 (C.D. Cal. 2014) .....................................................................................................8

*In re* Washington *Public Power*,

    19 F.3d at 1302 ...........................................................................................................................14, 16

*Ingram v. The Coca-Cola Co.*,

    200 F.R.D. 685 (N.D. Ga. 2001)..................................................................................................9, 10

*Jesus Negrete et al. v. Pacific Fresh Seafood Company, et al.*

    (2016) Sacramento Superior Court Case No. 34-2013-00149593.......................................................16

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Juan Martinez et al v. Mann Packing*
 (2018) Monterey County Superior Court Case No. M116476 ...............................16

*Kullar v. Foot Locker Retail, Inc.*,
 168 Cal.App.4th 116 (2008) .......................................................................7

*Lane v. Facebook, Inc.*,
 696 F.3d 811 (9th Cir. 2012) .....................................................................4

*Lealao v. Beneficial Cal., Inc.*,
 82 Cal.App.4th 19 (2000) .........................................................................16

*Masters v. Wilhelmina Model Agency, Inc.*,
 473 F.3d 423 (2d Cir. 2006) ......................................................................13

*Miller v. CEVA Logistics USA, Inc.*,
 2015 WL 4730176 (E.D.Cal. 2015) ...............................................................12

*Mills v. Electric Auto-Lite Co.*,
 396 U.S. 375 (1970)................................................................................12

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
 221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................9

*Nichols v. Smithkline Beecham Corp.*,
 No. Civ. A. 00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) .......................19

*North Shore Hematology-Oncology Assoc., P.C. v. Bristol-Myers Squibb Co.*,
 No. 04 Civ. 248 (D.D.C. Nov. 30, 2004)......................................................19

*Officers for Justice v. Civil Serv. Comm'n*,
 688 F.2d 615 (9th Cir. 1982) .......................................................................7

*Paul, Johnson, Alston & Hunt v. Graulty*,
 886 F.2d 268(9th Cir. 1989) .......................................................................12

# TABLE OF AUTHORITIES

**PAGE(S)**

<u>Cases</u>

*Razilov v. Nationwide Mut. Ins. Co.*,
   No. 01-CV-1466-BR, 2006 WL 3312024(D. Or. Nov. 13, 2006)......................................................10

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948(9th Cir. 2009) ......................................................................................................4, 8

*Romero v. Producers Dairy Foods, Inc.*,
   2007 WL 3492841 (E.D.Cal.2007)....................................................................................................12

*Roos v. Honeywell International, Inc.*
   (2015) 241 Cal.App.4th 1472 ...........................................................................................................16

*Singer v. Becton Dickinson and Co.*,
   08-cv-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010)..........................................10, 12

*Six Mexican Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) .................................................................................................11, 12, 13

*Smith v. CRST Van Expedited, Inc.*,
   No. 10-CV-1116- IEG WMC, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) .......................................11

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..............................................................................................................4

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................................................................7

*Van Gemert v. Boeing Co.*,
   516 F. Supp. 412 (S.D.N.Y. 1981) ....................................................................................................19

*Van Vranken v. Atlantic Richfield Co.*,
   901 F.Supp. 294 (N.D. Cal. 1995) .........................................................................................9, 10, 19

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D.Cal.2010) .......................................................................................................12

1

**TABLE OF AUTHORITIES**

2

**PAGE(S)**

3

<u>Cases</u>

4

*Vizcaino v. Microsoft Corp.*,

5

290 F.3d 1043 (9th Cir. 2002) ..................................................................... *passim*

6

*Waters v. International Precious Metals Corp.*,

7

190 F.3d 1291(11th Cir. 1999) ...........................................................................13

8

*Young v. Polo Retail, LLC*,

9

2007 WL 951821 (N.D. Cal. 2007) ....................................................................13

10

11

<u>Other Authorities</u>

12

5 Moore's Federal Practice, § 23.85[2][e] (Matthew Bender 3d ed.)...........................9

13

<u>Newberg on Class Actions</u>, 4th Ed., 2002 §14.6 ......................................................19

14

15

<u>Rules</u>

16

Fed. R. Civ. P. 23(e) ......................................................................................3, 4

17

Fed. R. Civ. P. 23(e)(2)......................................................................................4

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' <u>UNOPPOSED</u> MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**PLEASE TAKE NOTICE** that on March 5, 2021 at 10:00 a.m., or as soon as the matter may be heard before the Honorable Kimberly J. Mueller in Courtroom 3 of the above-entitled court located at 501 I Street, Sacramento, California 95814, Plaintiffs MARIA DEL CARMEN PENA, CONSUELO HERNANDEZ, LETICIA SUAREZ, ROSEMARY DAIL and WENDELL T. MORRIS (hereinafter "Plaintiffs") will and hereby move the Court for an order granting final approval of:

1.      The **all-in**, **non-reversionary** five million three hundred thousand dollar (**$5,300,000.00**) class action settlement as described herein and as set forth in the parties' Stipulation of Settlement and Release ("Settlement Agreement") attached as **Exhibit "1"** to the Declaration of Kitty K. Szeto ("Szeto Decl.") filed concurrently herewith, which was preliminarily approved by the Court on November 2, 2020 (*See* Second Order on Mot. for Prelim. Approval, ECF No. 321);

2.      Class Counsel's request for attorneys' fees in the amount of **$1,855,000** for **4,231.77** hours of time spent working on the case as fully disclosed to the Settlement Class Members and not objected to by a single Settlement Class Member (*See* Declaration of Kevin Lee ["Lee Decl."] at ¶ 11, ECF No. 325-2);

3.      Class Counsel's request for reimbursement of litigation costs and expenses in the amount of **$210,164.68** as fully disclosed to the Settlement Class Members and not objected to by a single Settlement Class Member (*Id.*);

4.      A **$7,500** Service Award to each of the Plaintiffs as fully disclosed to the Settlement Class Members and not objected to by a single Settlement Class Member (*Id.*); and

5.      Administrative Costs in the amount of **$23,000** to the Claims Administrator, Phoenix Class Action Administration Solutions ("Phoenix"), as fully disclosed to the Settlement Class Members and not objected to by a single Settlement Class Member (*Id.*).

This motion is based on the following memorandum of points and authorities, the Second Order Granting Motion for Preliminary Approval of Class Action Settlement (ECF No. 323); the Declaration of Kitty K. Szeto (ECF No. 325-1); the Declaration of Kevin Lee on behalf of the Claims Administrator (ECF No. 325-2); the Declaration of Stuart R. Chandler (ECF No. 325-3); and the Declaration of Philip A. Downey (ECF No. 325-4); the [Proposed] Order filed concurrently with this motion (ECF No. 325-5); Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 287)

and supplemental briefs, declarations, and statements of non-opposition in support thereof (ECF Nos. 301-304); Plaintiffs' Renewed Motion for Preliminary Approval of Class Action Settlement and statements of non-opposition in support thereof (ECF Nos. 316-318); as well as upon the pleadings and other records on file with the Court in these matters, and upon such documentary evidence and oral argument as may be presented at the hearing on this motion.

DATED: February 5, 2021                    **PARRIS LAW FIRM**

By:      /s/ Kitty K. Szeto
             Kitty K. Szeto, Esq.
             Attorney for Plaintiffs and
             Settlement Class

PLAINTIFFS' <u>UNOPPOSED</u> MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**1.    INTRODUCTION**

3    Plaintiffs MARIA DEL CARMEN PENA, CONSUELO HERNANDEZ, LETICIA SUAREZ,

4   ROSEMARY DAIL, and WENDELL T. MORRIS (hereinafter "Plaintiffs") hereby seek final approval

5   of the all-in, non-reversionary, post-certification class action settlement which was preliminarily

6   approved by this Court on November 2, 2020 after several rounds of motions and supplemental briefs.

7   ECF No. 323.  The proposed settlement offers the aggregate sum of five million three hundred thousand

8   **($5,300,000.00)** U.S. dollars for 4,145 current and former non-exempt hourly employees who worked at

9   Taylor Farms Pacific, Inc.'s Tracy, California any time between February 17, 2008 and November 2,

10   2020 ("Applicable Period").   The proposed settlement is the product of arms' length, good faith

11   negotiations by experienced counsel presided over by a highly-qualified mediator specializing in wage-

12   and-hour class actions, as well as the product of Plaintiffs' and Class Counsel's success in certifying and

13   affirming class certification before the Ninth Circuit after expending thousands of hours and costs in this

14   case to achieve this extraordinary result on behalf of the Settlement Class.  Importantly, the Settlement

15   Class Members have embraced this settlement as out of a Settlement Class of over 4,000 individuals,

16   **not a single objection** has been made to any aspect of this settlement and only twenty (20) people opted

17   out.  In light of the Court having preliminarily approved the settlement on November 2, 2020 and the

18   overwhelming support by the Settlement Class Members, the $5,300,000.00 settlement is fair,

19   reasonable, and adequate and the Court should grant final approval.

20

**2.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

21    Plaintiffs and the Settlement Class Members are current and former non-exempt hourly employees

22   who worked at Taylor Farms Pacific, Inc.'s Tracy, California facilities during the Applicable Period.

23   Plaintiffs alleged that under Defendants' wage compensation system, Defendants did not pay their

24   nonexempt hourly employees for all required pre-and-post-production activities that were necessary and

25   integral to their overall employment responsibilities, such as donning and doffing personal protective

26   equipment and gear.  Plaintiffs also alleged that because Settlement Class Members were required to

27   perform numerous tasks both at the beginning and the end of their rest periods and meal breaks, they

28   were not provided with uninterrupted off-duty time as required by California law.  The action further

1

alleged a failure to properly provide accurate and itemized wage statements.

The parties actively litigated the case since the filing of the initial complaint and Defendants have vigorously contested the claims during the entire course of this litigation spanning over eight years and the filing of seven amended complaints.  Discovery and investigation have included, among other things, (a) inspection and analysis of thousands of pages of documents and data, including extensive time data, pay records, wage statements, and policy documents; (b) interviews of many current and former hourly workers; (c) voluminous written discovery and depositions; (d) in-depth analysis of potential class-wide damages; and (e) extensive research of the applicable law with respect to the claims asserted in the actions and the potential defenses thereto.

Plaintiffs were vigorously involved in a long and hard fought class certification battle.  Their Motion for Class Certification was filed with the Court on October 4, 2013.  It was fiercely contested by Defendants.  This Court granted the motion, in part, on February 10, 2015.  ECF No. 200.  Defendants appealed the Court's certification order unsuccessfully.  ECF Nos. 217, 218 (notices of appeal); 243, 244 (memorandum disposition affirming order and mandate); 262 (Supreme Court denied petition for writ of certiorari).  Thereafter, the parties attended two private mediations before David Rotman.  The mediations involved many hotly contested issues and lasted two entire days (May 16, 2018 and November 30, 2018) before a settlement was ultimately reached.  After several rounds of motions, supplemental briefs, and hearings, the Court granted preliminary approval on November 2, 2020.

## 3. SUMMARY OF THE SETTLEMENT TERMS

The settlement includes the payment of an aggregate sum of five million three hundred thousand U.S. dollars ($5,300,000.00) (hereinafter "Gross Settlement Fund").  This is an all-in, automatic payment, non-reversionary settlement (*i.e.* no "Claim Forms").  Pursuant to the Settlement Agreement, the following sums shall be deducted from the Gross Settlement Fund to arrive at a Net Settlement Fund to be ***automatically*** distributed to the approximately 4,145 Settlement Class Members who did not opt out of the settlement ("Participating Settlement Class Member"):  (a) attorneys' fees of 35% of the Gross Settlement Fund and costs not to exceed $250,000 to Class Counsel; (b) a service award to be paid to each of the Plaintiffs in the amount of $7,500, for a total Service Award payment of $37,500; (c) the costs of settlement administration will also be paid from the Gross Settlement Fund in the amount of $23,000;

(d) $75,000 to the California Labor & Workforce Development Agency for their share of the portion of the Gross Settlement Fund allocated as penalties pursuant to the Private Attorney General Act of 2004; and (e) the employees' share of payroll taxes on the 33.33% of each Participating Settlement Class Member's Gross Individual Settlement Payment allocated as wages.  The Net Settlement Fund that will be paid automatically to all Participating Settlement Class Members will be distributed pro rata based upon the number of pay periods worked during the Applicable Period.

**4.      THE SETTLEMENT ADMINISTRATION PROCESS**

The court-appointed Claims Administrator, Phoenix Class Action Administration Solutions ("Phoenix"), took all necessary steps to effectuate the settlement administration process as set forth in the Settlement Agreement.   On November 24, 2020, Defendants provided the Settlement Class Members' data to Phoenix.  Lee Decl. at ¶ 5, ECF No. 325-2.  Phoenix used the National Change of Address database through the United States Postal Service to obtain updated addresses for the Settlement Class Members.  *Id*. at ¶ 6.  On December 7, 2020, Phoenix mailed the Notice of Class Action Settlement ("Notices") to 4,163 Settlement Class Members.  *Id*. at ¶ 7.  Phoenix took all efforts to skip trace and re-mail all returned Notices.  *Id*. at ¶ 9.  Settlement Class Members had until January 6, 2021 to respond to the Settlement.  *Id*. at ¶ 7.  Importantly, Phoenix did not receive any objections to the settlement as a whole or to any of the requested amounts of attorneys' fees, costs, settlement administration costs or enhancement awards.  *Id*. at ¶ 11.  Each unique Notice contained the individual Settlement Class Member's total number of pay periods during the time periods.  Lee Decl. at Ex. 1, ECF No. 325-2.  Participating Settlement Class Members are estimated to receive on average $744.14 from this Settlement, with the highest Gross Individual Settlement Payment at $7,111.80.  *Id*. ¶ 14.

**5.      FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT SHOULD BE GRANTED**

Fed. R. Civ. P. 23(e) requires a two-step process in considering whether to approve the settlement of a class action.  First, a court must make a preliminary determination whether the proposed settlement "is fundamentally fair, adequate, and reasonable."  *Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)).  The second step, which occurs after preliminary approval, notification to class members, and the compilation of any

3

_____
PLAINTIFFS' <u>UNOPPOSED</u> MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

objections by class members, a court determines whether final approval should be granted.

In evaluating the fairness, a court must consider "the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012). A court is to consider and evaluate several factors as part of its assessment of a proposed settlement. The following factors are among those that may be considered during both the preliminary and final approval processes: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5) the experience and view of counsel; (6) any evidence of collusion between the parties; and (7) the reaction of the class members to the proposed settlement. *See In re Mego Fin. Sec. Litig.*, 213 F.3d 454, 458-60 (9th Cir. 2000). Each factor does not necessarily apply to every settlement and other factors may be considered. Courts often consider whether the settlement is the product of arms-length negotiations. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"). As recently amended, Fed. R. Civ. P. 23(e) provides further guidance as to the requisite considerations in evaluating whether a proposed settlement is fair, reasonable and adequate. A court must consider whether: (a) the class representatives and counsel have adequately represented the class; (b) the proposal was negotiated at arms' length; (c) the relief provided for the class is adequate; and (d) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

## A. The Strength of Plaintiffs' Case and Associated Risks Favor Final Approval.

Plaintiffs have been vigorously involved in a protracted and hard fought class certification battle since the beginning of this case. Their Motion for Class Certification was initially filed with the Court on October 4, 2013. It was fiercely contested by Defendants for almost two years. This Court essentially certified a meal break class which Defendants appealed all the way to the United States Supreme Court. Ultimately, the strength of Plaintiffs' claims prevailed and the case remained certified. While Plaintiffs continue to believe that they have a reasonable likelihood of success at remaining certified and prevailing at trial, Defendants have continued to argue that there are risk associated with proceeding further with this litigation. For example, Defendants contend that they changed their policies in 2012 so there would be no liability for violations after 2012. Moreover, Defendants contend that

there are merits-based issues that will arise during the merits phase of discovery that could lead to this Court decertifying the case. According to Defendants, decertification will markedly impair the ability of any class member to obtain relief of any kind and would be forced at that point to litigate on his or her own. This demonstrates the value of the classwide relief in this settlement.

Nevertheless, Plaintiffs recognize the risk of potentially being decertified with the case proceeding on an individual basis after litigating for eight years. And, a settlement of this considerable monetary amount is preferable to the multi-tiered risks associated with proceeding with trial and a likely appeal, and is in the class members' best interests. If Plaintiffs were to have rejected this $5,300,000 common fund settlement, the case would have to survive decertification and proceed through trial. As with all trials, there is considerable risk for both sides, and that risk is amplified for both sides when the case involves thousands of class members.

Were Plaintiff to succeed in prevailing at a class-action jury trial, the resulting money judgment would likely be subject to many rounds of appeals, where, again, both sides would face considerable risk – for Plaintiffs their hard-fought jury verdict could be overturned, as could a favorable ruling for the defense. In addition, money judgments must be bonded, and interest accrues during the pendency of appeal. The Class Members still would not have yet received any money during the appeal process and Class Counsel could spend years defending its judgment in possibly several rounds of appeal.

While there are considerable risks associated with a class action trial and resulting appeals, Class Counsel has taken class action cases all the way to the jury trial phase, and stood (and stand) ready and willing to do so again in this case. That said, when presented with a settlement that will benefit the entire class in the very near future, the risk of later potentially recovering nothing, many years later, must be candidly recognized and evaluated. For those reasons, Class Counsel is confident this proposed settlement is in the best interest of the Class.

**B.**     **The Settlement Resulted from Arm's Length Negotiations Based Upon Extensive Investigation and Discovery.**

The parties have actively litigated this case since it was initially filed. There have been ongoing investigations, highly contested class certification, a Ninth Circuit appeal, a petition for writ of certiorari to the United States Supreme Court, and the exchange of discovery, depositions, and almost 20,000

5

pages of documents and time punches.  Furthermore, the parties engaged in several arm's length mediation sessions with countless hours of post-mediation settlement discussions with David Rotman, a well respected, experienced, private mediator who specializes in resolving wage-and-hour class actions.

During the mediation, the parties exchanged information and discussed all aspects of the case including the risks and delays of further litigation, the risks to both parties, the evidence produced and analyzed, and the possibility of a trial and resulting appeals, among other things.  During all settlement discussions, the parties conducted their negotiations at arms' length in an adversarial posture.  Arriving at a settlement that was acceptable to both parties was not easy because both sides felt very strongly about their ability to prevail on the merits at trial.

The parties heavily litigated the case for close to eight years up until the settlement was reached. After much consideration by the parties as to their respective positions and risks in continued litigation, the parties agreed that this case was well suited for settlement given the costs and risks both sides faced in further, very protracted litigation.  The proposed Settlement takes into account the strengths and weaknesses of each side's position and the uncertainty of how the case might have concluded at trial. The proposed Settlement is based on this incredibly large volume of facts, evidence, and investigation.

## C.  <u>The Settlement Amount is Fair, Reasonable, and Adequate.</u>

"Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010); *see, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) ("[W]e put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." (internal quotation marks omitted)).  Since the parties reached this settlement through arms-length negotiations, the settlement amount is presumed to be reasonable.  Although the initial presumption of fairness is satisfied, the Court must still "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interests of those who claims will be extinguished." *Kullar v. Foot Locker Retail, Inc.*, 168 Cal.App.4th 116, 130 (2008).  In determining whether a proposed class action settlement is fundamentally fair, adequate, and reasonable, courts consider any of the following factors, if applicable:  "the strength of plaintiffs' case; the risk,

expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "In some cases, one factor alone may prove determinative in finding sufficient grounds for court approval." *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *3 (N.D. Cal. Oct. 22, 2008) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)). With respect to each of Plaintiffs' claims, Plaintiffs' counsel has estimated the total exposure—as explained in Plaintiffs' counsel's accompanying declaration—as follows for each claim:

| CLAIM | REALISTIC EXPOSURE | MAXIMUM EXPOSURE |
|---|---|---|
| **Meal Break Claim** | $3,673,557.66 | $17,459,062.89 |
| **Rest Break Claim** | $373,405.40 | $1,867,027.02 |
| **Off-the-Clock Claim** | $2,131,032.68 | $4,287,740.45 |
| **Derivative Wage Statement Claim** | $4,923,888.89 | $22,157,500 |
| **Derivative Waiting Time Claim** | $2,395,162.80 | $4,790,325.60 |
| **TOTAL CLASS CALIMS** | **$13,497,047.43** | **$50,561,655.96** |

Accordingly, Plaintiffs estimate the realistic total potential class recovery at trial to be approximately $13,497,047.43. Under the settlement currently proposed of $5,300,000.00, Settlement Class Members will recover approximately 39% of the realistic exposure. Courts regularly approve settlements where the recovery is a fraction of the potential realistic recovery. *See, e.g.*, *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco* (9th Cir. 1982) 688 F.2d 615, 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."); *In re Mego Fin. Corp. Sec. Litig.* (9th Cir. 2000) 213 F.3d 454, 459 as amended (June 19, 2000) (approving a settlement roughly one-sixth of the potential recovery). "Estimates of a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Toys*

*R Us-Delaware, Inc. -- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014); *see also Rodriguez*, 563 F.3d at 965 ("In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to the present value.").  The settlement amount is a good outcome for the class because it provides substantial recovery in comparison to the realistic potential exposure, accounting for all of the claims the parties seek to release, while avoiding any of the risks and delays of further litigation.

Further, the $5,300,000.00 Gross Settlement Amount was the result of arms' length negotiations with an experienced mediator.  This result is remarkable in light of the potential risk of decertification and with liability uncertain.  The Gross Settlement Amount represents adequate consideration when viewed in light of the costs, risks and delays associated with further litigation in this long-pending matter.  Those risks include potential decertification of the Class as well as not prevailing at trial or in a potential appeal from a favorable judgment entered after trial.  Although the recommendations of Class Counsel are not conclusive, the Court can properly take the recommendations of counsel into account, particularly where, as here, Class Counsel is competent, has experience with this type of litigation, and significant discovery and investigation has been completed.  2 William B. Rubenstein, Newberg on Class Actions §11.47 (5th ed. 2018).  These considerations demonstrate that the Settlement as a whole is fair, reasonable, in the best interest of the Class Members, and the Court should grant final approval.

**D.** **Plaintiffs and Class Counsel Have Adequately Represented the Class.**

Plaintiffs and Plaintiffs' Counsel have adequately represented the Class throughout the course of this almost 10-year litigation.  The substantial progress of this action since the time it was filed provides support for the adequacy of representation.  "The extent of the discovery conducted to date and the stage of the litigation are both indicators of [Class] Counsel's familiarity with the case and of Plaintiffs having enough information to make informed decisions."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008); *see also Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.").

This case has been actively and extensively litigated.  There have been ongoing investigations, highly contested class certification, a Ninth Circuit appeal, a petition for writ of certiorari to the United States Supreme Court, and the exchange of discovery, depositions, and close to 20,000 pages of documents and time punches.  The parties therefore had sufficient information to make informed decisions about this action and their settlement positions at the settlement negotiation.  Accordingly, this factor supports final approval.

## 6.    THE SERVICE AWARD TO PLAINTIFFS IS FAIR AND REASONABLE

Plaintiffs seek final approval of Service Awards of $7,500 each for putting the interests of the Class ahead of their own, for investing considerable time and effort in assisting in the prosecution of this action, for assuming the risk of being branded "litigious" by future prospective employers, and for providing Defendants general releases that are much broader than the releases of absent Class Members.

When considering requests for incentive awards, courts consider five principal factors:  (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.  *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995) (approving $50,000 participation award to a single plaintiff).

Enhancement payments to named plaintiffs are frequently awarded to recognize their time and efforts, and the risks they undertake on behalf of a class.  Courts routinely award service payments, which are intended to advance public policy by encouraging individuals to come forward and perform their civic duty in protecting the rights of the class, as well as to compensate class representatives for their time, effort and inconvenience.  *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001), *quoting In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.").  In *Ingram*, the Court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class.  *Id* at 694; *see also Van Vranken*, 901 F. Supp. at 300

1   (N.D. Cal. 1995) (approving $50,000 participation award for the representative Plaintiff).   Such
2   enhancements are particularly appropriate where Plaintiffs remain "fully involved and expended
3   considerable time and energy during the course of the litigation." *Razilov v. Nationwide Mut. Ins. Co.,*
4   No. 01-CV-1466-BR, 2006 WL 3312024, at *4 (D. Or. Nov. 13, 2006); *See also Garner v. State Farm*
5   *Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, *17 (Apr. 22, 2010) (approving a
6   $20,000 award).   Here, Plaintiffs spearheaded this lawsuit and committed time to the litigation by
7   reviewing pleadings, communicating with Class Counsel, and sitting for deposition.

8       The Service Award is further justified because Plaintiffs have agreed to the full general release
9   of their claims against Defendants, which is much broader than the release that applies to the class.   *See*
10   Szeto Decl., Ex. 1, ECF No. 325-1.   Broad releases of the named plaintiff's claims that go beyond what
11   is required of the class members are taken into account when considering the reasonableness of the
12   incentive award.   *See Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*, No. 12-CV-05259-JST,
13   2014 WL 2967474, at *3 (N.D. Cal. June 30, 2014); *Holman v. Experian Info. Solutions, Inc.*, No. 11-
14   CV-0180 CW (DMR), 2014 WL 7186207, at *6 (N.D. Cal. Dec. 12, 2014) (finding that the plaintiff is
15   entitled to an incentive award "for his service to the class and for his broad release of all claims, known
16   or unknown, against [the defendant]"); *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST RZX, 2013
17   WL 3013867, at *7 (C.D. Cal. June 13, 2013) (approving incentive award because the plaintiff executed
18   "a general release that will resolve her individual claims, as well the class claims").

19       Notably, the award is also well within the acceptable range awarded in other cases.   *See, e .g.,*
20   *Van Vranken v. Atlantic Richfield*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (holding that incentive
21   awards of $50,000 to each named plaintiff was fair and reasonable); *Singer v. Becton Dickinson and Co.*,
22   08-cv-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) (finding award of $25,000
23   reasonable); *Smith v. CRST Van Expedited, Inc.,* No. 10-CV-1116- IEG WMC, 2013 WL 163293, at *6
24   (S.D. Cal. Jan. 14, 2013) (holding that incentive awards of $15,000 was "well within the range awarded
25   in similar cases"); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913–14 (S.D. Ohio 2001) (approving an
26   award of $50,000).   Without the effort of Plaintiffs, this case would not have been filed and a classwide
27   settlement would not have been achieved.   The proposed $7,500 Service Award to each of the Plaintiffs
28   is therefore appropriate and justified as part of the overall settlement.

7.      **ATTORNEYS' FEES AND COSTS**

Plaintiffs brought this class action to secure important workplace protections for current and former employees of the Defendants.  Despite the risk and uncertainty associated with litigating the claims, Plaintiffs secured a $5,300,000.00 non-reversionary settlement that will provide monetary relief to approximately 4,145 workers.  Having obtained valuable relief for the Settlement Class, Plaintiffs seeks an award of attorneys' fees in the amount of 35% of the total non-reversionary settlement fund.  The requested award is fair, reasonable, and appropriate in light of the favorable results obtained by Class Counsel, the complexities of the litigation, and the contingent risk assumed by Class Counsel.  In addition to attorneys' fees, Plaintiffs also seek reimbursement for Class Counsel's litigation costs. These costs and expenses were incurred in connection with the prosecution and settlement of the action and are thus reimbursable.  For reasons set forth in greater detail below, the agreed-upon attorneys' fees and costs requests are fair and reasonable and should be approved.

Class Counsel requests the agreed upon fee of 35%, or $1,855,000.00, in attorneys' fees and requests reimbursement of costs in the total amount of $210,164.68, (Parris Law Firm claiming $102,387.22, The Downey Law Firm claiming $62,099.55, and Stuart R. Chandler APC claiming $45,677.91) well under the agreed upon cap of $250,000.00.  The Declarations of Kitty K. Szeto, Phillip A. Downey, and Stuart R. Chandler filed concurrently with this motion will support the award of the attorneys' fees and costs.  These amounts are uncontested by Defendants.

An award of attorneys' fees as a percentage of a fund established by a settlement is well-established in Ninth Circuit jurisprudence; the Ninth Circuit's benchmark for such common fund awards is 25% of the common fund.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Pacific Enterprises Security Litigation*, 47 F.3d 373, 379 (9th Cir. 1995); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989).  However, "[s]mall cases tend to have fees above the 25% benchmark in California." *Miller v. CEVA Logistics USA, Inc.*, 2015 WL 4730176 *8 (E.D.Cal. 2015) citing *Craft v. County of San Bernardino,* 624 F.Supp.2d 1113, 1127 (C.D.Cal.2008) (holding that attorneys' fees for mega fund cases are typically under the 25% benchmark and cases below $10 million are often more than

the 25% benchmark).  "California district courts usually award attorneys' fees in the range of 30–40% in wage and hour class actions that result in the recovery of a common fund under $10 million." *Id*. citing *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 491–92 (E.D.Cal.2010) (citing to five recent wage and hour cases where federal judges approved fee awards ranging from 30% to 33% and approving percentage of the fund award of 33% to class counsel); *Singer,* 2010 WL 2196104, at *8 (approving attorneys' fees of 33.33% of the common fund and holding this award is similar to awards in three other wage and hour class actions where fees ranged between 33.3% and 40%); *Romero v. Producers Dairy Foods, Inc.,* 2007 WL 3492841, at *1–4 (E.D.Cal.2007) (approving award of 33% of common fund).

This "common fund" doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs out of the fund, has long been a staple of class action settlements in federal courts generally: "a lawyer who recovers a common fund for the benefit of persons other than his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970). Federal courts, and particularly the Ninth Circuit, have endorsed the percentage method as a fair way to calculate a reasonable fee when contingency fee litigation has produced a common fund.  *See*, *e.g.*, *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (under common fund doctrine, "reasonable fee is based on a percentage of the fund bestowed on the class"); *Six Mexican Workers*, 904 F.2d at 1311 (common fund fee is generally "calculated as a percentage of the recovery"); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature.  *See*, *e.g.*, *Dolgow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968); *In re Interpublic Sec. Litig.*, No. Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *30-31 (S.D.N.Y. Oct. 27, 2004) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable fee – set by the court – to be taken from the fund.'") (citation omitted).  The "[d]etermination of 'reasonableness' is within the discretion of the district court."  *Id* at *31.

1     The Ninth Circuit has made clear that when a fund is established which makes a pool of money

2     available to a class of persons, the attorneys' fees for Class Counsel are properly calculated as a

3     percentage of the entire fund. *See Williams v. MGM-Pathe Communications*, 129 F.3d 1026, 1026-27

4     (9th Cir. 1997). In *Boeing*, the Court concluded that the attorneys for a successful class may recover a

5     fee based on the entire common fund created for the class, even if some class members make no claims

6     against the fund so that money remains in it that otherwise would be returned to the defendants. *Boeing*,

7     444 U.S. at 480-81; *see also Six Mexican Workers*, 904 F.2d at 1311; *Masters v. Wilhelmina Model*

8     *Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2006); *Waters v. International Precious Metals Corp.*, 190 F.3d

9     1291, 1295-96 (11th Cir. 1999); *Glass v. UBS Financial Services, Inc.*, 2007 WL 221862, *16 (N.D.

10    Cal. Jan. 26, 2007); *Young v. Polo Retail, LLC*, 2007 WL 951821, *8 (N.D. Cal. 2007).

11    **A.     AN UPWARD ADJUSTMENT OF THE NINTH CIRCUIT'S BENCHMARK IS APPROPRIATE**

12    Although the Ninth Circuit established 25% as a "benchmark" for attorneys' fee awards that are

13    established out of a common fund, where, as here, circumstances merit it, "[t]hat percentage amount can

14    then be adjusted upward or downward to account for any unusual circumstances involved in [the] case."

15    *Paul,* 886 F.2d at 272. Given the results achieved and the difficulties attendant in litigating this case, an

16    upward adjustment is warranted.

17    In *Vizcaino*, the Ninth Circuit laid out the factors to be considered in adjusting a fee award from

18    the "benchmark." *See Vizcaino*, 290 F.3d at 1047-1050. These are: (i) the size of the fund (and thus the

19    resulting size of the percentage fee award); the quality of the results obtained by Plaintiff's counsel; (ii)

20    the risk taken on by Plaintiff's counsel in accepting and pursuing the case with no guarantee of victory

21    or being paid for their time and effort; (iii) incidental or non-monetary benefits conferred by the

22    settlement; (iv) the effort expended by Plaintiff's counsel; (v) Plaintiff's counsel's reasonable

23    expectations based on the circumstances of the case and fee awards in other cases; and, to a certain

24    extent, the percentage fee award originally contracted for between Plaintiff and Plaintiff's counsel. *Id*

25    A consideration of the *Vizcaino* factors shows that Plaintiffs' request for 35% of the gross settlement is

26    exceedingly reasonable.

27        **1.     The Risks Assumed by Class Counsel Favor the Fee Award Sought**

28    Class Counsel assumed a very real risk in taking on this case. Plaintiffs took on several well-

13

established employers defended by national law firms with far greater resources than Class Counsel. Class Counsel took the case on a contingency basis, and invested time, effort, and money with no guarantee of any recovery.  In cases where the "recovery is far from certain," as here, an award of more than 25% of the common fund as attorneys' fees is appropriate.  *In re* Washington *Public Power*, 19 F.3d at 1302; *see also Vizcaino*, 290 F.3d at 1048.

Class Counsel proceeded knowing there was a chance that Defendants would prevail and that even if Plaintiffs prevailed, there was a chance that the case would take years to bring to trial and would not be resolved without an appeal.  The risk of no recovery in complex class actions of this type is very real.  There are numerous cases where Plaintiffs' counsel in contingent-fee cases such as this one, after devoting thousands of hours and advancing significant sums in out-of-pocket expenditures, received no compensation whatsoever.  *See, e.g.*, *Armstrong v. Whirlpool Corp.*, 2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007) (denying class certification of racial harassment claims); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The risk of maintaining class action status throughout the trial" was an important favor in approving the class action settlement.).  From the outset Defendant has adamantly denied any liability and continues to do so today.

This was a complicated and uncertain case in which Defendants vehemently contested liability. This action has been pending since 2012.  There have been numerous hotly-contested motions, appeals, and related disputes that have required substantial efforts by Plaintiffs' counsel.  For almost eight (8) years, Class Counsel has made a significant effort on behalf of the Class, including taking and defending depositions without assurance of any compensation.  The risks of the case and litigation obstacles were great, but Class Counsel, nevertheless, achieved an extremely successful result, and thus, this *Vizcaino* factor militates in favor of the fee award sought by Class Counsel.

### 2.      Class Counsel Obtained an Excellent Result for the Class

The result obtained by Class Counsel here is remarkable in light of the current status of the case. Class Counsel got the case certified and kept it certified for the last six years over Defendants' unsuccessful appellate challenges.  According to Defendants, they changed their policies in 2012 so there would be no liability for violations after 2012.  Moreover, Defendants contend that there are merits-based issues that will arise during the merits phase of discovery that could lead to this Court

14

_____
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

decertifying the case.  According to Defendants, decertification will markedly impair the ability of any class member to obtain relief of any kind and would be forced at that point to litigate on his or her own. This demonstrates the value of the classwide relief in this settlement.

Despite Defendants' contentions, Class Counsel nevertheless obtained a settlement which results in a recovery of 39% of the potential damages Class Counsel believes could have been recovered at trial. Class Members will automatically receive an individual payout equating to roughly $744.14 per class member on average, with the highest Settlement Payment at $7,111.80.  Lee Decl. ⁋ 14, ECF No. 325-2. Class Counsel believes this is remarkable in light of the potential risk of decertification and with liability uncertain.  As a result of the settlement, Class Members will be provided with an automatic recovery. Thus, this *Vizcaino* factor greatly favors Class Counsel's fee request.

The fairness of this fee request is further supported by the high quality of Class Counsel's legal representation as described above and in the declarations.  Class Counsel's highly-informed, diligent, and efficient prosecution of this matter positioned Plaintiffs to successfully settle this case, affording redress to the entire proposed settlement class, and avoided the inevitable expense and risk attendant with protracted litigation.

The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work.  *See In re KeySpan Corp. Sec. Litig.*, No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068, at *35 (E.D.N.Y. Aug. 25, 2005).  Here, Defendants are represented by experienced and skilled lawyers from multiple law firms with a deserved reputation for vigorous advocacy in the defense of complex employment class action cases.  The ability of Class Counsel to obtain this Settlement in the face of such formidable legal opposition confirms the quality of Class Counsel's representation. Accordingly, this factor strongly supports the requested fee.

### 3.    Class Counsel's Award is Relatively Modest

Here, Class Counsel seeks 35% of the value of the settlement fund of $5,300,000.  Most Ninth Circuit cases consider the size of the settlement fund for purposes of evaluating fee requests, in relation to how large it renders the resulting fee award.  *See, e.g., In re Washington Public Power*, 19 F.3d at 1297 ("the percentage of an award generally decreases as the amount of the fund increases").  The fee request is less than the Net Settlement Amount that will be paid to the Class.  Accordingly, the fee

15

1   request here is in line with Ninth Circuit precedent.

2          California courts have also routinely awarded attorneys' fees of 35% of a common fund in wage-

3   and-hour class action cases.  See*, e.g., Antonio Barocio, et al. v. Monterey Gourmet Foods, Inc. et al*

4   (2016) Monterey Superior Court Case No. M121666 (approving $2,850,000 settlement and 35%

5   attorneys' fee request in wage-and-hour class action); *Jesus Negrete et al. v. Pacific Fresh Seafood*

6   *Company, et al.* (2016) Sacramento Superior Court Case No. 34-2013-00149593 (approving $1,300,000

7   settlement and 35% attorneys' fee request in wage-and-hour class action); *Cruz, et al. v. Petaluma*

8   *Acquisition, LLC, et al* (2015) Sonoma County Superior Court Case No. SCV251977 (approving

9   $3,000,000 settlement and 35% attorneys' fee request in a similar wage-and-hour class action); *Anthony*

10  *Russell v. Hilmar Cheese Company, Inc.* (2017) Merced County Superior Court Case No. CVM 015858

11  (approving $5,000,000 settlement and 35% attorneys' fee request in a similar wage-and-hour class action);

12  *Juan Martinez et al v. Mann Packing* (2018) Monterey County Superior Court Case No. M116476

13  (approving $920,000 settlement and 35% attorneys' fee request in a similar wage-and-hour class action);

14  *De Jesus v. Frozsun, Inc.* (2018) Santa Barbara Superior Court Case No. 1416723 (approving $5,000,000

15  settlement and 35% attorneys' fee request in similar wage-and-hour class action).  The California Court of

16  Appeal also affirmed a trial court's attorneys' fee award of **37.5%** of the common fund.   *Roos v.*

17  *Honeywell International, Inc.* (2015) 241 Cal.App.4th 1472.  That is because when litigation results in a

18  monetary fund for the benefit of a class, such as in this case, ***use of that percentage method is***

19  ***appropriate***.  *Lealao v. Beneficial Cal., Inc.*, 82 Cal.App.4th 19, 32 (2000).  "Allowing fees to be paid

20  from the fund is justified by the notion that the class would be unjustly enriched if it were allowed to

21  benefit from the litigation without sharing in its costs."  *Roos*, *supra*, 241 Cal.App.4th at 1490 (citing

22  *Boeing Co. v. Van Gemert* (1980) 444 U.S. 472, 478).

23          The requested contingency fee percentage (35%) is well within the range for contingency fee

24  contracts found in the marketplace, and in-line with attorneys' fees awarded in the numerous California

25  wage-and-hour class actions cited above.  "Notably, while the California Supreme Court recognized the

26  Ninth Circuit's 25 percent benchmark for percentage awards in common fund cases, it did not adopt such a

27  benchmark for California cases."  *Emmons v. Quest Diagnostics Clinical Lab.*, No. 1:13-cv-00474-DAD-

28  BAM, 2017 WL 749018 at *7 (E.D. Cal. 2017).  "The California Supreme Court suggested considerations

of the risks and potential value of the litigation, the contingency, novelty, and difficulty of the litigation, the skill shown by counsel, and a lodestar cross-check were all appropriate means of discerning an appropriate percentage award in a common fund case." *Id.* Here, the hard-fought efforts of Class Counsel resulted in a settlement of $5,300,000.00 that vindicated the rights of over 4,100 workers.  *See, e.g., Emmons, supra* (the Court awarded attorneys' fees of one-third of the common fund where "Plaintiffs' attorneys also successfully vindicated the rights of over two thousand workers and secured more than $2 million in relief.")  Thus, Class Counsel's efforts have resulted in a substantial benefit for Class Members.

This case was litigated on a contingent basis with all of the risk factors inherent in such an uncertain undertaking.  Had Class Counsel not been successful, the thousands of hours devoted to this case would have been for naught, and would not have produced any fee or reimbursement of costs.  This substantial risk is the reason that the courts approve the use of the percentage method when a common fund is created by the efforts of Class Counsel, and further underscores the reasonableness of Class Counsel's fee request.  Indeed, the percentage method often offsets tremendous losses contingency agreement attorneys suffer in other cases. *See, e.g., Emmons, supra* (the Court awarded attorneys' fees of one-third of the common fund where "this litigation was pursued purely on a contingency-fee basis.")  For the foregoing reasons, Class Counsel's request for the agreed upon percentage fee of 35% is reasonable and should be approved.

### 4.    Class Counsel Obtained Swift and Efficient Relief for the Class

While the *Vizcaino* court considered the protracted litigation in that case, it stressed:  "We do not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief."  *Vizcaino*, 290 F.3d at 1050, n. 5.  In fact, the Court acknowledged that using time expended as a proxy for the effort expended on or success of a case "creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee," and that such an evaluation "does not reward early settlement." *Id.*  Here, Class Counsel achieved a substantial benefit for class members in a very timely fashion, providing class members with substantial and certain relief much sooner than if this matter had been extensively litigated to trial.  There is no doubt that either side would have appealed the trial verdict.

Moreover, Class Counsel did not sacrifice due diligence in achieving an efficient resolution of this case. As discussed above, Class Counsel litigated this case heavily for almost eight years, took and defended depositions, and reviewed almost 20,000 thousand pages of relevant documents and time punches produced by Defendants. In addition, Class Counsel spoke with numerous Class Members concerning their claims. Hence, Class Counsel's request for fees is reasonable here.

### 5.     The Skill and Reputation of Class Counsel Justifies the Fee Requested

The three reputable law firms that filed this action with the Court on behalf of the Plaintiffs and Class Members are Parris Law Firm, Stuart R. Chandler APC, and The Downey Law Firm, LLC. All three firms have extensive experience in litigating class actions and other large-scale complex litigation cases. Moreover, all three firms have successfully litigated other class actions in federal and state courts. As shown in the accompanying declaration, Class Counsel are recognized leaders in employment class actions, and put the full use of their skill and experience to work in the service of Plaintiff and the Class in this case. As a result, these factors favor the fee award sought by Class Counsel. The Parris Law Firm has dedicated itself to this case. Class Counsel are nationally-recognized trial and class-action attorneys and employed their knowledge, skill, and experience in bringing to conclusion a very favorable result in a unique, hard-fought litigation. The goal achieved is the extraordinary result of obtaining $5,300,000.00 for the Class. It is the opinion of experienced Counsel that this significant settlement is fair, reasonable and adequate. Class counsel respectfully requests an award of attorneys' fees equal to 35% of that amount.

### 6.     Reasonable Expectations of Counsel and Fees in Similar Cases

Class Counsel knew this case would be an uphill battle yet still took on Defendants on a contingency basis. And they were right. Defendants fought this case for eight years, went up and down the United States Supreme Court, and spared no expense on discovery and fighting every issue in this case. Most class action cases are not actively litigated for this long. This is likely the longest running case for both Class Counsel and Defendants' Counsel, and likely this Court. Accordingly, there was a reasonable expectation based on the circumstances of the case and given the amount of work and hours Class Counsel devoted to this case that warrants an upward adjustment of the 25% benchmark to 35% of the Gross Settlement Amount.

1    This adjusted fee request is commensurate with federal court -- and, in particular, Ninth Circuit -
2 - precedent:  case surveys reflect that awards of this amount, or more, are common.  Newberg, Newberg
3 on Class Actions, 4th Ed., 2002 §14.6; *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 297-298
4 (N.D.Cal. 1995) (citing cases awarding an award of 33%).  Indeed, many courts have approved common
5 fund fee awards of 33% to 45% of the settlement fund.  *See, e.g., In re Pacific Enterprises*, 47 F.3d at
6 379 (affirming an award equal to 33% of the common fund); *In re Ampicillin Antitrust Litigation*, 526 F.
7 Supp. 494 (D.D.C. 1981) (45% of settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420
8 (S.D.N.Y. 1981) (36% of settlement fund); *In re Buspirone Patent & Antitrust Litig.*, MDL No. 1413,
9 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003) (multiplier was more than eight times counsel's
10 lodestar) ("BuSpar"); *North Shore Hematology-Oncology Assoc., P.C. v. Bristol-Myers Squibb Co.*, No.
11 04 Civ. 248 (D.D.C. Nov. 30, 2004), (multiplier was well over eight times counsel's lodestar); *In re
12 Relafen Antitrust Litig.*, 1:01cv12239-WGY, (Order and Final Judgment dated Apr 9, 2004, D. Mass.)
13 (multiplier of 4.88 awarded); *In re Cardizem CD Antitrust Litig.*, No. 99-73259 (E.D. Mich. Nov. 25,
14 2002) (approving multiplier of approximately 3.7); *Nichols v. Smithkline Beecham Corp.*, No. Civ. A.
15 00-6222, 2005 WL 950616, at *24 (E.D. Pa. Apr. 22, 2005) (approving multiplier of 3.15); *In re
16 Linerboard Antitrust Litigation*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at * 49 (E.D. Pa. June 2,
17 2004) (approving 2.66 multiplier).  Accordingly, Class Counsel's 35% fee request is in line with the
18 customary fees awarded in similar cases given the amount of work Class Counsel devoted these eight
19 years on behalf of the Class.

20    **B.    ATTORNEYS' FEES ARE ALSO APPROPRIATE UNDER THE LODESTAR METHOD**

21    Class Counsel's request for attorneys' fees of $1,855,000.00 is also reasonable under a lodestar
22 analysis.  "Under the lodestar method, the court multiplies a reasonable number of hours by a reasonable
23 hourly rate."  *Fischel*, 307 F.3d at 1006.  As with the percentage method, "a court can adjust the lodestar
24 upward or downward based on certain factors."  *Id.* at 1007.  The *Vizcaino* Court found that 83 percent
25 of courts in the common fund cases it surveyed assessed a multiplier to class counsel's lodestar of
26 between 1.0 and 4.0.  *Vizcaino*, 290 F.3d at 1051, n. 6.  The Ninth Circuit regards both the percentage
27 and lodestar methods as acceptable ways to calculate fees for class counsel in class action settlements.
28 *Vizcaino*, 290 F.3d at 1047; *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1006-1008

(9th Cir. 2002). Thus, while some courts use the lodestar to "check" the reasonableness of a fee request, an examination of Class Counsel's lodestar is unnecessary here. *Vizcaino*, 290 F.3d at 1047. But even if this Court were to apply a lodestar cross-check on the percentage fee award sought, 35% of the settlement is an appropriate fee award in this case.

Class Counsel provided a chart detailing the time worked on the case. This chart shows that the fee award requested is reasonable under the lodestar check as well as the percentage method. According to the chart, the Parris Firm expended a total of 2,637.67 hours on this case, The Downey Law Firm expended a total of 721.2 hours on this case, and Stuart R. Chandler APC expended at total of 872.9 hours on this case. *See* Szeto Decl. at Ex. 2, Downey Decl. at Ex. B and Chandler Decl. at Ex. 2. This equates to a lodestar of $2,224,065 without any multiplier based on hourly rates that the Eastern District has previously found to be reasonable. *Id*. For example, in *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 43, 452-53 (E.D. Cal. 2013), the Eastern District found that an hourly rate of $720 was reasonable for an attorney with 21 years of experience in the Eastern District of California. Rex Parris of the Parris Law Firm has well over 40 years of experience, as does Stuart Chandler of Stuart R. Chandler APC, and Phillip Downey of The Downey Law Firm has over 21 years of experience. Class Counsel's lodestar is well below the fee request of $1,855,000. Class Counsel obtained this settlement efficiently, affording redress to the Class Members swiftly, without forcing them to wait through protracted, and risky, litigation. Class Counsel was able to settle this case for a substantial amount under the circumstances, especially considering the difficulty of the case and Defendant's defenses. Class Counsel includes experienced class action attorneys. They used their full abilities to achieve the successful result here. As shown above, the award requested here is fully in line with awards and multipliers employed in much larger cases, where the fees requested are many times the fees requested here.

## CONCLUSION

Plaintiffs respectfully request that the Court grant final approval of this Settlement.

Date: February 5, 2021

**PARRIS LAW FIRM**

By:      /s/ *Kitty K. Szeto*

Kitty K. Szeto, Esq.
Attorney for Plaintiffs and
Settlement Class

PLAINTIFFS' <u>UNOPPOSED</u> MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT