1

2

3

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Maria Del Carmen Pena, et al.,                     No. 2:13-cv-01282-KJM-AC

12                    Plaintiffs,                        ORDER

13        v.

14   Taylor Farms Pacific, Inc., et al.,

15                    Defendants.

16

17        The plaintiffs move for final approval of their agreement to settle this wage and hour class

18   action.  *See* Mot., ECF No. 325.  The motion is unopposed.  *See* Not. Non-Opp'n, ECF Nos. 326,

19   329.  The court held a final fairness hearing on March 4, 2021 by videoconference.  Alexander

20   Wheeler, Philip Downey and Stuart Chandler appeared for the plaintiffs and the class.  Matthew

21   Sessions appeared for defendant Taylor Farms Pacific, Inc.  Justin Donner appeared for defendant

22   Abel Mendoza, Inc.  Gregory Iskander appeared for defendant Manpower, Inc.  Ana Toledo

23   appeared for defendant Quality Farm Labor, Inc.

24        As explained in this order, the **motion for final approval is granted**, and the parties'

25   stipulation for altering funding and disbursement deadlines is **approved**.

26   **I.      BACKGROUND**

27        The named plaintiffs are former hourly employees of two food production and processing

28   plants in Tracy, California.  *See* Order (Aug. 23, 2019) at 2, ECF No. 305.  They filed this case in

1

1  state court almost a decade ago, alleging the defendants did not (1) pay them for the time they

2  spent putting on, taking off, and cleaning protective equipment; did not (2) give them meal and

3  rest breaks guaranteed by California law; or (3) pay them in the format and within the time limits

4  required by California law.  *See id.*  After the case was removed to this court, the parties

5  conducted extensive discovery and litigated many pretrial motions, including motions to dismiss,

6  to strike, to compel and bar discovery, for summary judgment, for class certification, and to stay.

7  *See, e.g.*, ECF Nos. 76, 111, 144, 146, 162, 191, 196, 200, 210, 223, 241; *see also, e.g.*, Szeto

8  Decl. ¶ 25, ECF No. 325-1 (summarizing discovery efforts).  These motions and the orders

9  resolving them narrowed the plaintiffs' claims but resulted in a certified class that withstood an

10  appeal and petition for certiorari.  *See* 305 F.R.D. 197 (E.D. Cal. 2015), *aff'd*, 690 F. App'x 526

11  (9th Cir. 2017) (unpublished), *cert. denied*, 138 S. Ct. 976 (2018).

12         When the case returned to this court, the parties participated in two separate full-day

13  mediation sessions with David Rotman, who has often been described as a well-known and

14  experienced mediator in wage and hour litigation, including class actions.  *See, e.g.*, *Modica v.

15  Iron Mountain Info. Mgmt. Servs., Inc.*, 19-00370, 2021 WL 606407, at *1 (E.D. Cal. Jan. 6,

16  2021); *Clem v. Keybank, N.A.*, 13-0789, 2014 WL 2895918, at *5 (S.D.N.Y. June 20, 2014).

17  After several months, the parties agreed to a settlement.  The gross settlement fund before various

18  deductions would be $5.3 million.  *See* Mot. at 2.  After deductions, about $3.1 million would be

19  automatically distributed to class members according to the number of shifts they had worked at

20  the defendants' facilities:

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

| | |
|---|---:|
| Gross Settlement Fund | $5,300,000.00 |
| Proposed Attorneys' Fees | $1,855,000.00 |
| Litigation Costs | $210,000.68 |
| Claims Administration Costs | $23,000.00 |
| Enhancement Payments to the Named Plaintiffs | $37,500.00 |
| Payments to the California Labor & Workforce Development Agency under the Private Attorneys General Act | $75,000.00 |
| Total Funds to be Distributed to Class Members | $3,099,335.32 |

*See id.* at 2–3; Lee Decl. ¶ 13, ECF No. 325-2.  As explained in a previous order, the proposed settlement class included members who were not part of the previously certified class, and the parties did not explain why it was appropriate to expand the class as they proposed.  *See* Order (Aug. 23, 2019) at 6–8.  Nor did the plaintiffs explain well enough why the total gross settlement amount was reasonable.  *See id.* at 8–9.  As a result, their request for preliminary approval was denied without prejudice to renewal.  *See generally* Order (Aug. 23, 2019).

The plaintiffs renewed their motion.  The renewed motion analyzed the amount of the gross settlement fund against the maximum potential award, so the court was satisfied that the gross settlement fund was reasonable.  *See* Order (Nov. 2, 2020) at 13–14, ECF No. 321.  Counsel also filled in the gaps surrounding the plaintiffs' claims about non-compliant wage statements.  *See id.* at 13.  But the renewed motion, like its predecessor, offered little argument and no new evidence showing certification of the broader class was proper.  Despite this shortcoming, the court—cognizant of the strong policy favoring settlement of complex class actions—undertook an independent analysis of the relevant law and evidence.  *See id.* at 6–13.  It concluded that the proposed class could be preliminarily certified because no divisions threatened to pit some class members against others.  *See id.* at 9.  The parties' agreement to settle also avoided many evidentiary complications that would likely have made a trial of class claims impossible.  *See id*. The renewed motion was granted.

3

1    Notice was sent to the proposed class. *See* Lee Decl. ¶¶ 4–6. The notices were

2    customized for each recipient and showed how many pay periods would be used to calculate each

3    person's portion of the settlement proceeds. *See id.* Ex. 1 at 3. More than 4,100 people

4    responded. *See id.* ¶ 13. Twenty asked to be excluded, but none objected. *See id.* ¶¶ 10–11. No

5    one disputed the reported number of shifts they had worked. *See id.* ¶ 12. The highest individual

6    settlement payment will likely be approximately $7,111, and the average payment will be about

7    $744. *See id.* ¶ 14. The plaintiffs now move for final approval. At hearing, the parties also

8    presented a stipulation to alter certain funding and disbursement deadlines, for which the parties

9    have now prepared a written stipulation and proposed order. ECF No. 334.

10   **II.    LEGAL STANDARD**

11   A class action may be settled only with the court's approval. Fed. R. Civ. P. 23(e).

12   When, as here, a settlement agreement would bind absent class members, "the court may approve

13   it only after a hearing and only on finding that it is fair, reasonable, and adequate after

14   considering whether:"

15   (A)    the class representatives and class counsel have adequately represented the
16          class;

17   (B)    the proposal was negotiated at arm's length;

18   (C)    the relief provided for the class is adequate, taking into account:

19          (i)     the costs, risks, and delay of trial and appeal;

20          (ii)    the effectiveness of any proposed method of distributing relief to the
21                  class, including the method of processing class-member claims;

22          (iii)   the terms of any proposed award of attorney's fees, including timing
23                  of payment; and

24          (iv)    any agreement required to be identified under Rule 23(e)(3); and

25   (D)    the proposal treats class members equitably relative to each other.

26   Fed R. Civ. P. 23(e)(2).

27   Before these provisions were adopted into Rule 23(e), the Ninth Circuit and other courts

28   had used many similar factors to decide whether settlement agreements in class actions were

4

1    "fair, reasonable, and adequate," and those factors remain relevant.  *See* Fed. R. Civ. P. 23(e)

2    Advisory Committee's Notes to 2018 Amendments.  Courts consider:

3           (1) the strength of the plaintiff's case;

4           (2) the risk, expense, complexity, and likely duration of further litigation;

5           (3) the risk of maintaining class action status throughout the trial;

6           (4) the amount offered in settlement;

7           (5) the extent of discovery completed and the stage of the proceedings;

8           (6) the experience and view of counsel;

9           (7) the presence of a governmental participant; and

10          (8) the reaction of the class members of the proposed settlement.

11   *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (line breaks added

12   for readability) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

13   **III.   ANALYSIS**

14          Many of the factors listed above clearly favor approval of the proposed settlement.  The

15   proposed settlement agreement follows the extensive discovery, motion practice, and appellate

16   litigation summarized above.  The plaintiffs and absent class members are represented by

17   experienced counsel who advocated aggressively for their interests, and counsel believes the

18   proposed resolution is an excellent result for the class.  The proposed agreement was also

19   negotiated at arms' length with the help of an experienced mediator over a period of months.  In

20   sum, the record does not suggest collusion between the attorneys at the expense of their clients or

21   the class.

22          The parties' agreement also short-circuits further pretrial litigation over the plaintiffs'

23   complex wage and hour claims, including some claims the court did not certify for trial.

24   *Compare* Order (Feb. 10, 2015) at 12–16, ECF No. 200 (denying certification of plaintiffs'

25   "donning and doffing" claims for trial) *with* Order (Nov. 2, 2020) at 5–11 (granting certification

26   of settlement class for these claims).  The settlement agreement thus expands the total potential

27   recovery for the class.  In addition, the settlement agreement permits class members to receive

1   awards much sooner than they would have if litigation were to continue through trial, post-

2   judgment motion practice and appeals.  A jury might also have found in the defendants' favor at

3   trial, so the settlement adds certainty.  A faster resolution is even more attractive now that the

4   COVID-19 pandemic has delayed hearings and trials in civil cases in this District.

5          The court also stands by its previous finding that the settlement agreement treats class

6   members equitably relative to one another, *see* Order (Nov. 2, 2020) at 6–13, and that the gross

7   settlement amount is fair in light of the obstacles the plaintiff class would have needed to

8   overcome in bringing this case to a favorable jury verdict, *see id.* at 13–14.  The evidence in this

9   case would be costly to obtain and complicated to present persuasively.  The parties have

10  vigorously disputed the defendants' policies; the specifics of the plaintiffs' duties, rest breaks,

11  meal breaks and protective equipment; and the amount of damages.  A trial would be a risky,

12  expensive, and slow endeavor from the class members' perspective.  The class might even have

13  been decertified.  The proposed settlement represents a 61 percent reduction against the

14  maximum theoretical award.  *See* Mot. at 7; *see also* Szeto Decl. ¶¶ 15–21 (estimating theoretical

15  recoveries).  That discount is a fair and adequate price to pay to evade the obstacles described

16  above.  *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[T]he

17  Settlement amount . . . was roughly one-sixth of the potential recovery, which, given the

18  difficulties in proving the case, is fair and adequate."); *In re Toys R Us-Delaware, Inc. FACTA*

19  *Litig.*, 295 F.R.D. 438, 454 (C.D. Cal. 2014) (approving settlement agreement that imposed

20  reduction of 70–95% on maximum award in light of risks of adverse verdict at trial).

21         The class members' reactions to the proposed settlement provide further confidence in its

22  fairness.  As explained above, notices to class members explained how the settlement would be

23  allocated and what class members would receive, and no one questioned the allocation.  Nor were

24  any objections filed.

25         Despite these positive signs of the settlement's fairness, four aspects of the proposed

26  settlement agreement require closer scrutiny: the proposed attorneys' fee award, the proposed

27  incentive awards to the named plaintiffs, the proposed reimbursements for litigation and

28  /////

administrative costs, and the parties' compliance with California's Private Attorneys General Act of 2004 (PAGA).

### A.     Attorneys' Fees

The parties agreed that plaintiffs' counsel may request and receive up to 35 percent ($1.855 million) of the gross settlement award, which counsel has now formally requested.  Mot. at 11.  Despite the unusual size of the proposed award, it is reasonable in the unusual circumstances of this case.

Rule 23 permits a court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Even when the parties have agreed on an amount, the court must award only reasonable attorney's fees.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  In diversity actions such as this one, the Ninth Circuit "has applied state law in determining not only the right to fees, but also in the method of calculating fees."  *Mangold v. Cal. Public Util. Comm'n*, 67 F.3d 1470, 1478 (1995); *Rodriguez v. Disner*, 688 F.3d 645, 653 n.6 (9th Cir. 2012).  California courts permit the payment of attorneys' fees from a common settlement fund.  *See Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977).

Both California state courts and federal district courts sitting in diversity evaluate fee awards using two methods: (1) as a percentage of the total settlement fund and (2) in light of the "lodestar," i.e., the product of a reasonable hourly rate and a reasonable number of hours dedicated to the case.  *See, e.g., Kakani v. Oracle Corp.*, No. 06-06493, 2007 WL 4570190, at *2 (N.D. Cal. Dec. 21, 2007); *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000). Federal district courts have discretion to use the method they find most fitting.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Percentage awards are simple and transparent, but they might be unreasonable.  A 25 percent fee, for example, might be either a bonanza or a pittance depending on the size of the gross settlement award.  *See Bluetooth*, 654 F.3d at 942.  The lodestar fee can therefore serve as both a "cross check" against and a substitute for percentage-based awards.  *See id.* at 944–45; *Espinosa v. California Coll. of San Diego, Inc.*, No. 17-0744, 2018 WL 1705955, at *8 (S.D. Cal. Apr. 9, 2018).  But in the end,

7

1   however an award is calculated, the reviewing court's goal is the same: "a reasonable fee to

2   compensate counsel for their efforts." *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545,

3   557–58 (2009) (quotation marks and citations omitted).

4        Courts within this circuit have usually measured percentage awards against a 25 percent

5   benchmark. *See Bluetooth*, 654 F.3d at 942; *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-*

6   *in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (unpublished).  California state

7   courts have also referred to a 25 percent benchmark, but they have often been willing to approve

8   awards of up to 33 percent of the total fund.  *See In re Consumer Privacy Cases*, 175 Cal. App.

9   4th 545, 557 n.13 (2009) (noting fees of up to one-third are frequently awarded but that a "fee

10  award of 25 percent is the benchmark" for "common fund cases" (internal quotation and

11  alteration marks omitted)); *see also Greer v. Dick's Sporting Goods, Inc.*, No. 15-01063, 2020

12  WL 5535399, at *8 (E.D. Cal. Sept. 15, 2020) (collecting authority).  Awards above the 25

13  percent benchmark may be appropriate "when counsel achieves exceptional results for the class,

14  undertakes extremely risky litigation, generates benefits for the class beyond simply the cash

15  settlement fund, or handles the case on a contingency basis." *Seguin v. County of Tulare*, 16-

16  01262, 2018 WL 1919823, at *6 (E.D. Cal. Apr. 24, 2018) (quotation marks omitted) (citing

17  *Vizcaino*, 290 F.3d at 1048–50).

18       Here, although counsel's requested 35 percent award is above the benchmark, it is a

19  reasonable fee.  This case was lengthy, hard-fought and complex.  Counsel accepted the

20  representation on a contingency basis when the outcome was uncertain and litigation risky.  The

21  defendants were represented by capable counsel at large national and international law firms.

22  Against this backdrop, a $5.3 million award was a good result for the class.  Thousands of class

23  members—many of them in difficult financial and social circumstances, *see* Order (Feb. 10,

24  2015) at 35–36—will receive hundreds of dollars on average.  At least one California appellate

25  court has approved a similar percentage award in a comparably complex class action that had

26  been litigated, as this one, "for nearly a decade." *See Roos v. Honeywell Int'l, Inc.*, 241 Cal. App.

27  4th 1472, 1489 & n.6 (2015), *disapproved of on other grounds by Hernandez v. Restoration*

28  *Hardware, Inc.*, 4. Cal. 5th 260, 287 (2018).

8

A cross-check against the lodestar fee confirms the proposed fee award is reasonable.  The first part of a lodestar cross-check is "determining how many hours were reasonably expended on the litigation."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  Here, class counsel tabulated the hours they dedicated to this litigation.  The court is satisfied these hours were reasonable given the abnormal length and complexity of this case, the extensive pretrial motion practice summarized above, and the interlocutory appeal.  *See* Chandler Decl. ¶¶ 11–1 & Ex. 2, ECF No. 325-3.  And because this court has seen this litigation through from start to finish over the course of many years, the undersigned is comfortable making this assessment without more precise hour-by-hour details.  *Cf. Roos*, 241 Cal. App. 4th at 1496 ("[When] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." (quoting *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000))).

The second part of a lodestar cross-check is multiplying reasonably expended hours "by the prevailing local rate for an attorney of the skill required to perform the litigation."  *Moreno*, 534 F.3d at 1111.  This case included work by attorneys associated with three firms:

- Stuart Chandler of the Chandler Law Firm proposes a rate within the range normally used in this district for attorneys with his extensive experience.  *Compare* Chandler Decl. ¶¶ 4, 19 (proposing rate of $500 per hour given more than forty years' experience) *with, e.g.*, *Smothers v. NorthStar Alarm Services, LLC*, 17-00548, 2020 WL 1532058, at *9 (E.D. Cal. Mar. 31, 2020) (using lodestar hourly rate of $695 in wage and hour class action for attorney with more than thirty years' experience).

- Philip Downey of the Downey Law Firm proposes a somewhat higher rate than that ordinarily used in this district for attorneys with his experience.  *Compare* Downey Decl. ¶ 6 (proposing hourly rate of $650 dollars given his twenty years' experience) *with, e.g.*, *Seguin*, 2018 WL 1919823, at *6–7 (collecting authority showing rates for senior attorneys with approximately twenty or more years' experience are normally between $500 and $600 per hour in class action settings), *and Smothers*, 2020 WL 1532058, at *9 (finding similarly).

9

- • The Parris Law Firm has proposed a blended hourly rate of $500, emphasizing the extensive experience of two of its attorneys, Rex Parris and Kitty Szeto, but other attorneys and staff at the firm also worked on this case. *See* Szeto Decl. ¶ 10 (referring to work by "others at our firm"). The Parris firm has not filed information about these other lawyers and staff members or the number of hours each worked, so it is impossible to gauge their $500 blended rate. That rate is also higher than the average rates approved in comparable cases. *See, e.g.*, *Greer*, 2020 WL 5535399, at *9–10; *Seguin*, 2018 WL 1919823 at *6–7.

Even though Downey's and the Parris firm's proposed hourly rates are high, if those rates are reduced by 20 percent to bring them within the ranges ordinarily used in this District, the total lodestar fee would approximate the proposed percentage award. *See* Mot. at 20 (calculating total lodestar fee of approximately $2.224 million, about 20% higher than proposed $1.855 million award). The court therefore finds the requested 35 percent award is reasonable given the unusual circumstances of this case.

### B.   Incentive Awards

The settlement agreement provides for service or incentive awards of $7,500 to the five named plaintiffs. *See* Mot. at 9. Although large incentive awards might create divisions within a proposed class, the request here is reasonable given the length of this case and the named plaintiffs' efforts.

Large incentive awards set named plaintiffs apart from absent class members; a plaintiff who stands to receive several thousand dollars extra has an incentive to support agreements that are unfair to absent class members. *See Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013). For that reason, although the Ninth Circuit has agreed incentive awards "may be proper," it has "cautioned that awarding them should not become routine practice." *Id.* at 1164. "[I]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003)).

10

Courts may consider several factors when deciding whether to award an incentive fee to a named plaintiff: (1) "the risk to the class representative in commencing suit, both financial and otherwise"; (2) "the notoriety and personal difficulties encountered by the class representative;" (3) "the amount of time and effort spent by the class representative"; (4) "the duration of the litigation;" and (5) "the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Smothers*, 2020 WL 1532058, at *11 (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)).

Here, these factors support the named plaintiffs' request. First, by attaching their names to this litigation, the named plaintiffs took on the risk that future employers would learn of their participation in this case and would unfairly associate them with costly litigation. Second, this case was not widely publicized, and the named plaintiffs have not described any personal difficulties, so the second factor is neutral. Third, although the named plaintiffs have not submitted declarations describing their efforts in this litigation, the court is familiar with the record and is persuaded their efforts were substantial. The named plaintiffs submitted themselves to discovery, including to depositions and to an analysis of their adequacy, which necessitated the public airing of some unflattering personal history. *See generally* Order (Feb. 10, 2015). Fourth, this litigation was also lengthy. And fifth, nothing in this record suggests the named plaintiffs have enjoyed any personal benefits as a result of their status as class representatives. The total incentive payments ($37,500) also represent less than 1 percent of the gross settlement amount ($5.3 million). For these reasons, and because $7,500 is within the range of incentive awards paid to named plaintiffs in similar cases, the proposed incentive awards are reasonable. *See Smothers*, 2020 WL 1532058, at *12–13 (approving $10,000 incentive award and collecting authority); *Emmons v. Quest Diagnostics Clinical Laboratories, Inc.*, 13-0474, 2017 WL 749018, at *9 (E.D. Cal. Feb. 27, 2017) (approving $8,000 incentive award and collecting authority).

## C.     Litigation and Administrative Costs and Expenses

The court must also determine an appropriate award of costs and expenses. Fed. R. Civ. P. 23(h). "[I]n evaluating the reasonableness of costs, the judge has to step in and play surrogate client." *Ross v. Bar None Enters., Inc.*, No. 13- 00234, 2015 WL 1046117, at *11 (E.D. Cal.

1   Mar. 10, 2015) (quotation marks and citation omitted).  "In keeping with this role, the court must

2   examine prevailing rates and practices in the legal marketplace to assess the reasonableness of the

3   costs sought."  *Id.* (quotation marks and citation omitted).

4         Under the settlement agreement, plaintiffs' counsel may request reimbursement for

5   litigation costs of up to $250,000.  *See* Mot. at 11.  Counsel requests a reimbursement below that

6   cap: $210,164.68.  *See id.*  These costs were incurred for travel, research, filing fees, shipping,

7   interpreter services and similar purposes.  *See* Szeto Decl. Ex. 4, ECF No. 325-1; Downey Decl.

8   Ex. C, ECF No. 325-4.  Such costs are commonly reimbursed.  *See, e.g.*, *Greer*, 2020 WL

9   5535399, at *11.  Given the length and complexity of this litigation, the court concludes the

10  proposed cost award is reasonable.

11        The parties' agreement to reimburse settlement administration costs of $23,000 is also

12  reasonable for a case of this type.  *See Emmons*, 2017 WL 749018, at *9 (approving settlement

13  administration costs of $25,000 in comparable case).

14        **D.      Labor and Workforce Development Agency Allocation**

15        Finally, the court must decide whether to approve the proposed $100,000 allocation to the

16  PAGA claim and the resulting $75,000 payment to the California Labor & Workforce

17  Development Agency (LWDA).

18        "An employee bringing a PAGA action does so as the proxy or agent of the state's labor

19  law enforcement agencies, . . . who are the real parties in interest."  *Sakkab v. Luxottica Retail N.*

20  *Am. Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (internal citations omitted).  Thus, "[a]n action

21  brought under the PAGA is a type of qui tam action."  *Id.* at 429.  Because a settlement of PAGA

22  claims compromises a claim that could otherwise be brought by the state, the PAGA provides that

23  "court[s] shall review and approve any settlement of any civil action filed pursuant to [PAGA]."

24  Cal. Lab. Code § 2699(*l*) (2004).[1]

25  /////

---

[1] Because this case was filed before July 1, 2016, the parties were not required to submit the proposed settlement agreement to the LWDA at the same time it was submitted to the court. *See* 2016 Cal. Legis. Serv. Ch. 31, § 189 (S.B. 836) (West).

The PAGA provides that courts may exercise their discretion to lower the amount of civil penalties awarded "if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." *Id.* § 2699(e)(2).  Because state law enforcement agencies are the "real parties in interest" for PAGA claims, the court's task in reviewing the settlement is to ensure the state's interest in enforcing the law is upheld.  *Sakkab*, 803 F.3d at 435.  But the PAGA does not establish any more specific standard for evaluating PAGA settlements.  Nor has any California state court established a "benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action."  *Ramirez v. Benito Valley Farms, LLC*, No. 16-04708, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25, 2017) (quoting from LWDA response in *O'Connor v. Uber Technologies Inc.*, 201 F. Supp. 3d 1110 (N.D. Cal. 2016)).

In the absence of such guidance, this court and at least one other California federal district court have referred to the factors in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  *See Decker v. AllStates Consulting Services, LLC*, 18-03216, 2020 WL 7769842, at *2 (E.D. Cal. Dec. 30, 2020); *O'Connor*, 201 F. Supp. 3d 1110 at 1134.  These factors are not unique to class action lawsuits.  They bear on the fairness of settlements involving many plaintiffs.  This court, as it has before, finds these factors useful in evaluating a PAGA settlement.  And for the reasons discussed above and in the court's previous orders, *see* ECF Nos. 305 & 321, those factors favor approval of the settlement agreement.

## IV.   CONCLUSION

The motion for final approval is **granted**.

The court **approves the stipulation** for altering funding and disbursement deadlines at ECF No. 334 and orders accordingly.

This order resolves ECF No. 325.

IT IS SO ORDERED.

DATED:  March 10, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE